# Exhibit A

Page 1

Slip Copy, 2009 WL 161856 (N.D.Miss.)
**(Cite as: 2009 WL 161856 (N.D.Miss.))**

Only the Westlaw citation is currently available.

United States District Court,
N.D. Mississippi,
Delta Division.
Adam GROSCH, Plaintiff,
v.
TUNICA COUNTY, MISSISSIPPI; Tunica County
Deputy Sheriff Dornae Mosby; and HWCC-Tunica,
Inc.; Defendants.

Civil Action No. 2:06CV204-P-A.
Jan. 22, 2009.

West KeySummary**Civil Rights 78 🗝1462**

78 Civil Rights
    78III Federal Remedies in General
        78k1458 Monetary Relief in General
            78k1462 k. Grounds and Subjects; Compensatory Damages. Most Cited Cases

A patron who brought a § 1983 action against a casino, alleging the casino had violated his constitutional rights by searching and seizing him after he refused to give the casino his driver's license when the casino had decided to evict him on suspicion of card counting, could recover compensatory damages for his loss of freedom, even though he did not suffer a physical injury. The award of damages for loss of freedom was supported by video surveillance footage showing the patron being seized and searched, and by other testimonial and circumstantial evidence. 42 U.S.C.A. § 1983.

Robert B. Mcduff, Robert B. McDuff, Attorney, Jackson, MS, Arthur Randall Harris, A. Randall Harris, Attorney, Madison, MS, for Plaintiff.

John Samuel Hill, Mitchell, McNutt & Sams, Tupelo, MS, Alfred Thomas Tucker, III, Tucker, Selden & Sims, Tunica, MS, for Defendants.

*MEMORANDUM OPINION*

W. ALLEN PEPPER, JR., District Judge.

**\*1** This matter comes before the court upon HWCC-Tunica, Inc.'s renewed motion for a judgment as a matter of law, or alternatively, motion for new trial, or alternatively, motion for remittitur [139] [FN1]. Upon due consideration of the motions and the responses filed thereto, the court is prepared to rule.

> FN1. HWCC-Tunica, Inc. exceeded the 35-page limit set by Uniform Local Rule 7.2(E) for its brief by 23 pages without seeking leave to do so.

**I. FACTUAL BACKGROUND**

Adam Grosch filed his original complaint on December 8, 2006 alleging that Hollywood casino and Tunica County Sheriff's Deputy Dornae Mosby violated his state and federal rights by searching and seizing him in retaliation for Grosch's refusal to give the casino his driver's license after the casino decided to evict the plaintiff for suspicion of card counting. It is undisputed that card-counting is not illegal, nor is it illegal to evict someone for being suspected of card-counting.

The plaintiff's Second Amended Complaint sought compensatory and punitive damages for the following causes of action against Tunica County, Deputy Mosby in his individual capacity, and HWCC-Tunica, Inc.: (1) violation of the plaintiff's Fourth and Fourteenth Amendment rights against unreasonable seizures pursuant to 42 U.S.C. § 1983; (2) false arrest; (3) false imprisonment; (4) abuse of process; (5) malicious prosecution; and (6) violation of rights under the Mississippi Constitution. The Second Amended Complaint sought damages against the casino, HWCC-Tunica, Inc., alone for (7) trespass to chattels and (8) conversion regarding the allegation that they would not allow the plaintiff to cash his chips unless he gave him his ID. The plaintiff also sought damages from Tunica County alone for (9) failure to train and supervise its deputies properly.

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 161856 (N.D.Miss.)
**(Cite as: 2009 WL 161856 (N.D.Miss.))**

The court's January 8, 2007 Opinion and Order granting in part and denying in part the defendants' motions for summary judgment dismissed the plaintiff's claims for failure to train and violation of the plaintiff's rights under the Mississippi Constitution.

Trial of this matter began on September 2, 2008. On September 4, 2008 the jury returned a verdict in favor of the plaintiff. More specifically, the verdict form indicated the following: (1) Deputy Mosby was liable for violating the plaintiff's Fourth and Fourteenth Amendment rights against unreasonable searches and/or seizures and the jury awarded $25,000.00 in compensatory damages; (2) Hollywood casino was likewise liable for violating the plaintiff's Fourth and Fourteenth Amendment rights and the jury awarded $100,000 in compensatory damages; (3) Hollywood casino was liable for the plaintiff's state-law claims for false arrest, false imprisonment, malicious prosecution, and abuse of process, and the jury awarded $2,778.67-an amount which the verdict form limited the jury to award due to prior rulings of the court which covered the plaintiff's out-of-pocket expenses associated with defending himself for the dismissed disorderly conduct charge; and (4) Hollywood casino was liable for conversion and trespass to chattels and the jury awarded $925.00, the value of the casino chips that the casino would not cash for the plaintiff unless he gave them his driver's license-an amount the verdict form limited to $925.00.

**\*2** After the jury returned a verdict for compensatory damages, the court conducted an evidentiary hearing to determine the propriety of punitive damages instructions, concluded that those instructions were appropriate, and instructed the jury regarding punitive damages pursuant to Mississippi Code Annotated § 11-1-65 (2007). The jury returned the special verdict form, indicating that it found by clear and convincing evidence that Hollywood casino should pay punitive damages for the plaintiff's § 1983 claim and his state-law claims for false imprisonment, malicious prosecution, abuse of

process, conversion, and trespass to chattels in a total amount of $600,500.00. The special verdict form did not indicate how the punitive damages award was distributed between the federal claim and the state-law claims.

The court determined in its discretion that there was insufficient evidence to submit a claim for punitive damages against Tunica County and Deputy Mosby in his individual capacity. Furthermore, the state law claims against Deputy Mosby, which were to be decided by the court pursuant to the Mississippi Tort Claims Act, were fully settled after trial.

At the close of the plaintiff's case, Hollywood moved for a judgment as a matter of law and the court denied the motion. On November 3, 2008 Hollywood filed the instant motion, renewing its motion for a judgment as a matter of law, or alternatively, motion for new trial or for remittitur.

## II. DISCUSSION
### A. Renewed Motion for Judgment as a Matter of Law

Pursuant to Fed.R.Civ.P. 50(b), a party may file a motion for a judgment as a matter of law after a jury verdict is returned. "In ruling on the renewed motion, the court may: (1) allow a judgment on the verdict, if the jury returned a verdict; (2) order a new trial; or (3) direct the entry of judgment as a matter of law." Fed.R.Civ.P. 50(b). According to the Fifth Circuit in *Brown v. Kinney Shoe Corp.:*

> The district court properly grants a Rule 50 motion for judgment as a matter of law only where the facts and inferences indicate a particular outcome so strenuously that reasonable minds could not disagree. In deciding a Rule 50 motion, the court should consider all the evidence in the light most favorable to the non-moving party. A jury verdict must be upheld unless there is no legally sufficient evidentiary basis for a reasonable jury to find as it did. Even if this court would reach a different conclusion as trier of fact, we are not free to reweigh the evidence or to re-evaluate credibility of witnesses.

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 161856 (N.D.Miss.)
**(Cite as: 2009 WL 161856 (N.D.Miss.))**

237 F.3d 556, 564 (5th Cir.2001).

Hollywood argues that the court should grant their motion for judgment as a matter of law upon all of the plaintiff's claims against them. The court will consider Hollywood's arguments in turn.

*1. § 1983 Unreasonable Search and/or Seizure Claim*

Hollywood argues that a JMOL should be granted on the plaintiff's § 1983 unreasonable search and/or seizure claim pursuant to *Morris v. Dillard Department Stores, Inc.,* 277 F.3d 743, 747-51 (5th Cir.2001) which holds that a private defendant can only be subject to § 1983 liability if the arresting officer failed to conduct an independent investigation. Hollywood maintains that Deputy Mosby's testimony at trial conclusively establishes that he conducted an independent investigation when he arrested the plaintiff for disorderly conduct which Deputy Mosby said occurred in his presence.

**\*3** The court notes that Jury Instruction DH-5A, which was submitted by Hollywood regarding the plaintiff's § 1983 claim against them, included the element "that the Sheriff's Deputy failed to perform an independent investigation prior to arresting the plaintiff." Jury Instruction C-1 counseled in pertinent part as follows:

You are the sole judges of the credibility or "believability" of each witness and the

weight to be given to his testimony. In weighing the testimony of a witness you should consider his relationship to the plaintiff or to the defendant; his interest, if any, in the outcome of the case; his manner of testifying; his opportunity to observe or acquire knowledge concerning the facts about which he testified; his candor, fairness and intelligence; and the extent to which he has been supported or contradicted by other credible evidence. You may, in short, accept or reject the testimony of any witness in whole or in part.

Deputy Mosby testified that he was called to

the casino to evict a customer for trespassing. According to him, when he approached the plaintiff and asked him for his ID, the plaintiff became unruly and loud and therefore committed the misdemeanor of disorderly conduct in his presence. The plaintiff, on the other hand, testified that he was neither unruly nor rude and that when Deputy Mosby approached him, he extended his hand for a hand-shake which the deputy refused. The plaintiff testified that when the deputy asked him for his ID, he said he would give it to him if he agreed not to give it to the casino, a request the deputy refused. During one part of his testimony, Deputy Mosby averred that he did not remember whether the plaintiff conditioned giving the deputy his ID upon not giving it to the casino. Later in Deputy Mosby's testimony, however, the deputy indicated otherwise.[FN2]

> FN2. *Compare* Transcript of Deputy Mosby's Testimony, page 7, lines 20-24 (Q: "[Y]ou don't remember whether he said that or not, do you?" A: "No, I do not." Q: "He might have said it, right?" A: "Could have.") *with* page 18, lines 12-17 (Q: "Mr. Grosch has stated that he declined to give you his ID unless you agree not to give it to the casino. Do you recall him making that statement, that he would produce it on a condition?" A: "Yes, sir.").

Given their verdict finding Hollywood liable for the plaintiff's 1983 claim, the court concludes that the jury considered the independent investigation element and determined that Deputy Mosby's testimony in this regard was not credible. The court also concludes that given the conflicting testimony and the circumstances, there was sufficient evidence for the jury to find that Deputy Mosby did not conduct an independent investigation since he was called to evict the plaintiff for trespassing, yet arrested him for disorderly conduct while the plaintiff avers that he was not disorderly. In other words, since the plaintiff was arrested for disorderly conduct, and not trespass, the independent investiga-

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 161856 (N.D.Miss.)
**(Cite as: 2009 WL 161856 (N.D.Miss.))**

tion would have had to have been confined to the deputy's observation of the plaintiff's behavior in his presence. The deputy testified that the plaintiff was disorderly, the plaintiff testified that he was not. Though Deputy Mosby's testified in his deposition and during trial that the plaintiff was unruly and loud, he did not include these details in his report, and his affidavit used in support of the disorderly charge simply tracked the language of the disorderly conduct statute and did not go into further detail. The jury apparently resolved this question of credibility in favor of the plaintiff since according to DH-5A, the jury could not have held the casino liable for the plaintiff's § 1983 claim if they found that the deputy conducted a independent investigation.

**\*4** Furthermore, since the deputy did not have the legal right to give the plaintiff's ID to the casino-as explained in the court's previous Opinion, during trial, and in the jury instructions-the jury could have reasonably found that even if they believed the plaintiff was unruly, he had the right to refuse an unlawful instruction.

Finally, there was sufficient evidence to disbelieve that an independent investigation took place since the plaintiff testified that Deputy Mosby never asked him for his side of the story,[FN3] and the surveillance video of the casino security room in which the plaintiff was held in handcuffs showed that the other deputy took out the plaintiff's ID from his wallet and handed it directly to casino personnel without looking at the ID himself. The jury could have concluded reasonably that Deputy Mosby did not have the intent to arrest the plaintiff for disorderly conduct given that after the arrest, the plaintiff was taken to the casino's security room and his ID was given to the casino rather than taking the plaintiff directly to the County Jail for disorderly conduct. The jury was instructed about the difference between direct evidence and circumstantial evidence. The jury could have concluded reasonably that the circumstantial evidence weighed in favor of the plaintiff as to his § 1983 claim.[FN4]

FN3. See Transcript of Deputy Mosby's Testimony, page 11, lines 2-4 (Q: "You never really asked Mr. Grosch his side of the story, did you?" A: "No.").

FN4. Jury Instruction C-1 stated in pertinent part: "There are two types of evidence you may consider. One is direct evidence-such as testimony of an eyewitness. The other is indirect or circumstantial evidence-the proof of circumstances that tend to prove or disprove the existence of certain other facts. The law makes no distinction between direct and circumstantial evidence, but simply requires that you find the facts from a preponderance of all the evidence, both direct and circumstantial."

Accordingly, Hollywood's JMOL motion should be denied in this regard.

**2. False Imprisonment and False Arrest**
As to the false imprisonment claim, Hollywood maintains that though they can be liable for false imprisonment if they intentionally procured the unlawful detention without personally imprisoning the plaintiff pursuant to *Smith v. Patterson,* 214 Miss. 87, 58 So.2d 64 (Miss.1952) and *State v. Moore,* 252 Miss. 471, 174 So.2d 352, 354 (Miss.1965), the evidence establishes that Hollywood did not intend to press charges, therefore demonstrating there was no intent to procure an unlawful detention. Hollywood cites the testimony of the Hollywood security supervisor who called the Sheriff's Department, Danny Joe Taylor, who testified that he told the Sheriff's Department that the casino did not intend to press charges. Hollywood also contends that they never touched the plaintiff, nor did they threaten the plaintiff.

The court concludes that there was sufficient evidence for the jury to disregard the testimony of Mr. Taylor and to find that Hollywood intentionally procured the unlawful detention. First, the jury was instructed that they were to judge the credibility of each witness and had the right to disregard some or

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 161856 (N.D.Miss.)
**(Cite as: 2009 WL 161856 (N.D.Miss.))**

all of that witness's testimony. Thus, the jury's verdict in the plaintiff's favor could have been based in whole or in part on disregarding Mr. Taylor's or Deputy Mosby's testimony. Second, the jury could have reasonably concluded from the circumstantial evidence that the casino intended to procure an unlawful detention since the video surveillance showed that not only was the plaintiff seized, but he was placed in handcuffs, taken into the casino's security room for approximately 40 minutes-instead of being taken directly to jail by the deputies-and the other deputy took the plaintiff's ID from his pocket and handed it directly to casino personnel. Third, there was testimony directly from Deputy Mosby, a Tunica County law enforcement officer, that it was standard operating procedure for a Tunica County Deputy Sheriff to take casino patrons to the casino's security room so that casino personnel could read an eviction notice in instances where the casino called the Sheriff's Department for assistance in evicting a casino patron.[FN5] Fourth, the plaintiff in this case was in fact taken to Hollywood's security room and read an eviction notice even though he was arrested for disorderly conduct and not trespass. Fifth, Deputy Mosby also testified that it is standard procedure for the Deputy Sheriff to give the casino the patron's ID card for copying if the casino requests it and this is what occurred in this instance.[FN6]

> FN5. See Transcript of Deputy Mosby's Testimony at page 8, lines 15 to 21 (Q: "When you are called out to the casino and they want to 86 someone, evict someone, do you take the person to the back room so the casino people can read them what is called the 86?" A: "Yes, sir." Q: "That is your regular practice, right-." A: "Yes, sir.").

> FN6. See Transcript of Deputy Mosby's Testimony at page 8, lines 13 to 20 (Q: "And your office also will take the person's identification if they haven't given it to the casino and give it to the casino so they can

copy it, correct?" A: "Yes, we will give it to the casino if they request it." Q: "They requested it this time, didn't they?" A: "Afterwards.").

**\*5** Similarly, Hollywood argues that there was no evidence that they caused the plaintiff to be falsely arrested given Mr. Taylor's testimony. The same credibility and circumstantial considerations discussed above demonstrate that there was sufficient evidence for the jury to find otherwise.

Accordingly, Hollywood's JMOL motion regarding the plaintiff's false imprisonment and false arrest claims should be denied.

### 3. Malicious Prosecution
Hollywood argues that judgment as a matter of law should be granted regarding the plaintiff's malicious prosecution claim pursuant to *Stewart v. Southeast Foods, Inc.,* 688 So.2d 733 (Miss.1996) because he failed to demonstrate that the disorderly conduct charge was terminated in his favor given the charge was dismissed through prosecutorial leniency.

Hollywood maintains that the plaintiff offered no proof regarding why the charges were dropped such as by calling the Justice Court Judge or the County Prosecutor or even offering his own testimony. However, neither did Hollywood offer any evidence demonstrating that the charges were dismissed out of prosecutorial leniency. Since this would seem to be a defense to the malicious prosecution claim, it would appear incumbent upon Hollywood to offer proof that the disorderly conduct charge was dismissed due to leniency-especially since there was evidence that the charge was in fact dismissed.

Hollywood also argues that Deputy Mosby's uncontradicted testimony shows that Hollywood was not a substantial factor in bringing about the disorderly conduct charge. As discussed above, however, the jury was free to disregard all or part of any witness' testimony-even if uncontradicted.

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 161856 (N.D.Miss.)
**(Cite as: 2009 WL 161856 (N.D.Miss.))**

Accordingly, Hollywood's JMOL motion should be denied as to the plaintiff's malicious prosecution claim.

### 4. Abuse of Process

"An abuse of process claim must show (1) that the party made an illegal use of the legal process; (2) that party had an ulterior motive for bringing the charge; and (3) damages resulted from the perverted use of the legal process." *Croft v. Grand Casino Tunica, Inc.,* 910 So.2d 66, 76 (Miss.Ct.App.2005).

Hollywood argues that Deputy Mosby's uncontradicted testimony establishes that Hollywood cannot be held liable for abuse of process. The court concludes that Hollywood's JMOL motion regarding the abuse of process claim should be denied because there was sufficient circumstantial evidence to support a verdict against Hollywood for abuse of process and the jury could have disregarded Deputy Mosby and Hollywood's testimony regarding same.

### 5. Trespass to Chattels and Conversion

"While there are no Mississippi cases specifically setting out the elements of the tort of trespass to chattels, ... in order to prevail [the plaintiff] must establish that there has been an unauthorized interference with his possession of personal property, or unauthorized use of his personal property." *Awad v. United States,* 2001 WL 741638 (N.D.Miss.2001).

**\*6** Hollywood argues that its alleged dominion over the plaintiff's chips was not wrongful since the plaintiff was not entitled to the money the chips represented given that he did not present his ID to verify his age as the casino is required to do pursuant to Miss.Code Ann. § 75-76-155.

The court concludes that this argument is without merit. There was sufficient circumstantial evidence and ample credibility determinations that could have led a reasonable jury to conclude that Hollywood casino was not concerned about the plaintiff's age given they issued him a player's card (which requires an ID) and allowed him to gamble

and purchase chips earlier on the same day in question. Furthermore, while Miss.Code Ann. § 75-76-155 may make it a criminal offense for a casino employee not to verify a gambler is 21 or older, it does not require that the casino refuse to cash a person's chips unless that person gives the casino actual possession of that person's ID card, especially after that same casino had issued the person a player's card and had allowed him to gamble.

"Conversion requires an intent to exercise dominion or control over goods which is inconsistent with the true owner's right." *Walker v. Brown,* 501 So.2d 358, 361 (Miss.1987). Hollywood argues that there was no taking of the plaintiff's property, *i.e.,* the chips, and therefore the conversion claim should be dismissed. This argument is without merit. The *Walker* case does not require an actual taking; rather, all that is required is that Hollywood intended to exercise *control* over the plaintiff's chips. There was sufficient evidence for the jury to have concluded that not cashing the plaintiff's chips unless he gave the casino his ID when the casino had no legal right to require the plaintiff to give them his ID constituted conversion.

The court thus concludes that Hollywood's motion for JMOL as to the trespass to chattels and conversion claims should be denied.

### 6. § 1983 Punitive damages

Hollywood argues that the court should grant a JMOL on the punitive damages awarded for the § 1983 claim because (1) the plaintiff failed to show the prerequisite evil intent or reckless indifference; (2) the plaintiff failed to show pursuant to *Kolstad v. American Dental Association,* 527 U.S. 526, 119 S.Ct. 2118, 144 L.Ed.2d 494 (1999) that a managerial employee of Hollywood violated the plaintiff's constitutional rights; and (3) the court was inconsistent in allowing punitive damages to go to the jury against Hollywood but not against Deputy Mosby.

### a. Evil intent or reckless indifference

According to the Supreme Court in *Smith v.*

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 161856 (N.D.Miss.)
**(Cite as: 2009 WL 161856 (N.D.Miss.))**

*Wade,* 461 U.S. 30, 56, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983), "a jury may be permitted to assess punitive damages in an action under 1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others."

Hollywood argues that there was insufficient evidence that Hollywood had an evil intent or was recklessly indifferent in the search and seizure of the plaintiff. Hollywood also points out that "[i]t should be presumed a plaintiff has been made whole for his injuries by compensatory damages, so punitive damages should only be awarded if the defendant's culpability, after having paid compensatory damages, is so reprehensible as to warrant the imposition of further sanctions to achieve punishment or deterrence." *State Farm Mut. Auto. Ins. Co. v. Campbell,* 538 U.S. 408, 309, 123 S.Ct. 1513, -----, 155 L.Ed.2d 585, ---- (2003).

**\*7** The plaintiff counters that there was testimonial and circumstantial evidence showing a custom between the casino and the Tunica County Sheriff's Department by which the casino would call the Sheriff's Department to detain customers who declined to produce ID's when no crime had been committed and the casino was not legally entitled to actual possession, even temporary possession, of the ID's. Thus, the plaintiff argues, this was not an isolated incident and there was sufficient evidence to lead a reasonable jury to conclude that Hollywood intended to act in concert with the Tunica County Sheriff's Department to violate the plaintiff's Fourth and Fourteenth Amendment rights against unreasonable searches and/or seizures in order to illegally obtain the plaintiff's ID card-a goal which was realized as evidenced by the video surveillance footage of the plaintiff in the security room with the other deputy and Hollywood personnel.

The court concludes that there was sufficient direct and circumstantial evidence to allow a jury to reasonably conclude that Hollywood intentionally or recklessly violated the plaintiff's constitutional rights against unreasonable searches and seizures in order to obtain the plaintiff's property to which the casino was not legally entitled. For example, Deputy Mosby testified, as cited above, that it was a custom between the casino and the Tunica County Sheriff's Department for Sheriff's Deputies to hold casino patrons in Hollywood's security room in order for the casino to read an eviction notice. Deputy Mosby also testified that it was customary for the Sheriff's Deputy to give the patron's ID to the casino if requested so they could copy it and that this happened in this instance when Hollywood requested it. See Footnotes 5 and 6, *supra.* In other words, the jury could have concluded reasonably that since the plaintiff was held in handcuffs in Hollywood's security room for approximately 40 minutes instead of being taken directly to the county jail after being arrested not for trespass but for disorderly conduct, read an eviction notice by Hollywood and had his ID taken by a Sheriff's Deputy and given to the casino, Hollywood intentionally or recklessly violated the plaintiff's constitutional rights by acting in concert with law enforcement.

Accordingly, Hollywood's motion for JMOL as to the punitive damages verdict for the plaintiff's § 1983 claim should be denied.

*b. Managerial requirement*

Hollywood cites *Kolstad v. American Dental Association* for the proposition that in Title VII cases, the Supreme Court has held that in order for a corporate defendant to be subjected to punitive damages for the acts of its employees, the plaintiff must show that the subject employee was acting in a managerial capacity. 527 U.S. 526, 119 S.Ct. 2118, 144 L.Ed.2d 494 (1999).

First, unlike the situation in *Kolstad,* the instant case does not involve Title VII but rather § 1983. Hollywood has cited no authority that requires the court to apply the *Kolstad* standard to § 1983 cases and the court has found no authority upon its own inquiry. Second, even if *Kolstad* applied to § 1983

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 161856 (N.D.Miss.)
**(Cite as: 2009 WL 161856 (N.D.Miss.))**

actions, it is undisputed that Danny Joe Taylor was a supervisory security officer who was intimately involved in the circumstances of this case on the part of Hollywood casino. Hollywood argues that there was no proof of the level of "managerial capacity" held by Taylor during trial; however, there was testimony that Taylor was a supervisory security officer.

*c. Deputy Mosby*

**\*8** Hollywood also argues that the court erred by allowing punitive damage instructions to be submitted against them but not against Deputy Mosby. As indicated above, the court concluded in its discretion that there was insufficient evidence demonstrating evil intent or reckless indifference with regard to Deputy Mosby's behavior. In any event, Hollywood cites no authority that disallowing punitive damage instructions as to one co-defendant but not the other is necessarily unfairly prejudicial requiring a JMOL.

**7. Punitive Damages for State Law Claims**

According to Miss.Code Ann. § 11-1-65 (2007): "Punitive damages may not be awarded if the claimant does not prove by clear and convincing evidence that the defendant against whom punitive damages are sought acted with actual malice, gross negligence which evidences a willful, wanton or reckless disregard for the safety of others, or committed actual fraud."

Hollywood argues that the plaintiff failed to meet this standard by clear and convincing evidence as to the casino given that no Hollywood personnel touched him or threatened to harm him and given that the plaintiff testified that he was aware that the Sheriff's Department had been called and that he could have left at any time.

The plaintiff argues that the case cited by Hollywood, *Gamble v. Dollar General Corp.,* 852 So.2d 5 (Miss.2003) is readily distinguishable from the instant case. The Court in *Gamble* held that punitive damages were inappropriate against a company whose employee wrongly detained the plaintiff in contravention of the company's policy. The plaintiff argues that there was no evidence that Hollywood had a policy that prohibited the sort of treatment the plaintiff received and that, in fact, the evidence indicated the contrary.

The court concludes that the plaintiff's direct and circumstantial evidence met the clear and convincing standard to submit a punitive damages instruction on the state-law claims against Hollywood. With regard to Hollywood's aforementioned arguments, even though there was no evidence that the casino physically touched or threatened the plaintiff with physical harm, there was sufficient evidence for the jury to conclude that the plaintiff was wrongly seized and searched and held in handcuffs in the casino's security room rather than in the County Jail in order to obtain his ID card to which the casino was not entitled. Regarding Hollywood's argument that the plaintiff knew he could leave at any time after the casino informed him that they called the Sheriff's Department and before the deputies arrived, there was sufficient evidence for the jury to conclude that the plaintiff was constructively held during that period because the casino would not cash the plaintiff's chips until he gave them his ID card.

In terms of § 11-1-65, the court concludes that there was sufficient evidence for the jury to conclude that Hollywood acted with actual malice and/or gross negligence evidencing a willful, wanton or reckless disregard for the safety of the plaintiff with respect to the state-law claims of false imprisonment, false arrest, malicious prosecution, abuse of process, trespass to chattels, and conversion.

**B. Motion for New Trial, or a New Trial as to Damages, or for Remittitur**

**\*9** After a jury verdict, a district court may grant a new trial "on all or some of the issues ... for any reason for which a new trial has been heretofore granted." Fed.R.Civ.P. 59. This rule "confirms the trial court's historic power to grant a new trial based on its appraisal of the fairness of the trial and the reliability of the jury's verdict." *Smith v. Trans-*

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 161856 (N.D.Miss.)
**(Cite as: 2009 WL 161856 (N.D.Miss.))**

*world Drilling Co.,* 773 F.2d 610, 612-13 (5th Cir.1985). As will be explained below, the court concludes that the parties received a fair trail in all respects and thus the motion for a new trial should be denied. Furthermore, a remittitur is inappropriate.

### 1. Loss of freedom damages

Hollywood argues that a new trial should be granted because the court committed prejudicial error in allowing the plaintiff to recover an "unlimited" amount of non-punitive compensatory damages based on the plaintiff's "loss of freedom."

There are two questions that arise from this argument: (1) was the "loss of freedom" element for compensatory damages timely asserted; and, if so, (2) does the law recognize "loss of freedom" compensatory damages in a § 1983 action based on unconstitutional searches and/or seizures.

On July 2, 2008 the court entered an Order granting *inter alia* Hollywood's motion to prevent plaintiff from seeking compensatory damages not previously disclosed in pleadings or discovery. In this regard, the Order stated:

> All defendants move in limine to prevent the plaintiff from offering evidence on or seeking damages for anything other than what has previously been disclosed in the Second Amended Complaint and discovery. The motions should be granted in this regard. Therefore, the plaintiff is limited in seeking damages and presenting evidence thereon that he has already disclosed. **This would exclude damages for lost wages, loss of earning capacity, harm to reputation, emotional distress or mental anguish.** This conclusion does not exclude, however, punitive damages since these were sought in his Second Amended Complaint and in discovery.

Order at 1 (emphasis added).

Although the plaintiff did not disclose a desire to seek lost wages, loss of earning capacity, harm to

reputation, emotional distress, or mental anguish prior to the July 2, 2008 Order, he did evince a desire to seek damages for loss of freedom in his Second Amended Complaint and in his Initial Disclosures. The August 24, 2007 Second Amended Complaint stated in pertinent part:

> As a result of the unlawful detention and arrest, as well as the refusal of the casino to give the plaintiff the money he was owed when he initially requested it, the plaintiff was **deprived of his freedom** and his property and he suffered damages. These damages were caused by the events and conditions listed in this complaint.

> * * *

> The plaintiff was arrested without probable cause in violation of the Fourth and Fourteenth Amendments to the United States Constitution. All defendants are liable, including the Hollywood Casino Corporation, which acted jointly with other defendants in causing the arrest of the plaintiff.

> **\*10** * * *

> Wherefore, the plaintiff demands a jury trial on all but the Mississippi Tort Claims Act claims, for which he requests a judge trial as required by that statute (Miss.Code § 11-46-13(1)), and upon a verdict in his favor, asks that compensatory damages be assessed in an appropriate amount, as well as punitive damages for those claims for which they are available by law, and that he be awarded costs, attorneys fees, and all other relief to which he is entitled.

Second Amended Complaint at ¶¶ 13, 15, and 18, respectively (emphasis added). As cited by Hollywood, the plaintiff stated in his Initial Disclosures in pertinent part:

> Damages will include the $ 2,500 the plaintiff paid to hire an attorney to prepare and defend against the charges brought in Justice Court, as well as approximately $500 in travel expense for the plaintiff to return for the Justice Court trial.

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 10

Slip Copy, 2009 WL 161856 (N.D.Miss.)
**(Cite as: 2009 WL 161856 (N.D.Miss.))**

**Plaintiff will also seek compensatory damages resulting from the arrest itself and the time spent being detained, as well as punitive damages.**

(emphasis added).

Furthermore, the plaintiff's Response to Interrogatory No. 11 specifically referred to "the amended complaint and initial disclosures" regarding the types of compensatory damages he sought.

Accordingly, the court concludes that the plaintiff timely asserted compensatory damages for loss of freedom.

The next question is whether the law recognizes such damages.

Before the court gave instructions, the plaintiff argued that he should be allowed to recover "loss of liberty" compensatory damages for the § 1983 unreasonable search and/or seizure claim even though he received no physical injury. The court cited *Simmons v. City of Paris, Texas,* 378 F.3d 476 (5th Cir.2004) for the proposition that § 1983 claims do not require physical injuries to be submitted to a jury. In Jury Instruction P-12A, regarding the § 1983 claim against Deputy Mosby, the court instructed in pertinent part: "You only need to determine whether Deputy Mosby violated the plaintiff's constitutional rights and whether his actions caused damage or injury to the plaintiff. The plaintiff is not required to prove a physical injury, but **his damage or injury may be constituted by loss of liberty** or the incurring of financial expense as a result of any unconstitutional actions." Page 2. (emphasis added). Jury Instruction DH-5A, submitted by Hollywood regarding the § 1983 claim against them, set out the elements, including the requirement of an independent investigation, but did not mention what type of compensatory damages could be awarded.

Hollywood maintains that plaintiff's counsel argued for $30-40,000.00 for loss of liberty for the §

1983 claim.

The Verdict Form did not mention what types of compensatory damages were available for the § 1983 claims against Deputy Mosby and Hollywood casino. Rather, the form asked the jury to "determine the amount of compensatory damages to be awarded for this claim, if any." For the § 1983 claims, the jury awarded $25,000.00 against Mosby and $100,000.00 from Hollywood.

**\*11** The parties did not object to the substance of the Verdict Form.

Hollywood argues that unlimited "loss of freedom" compensatory damages are prohibited by *Carey v. Piphus,* 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978) and *Memphis Community School District v. Stachura,* 477 U.S. 299, 106 S.Ct. 2537, 91 L.Ed.2d 249 (1986) and the plaintiff was limited to only nominal damages-*i.e.,* one dollar-for the § 1983 claim against Hollywood.

In *Carey,* students who claimed they were suspended from school (20 days) without due process for smoking marijuana sued the school board. The District Court held that their rights had been violated, but did not award damages. The Seventh Circuit held that the students were entitled to recover substantial non-punitive damages even if their suspensions were justified and even if they did not prove that any other actual injury was caused by denial of procedural due process. The Supreme Court reversed, holding that in the circumstances of the case, the plaintiffs submitted no proof of the mental and emotional distress caused by the deprivation of their due process rights and therefore could not recover substantial non-punitive damages. 435 U.S. at 263-64.

The *Carey* case, however, is distinguishable from the case at bar. First, *Carey* involved due process rights, not the Fourth and Fourteenth Amendment rights against unreasonable searches and/or seizures. Indeed, the Court recognized that its holding did not apply to all examples of constitutional

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 161856 (N.D.Miss.)
**(Cite as: 2009 WL 161856 (N.D.Miss.))**

deprivations, writing: "In order to further the purpose of § 1983, the rules governing compensation for injuries caused by the deprivation of constitutional rights should be tailored to the interests protected by the particular right in question-just as the common-law rules of damages themselves were defined by the interests protected in the various branches of tort law." 435 U.S. at 258-9. The Court also observed: "More importantly, the elements and prerequisites for recovery of damages appropriate to compensate injuries caused by the deprivation of one constitutional right are not necessarily appropriate to compensate injuries caused by the deprivation of another. As we have said, *supra,* ... these issues must be considered with reference to the nature of the interests protected by the particular constitutional right in question." 435 U.S. at 265. Second, the deprivation at issue in *Carey-i.e.,* deprivation of due process rights in being suspended for 20 days from school for allegedly smoking marijuana-is inherently different from a deprivation of a person's right against unreasonable searches and/or seizures taking the form of being physically seized and searched. Third, unlike the situation in *Carey,* there was clear evidence submitted in the instant case showing the plaintiff's deprivation or loss of freedom in the form of video surveillance footage.

In the *Memphis* case, a tenured elementary teacher brought a civil rights suit against the school district and others to recover for alleged violations of his First and Fourteenth Amendment rights in connection with his suspension. The District Court rendered judgment for teacher. The Court of Appeals for the Sixth Circuit affirmed. The Supreme Court, held that damages based on the abstract "value" or "importance" of constitutional rights are not a permissible element of compensatory damages in an action under Civil Rights Act of 1871 and that an erroneous instruction authorizing award of such damages required retrial of damages issue.

**\*12** In the *Memphis* case, the District Court gave the following instruction:

The precise value you place upon any Constitutional right which you find was denied to Plaintiff is within your discretion. You may wish to consider the importance of the right in our system of government, the role which this right has played in the history of our republic, [and] the significance of the right in the context of the activities which the Plaintiff was engaged in at the time of the violation of the right.

477 U.S. at 303. The Court observed that they "emphasized [in *Carey* ] that, whatever the constitutional basis for § 1983 liability, such damages must always be designed 'to *compensate injuries* caused by the [constitutional] deprivation.' " 477 U.S. at 309 (emphasis in original). "That conclusion simply leaves no room for non-compensatory damages measured by the jury's perception of the abstract 'importance' of a constitutional right." 477 U.S. at 309-10. The Court held that "damages based on the abstract 'value' or 'importance' of constitutional rights are not a permissible element of compensatory damages in such cases." 477 U.S. at 310.

The court concludes that the *Memphis* case is not dispositive upon the issue of whether compensatory damages for loss of freedom in a § 1983 claim for deprivation of the right against unreasonable searches and/or seizures. This is particularly true in the present case since the jury was not given an instruction similar to that in *Memphis* asking them to personally determine the value of a particular constitutional right. The jury in this case was not asked to measure compensatory damages by determining the "abstract importance" of the Fourth and Fourteenth Amendments. Rather, they were asked to determine the amount of compensatory damages based on the plaintiff's loss of freedom from the time he was seized and searched until he was released from police custody.

Though the court was unable to locate Fifth Circuit precedent regarding this issue, the court is persuaded by the Eighth Circuit's reasoning in *Young v. City of Little Rock,* 249 F.3d 730 (8th Cir.2000). In *Young,* the police arrested the wrong

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 161856 (N.D.Miss.)
**(Cite as: 2009 WL 161856 (N.D.Miss.))**

woman due in large part to the dispatcher's failure to notice that the police department's data base indicated that the arrestee's name was being used as an alias by another woman whose name was also mentioned in the data base. The police department had notice that they had the wrong woman but held her in jail over the weekend to await the municipal judge. After the municipal judge determined that she was the wrong woman and ordered that she be released, she was placed back on the transport to the jail, strip searched again, and was not released immediately. She filed a § 1983 action against city claiming her Fourth and Fourteenth Amendment rights were violated. The District Court entered judgment on a jury verdict in favor of the plaintiff for $100,000.00. The Eighth Circuit held *inter alia* that the jury verdict of $35,000.00 in compensatory damages for the time plaintiff spent in holding cell after the court ordered her release and $65,000.00 in compensatory damages for the time spent at the county jail before her release actually occurred was not excessive. The Eighth Circuit observed:

> **\*13** The City argues that the verdict is too high-$35,000 for the time spent in the holding cell at the Municipal Court after the order of release, and $65,000 for the time spent at the jail before release actually occurred. We grant that the amounts are high, but they are not so excessive as to be shocking. The liberty of the individual is at stake here. A citizen had been arrested, erroneously as it turned out, and a court had ordered her released. The court's order had not been followed. Instead, a process of administrative foot-dragging took place, characterized by gross indignities.

249 F.3d at 736.

That the law recognizes compensatory damages based on one's loss of freedom in connection with the violation of a person's Fourth and Fourteenth Amendment rights against unreasonable searches and/or seizures is not only supported by the decision in *Young,* but also from the Supreme Court's statements in *Memphis* that "[t]he basic purpose of

§ 1983 damages is to compensate persons for injuries that are caused by the deprivation of constitutional rights ." 477 U.S. at 307 (original formatting omitted; citing *Carey,* 435 U.S. at 254). As discussed above, the Fifth Circuit in *Simmons* held that a physical injury is not required to submit a § 1983 claim to the jury.

If Hollywood is correct that the law limits anyone whose Fourth and Fourteenth Amendment rights against unreasonable searches and/or seizures to nominal damages-*i.e.,* one dollar-when they do not suffer a physical injury even though they suffer a loss of freedom-then the basic purpose of § 1983 would be thwarted given that the prospect of a one-dollar compensatory damage verdict would essentially make it inane to pursue a remedy in court. What is more, since the Supreme Court has indicated that punitive damage awards are supposed to be limited to a single-digit modifier of a compensatory damage award, the most one could recover in punitive damages would be nine dollars. Thus, a plaintiff would be limited to a total of ten dollars of potential recovery for violation of his or her constitutional right against unreasonable searches and/or seizures.

Hollywood argues that even if loss of freedom damages were allowed, there was no evidence submitted to the jury regarding those damages. This is clearly not the case, given the video surveillance footage showing the plaintiff seized and searched and the other testimonial and circumstantial evidence.

Accordingly, the court concludes that Hollywood's motion for a new trial or remittitur based on the court's allowance of loss of freedom damages should be denied.

**2. Exclusion of Evidence and Witness and Jury Instructions**

Hollywood argues that new trial should be granted given the court's exclusion in its July 2, 2006 Order of Thomas H. Muller's testimony regarding the Mississippi Gaming Commission regu-

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 13

Slip Copy, 2009 WL 161856 (N.D.Miss.)
**(Cite as: 2009 WL 161856 (N.D.Miss.))**

lations and the correspondence between the plaintiff and the Gaming Commission. As stated in its Order, such testimony and evidence improperly sought to instruct the jury on the law, a function that is exclusively within the province of the court. Accordingly, a motion for a new trial on this basis should be denied.

**\*14** Hollywood also argues that a new trial is proper because the court erred in giving instructions P-16A, P-17, and P-18. Instruction P-16A stated: "I instruct you that Deputy Mosby did not have the legal right to give the plaintiff's ID card to the casino against the plaintiff's wishes." Instruction P-17 stated: "I instruct you that the plaintiff was not required by the law to provide his ID card to the casino if casino personnel already had determined that he was over 21 and had allowed him to gamble." Instruction P-18 stated: "I instruct you that the proceeds from the plaintiff's gambling lawfully belonged to him."

Hollywood maintains these instructions were improper because they were peremptory, they made improper comments on the evidence, and are contrary to law. However, the court reiterates its conclusion at trial that these instructions were accurate statements of the law-statements that can only be given by the court.

With regard to P-16A, it is undisputed that neither Deputy Mosby nor the other deputy had the legal right to give the plaintiff's ID card to the casino against the plaintiff's wishes. As discussed at length in the court's January 8, 2008 Opinion granting in part and denying in part the defendants' motion for summary judgment, the deputy had a right to ask the plaintiff for his ID card, but did not have the concomitant right to give it to a private party. And even if it were true that the casino wanted to verify the plaintiff's age, which was a question of fact, the casino cited no law that requires the deputy himself to enforce the casino's desire for the ID card.

Instruction P-17 does not instruct a particular

finding of fact, but rather states a conditional-*i.e.,* if the jury determines that the casino already determined the plaintiff to be over 21 before the casino called the Sheriff's Department, the plaintiff was not legally required to provide the casino his ID card.

Instruction P-18 simply states the law. Hollywood has cited no authority for the proposition that even if the plaintiff were not 21, the cash represented by the chips did not belong to the plaintiff.

**3. *Bifurcation of Compensatory and Punitive Damages and "One Satisfaction Rule"***

Hollywood maintains that the trial was unfair because it was not properly bifurcated between the compensatory damages stage and that for punitive damages as required by Miss.Code Ann. § 11-1-65 (2007). Since the jury was allowed to consider the plaintiff's loss of freedom in awarding compensatory damages and in fact awarded $100,000.00 against the casino, Hollywood argues that the jury could have taken the punitive damages instructions after the close of the compensatory stage as an indication from the court that they need to award more monetary damages. In other words, Hollywood argues that allowing the jury to award compensatory damages based upon loss of freedom allowed the plaintiff to double-dip.

The court concludes that these arguments are without merit since the situation complained of is a creature of Miss.Code Ann. § 11-1-65 and not of this court's making. This statute provides that "[i]n any action in which the claimant seeks an award of punitive damages, the trier of fact shall first determine whether compensatory damages are awarded and in what amount, before addressing any issues related to punitive damages." Mis.Code Ann. § 11-1-65 (2007).

**4. *Violation of Due Process***

**\*15** Hollywood argues that the punitive damages award violates the due process clauses of the U.S. and Mississippi Constitutions, citing *State Farm Mut. Auto. Ins. Co. v. Campbell,* 538 U.S.

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 161856 (N.D.Miss.)
**(Cite as: 2009 WL 161856 (N.D.Miss.))**

408, 123 S.Ct. 1513, 155 L.Ed.2d 585 (2003). When reviewing punitive damages awards and whether they violate the due process clause, Courts are to "consider three guide-posts: (1) the degree of reprehensibility of the defendant's misconduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases." *Id.*

*a. Degree of reprehensibility*

The degree of reprehensibility is "the most important indicium of the reasonableness of a punitive damages award." *BMW of North America, Inc. v. Gore,* 517 U.S. 559, 575, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996). To evaluate the reprehensibility of a defendant's conduct, the court must consider: (1) whether the harm was physical rather than economic; (2) whether the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others; (3) whether the defendant targeted the plaintiff because of his financial vulnerability; (4) whether the conduct involved repeated actions or was an isolated incident; and (5) whether the harm resulted from intentional malice, trickery, or deceit, or mere accident. *State Farm,* 539 U.S. at 419. The existence of "any one of these factors weighing in favor of a plaintiff may not be sufficient to sustain a punitive damages award; and the absence of all of them renders any award suspect." *State Farm,* 539 U.S. at 419.

Hollywood contends that none of these factors were established since the plaintiff suffered no physical harm, the conduct in question did not evidence indifference or reckless disregard of the physical health or safety of the plaintiff, the plaintiff was not targeted because of his financial vulnerability since Hollywood had no knowledge of the plaintiff's financial status, there was no evidence that the conduct in question happened more than once, and there was no evidence of malice, trickery, or deceit.

The court concludes that there was sufficient

clear and convincing evidence to support a reasonable jury finding that (1) the tortious conduct evinced an indifference or reckless disregard to the safety of the plaintiff vis-à-vis his physical seizure in handcuffs leading to the casino illegally obtaining the plaintiff's ID card; and/or (2) there was testimonial evidence from Deputy Mosby that he understood it to be a custom for the Sheriff's Department to aid the casino in evicting plaintiffs which sometimes included obtaining ID cards yet he said he arrested the plaintiff for disorderly conduct even though the plaintiff's ID was taken and given to the casino and the plaintiff was taken to the casino's back room in handcuffs and was read the casino's "86" ultimatum; and/or (3) the harm resulted from intentional trickery and deceit on the part of the casino in that they used the Sheriff's Department to obtain the plaintiff's ID card when they had no legal right to possess it.

*b. Disparity between the harm and the award*

**\*16** Hollywood argues that if the court vacates the $100,000.00 compensatory damages award based on Hollywood's argument regarding loss of freedom damages, the ratio between the one-dollar compensatory verdict for the § 1983 claim to the $600,500.00 punitive damage award would be grossly excessive and would exceed *State Farm's* single-digit ratio requirement.

Since the court has declined to vacate the $100,000.00 compensatory verdict, the court concludes that the 6 to 1 ratio between the punitive damages award and the compensatory damages award is not unduly excessive.

*5. Exxon Case*

Hollywood argues that a 6 to 1 ratio is improper according to the U.S. Supreme Court's decision in *Exxon Shipping Co. v. Baker,* --- U.S. ----, 128 S.Ct. 2605, 171 L.Ed.2d 570 (2008). The court concludes, however, that the holding in *Exxon* was confined to cases arising under federal admiralty law and has no application to the case at hand.

*6. Damages for Trespass to Chattels and Conver-*

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 161856 (N.D.Miss.)
**(Cite as: 2009 WL 161856 (N.D.Miss.))**

*sion*

Finally, Hollywood argues that the court should grant a new trial on the trespass to chattels and conversion claims because the court erred in allowing the jury to award the plaintiff the cash value of the chips, $925.00, after the casino had already cashed the chips when they received his ID. This argument ignores the constructive nature of the situation since the casino would not cash the plaintiff's chips unless he provided his ID card to them, thereby exercising *de facto* dominion and control over the cash value of the chips when the casino had no legal right to require the plaintiff to give them his ID card. There was sufficient evidence for the jury to disregard the casino's allegation that they were merely trying to comply with the law requiring them to verify the plaintiff's age given that the plaintiff denies that the casino questioned his age, the casino already issued a player's card to the plaintiff which required a verification of his age, they allowed him to access the gambling floor and the black-jack table earlier the same day, the casino did not explain why it could not have simply looked at the plaintiff's birth date on his ID card while the card itself was still in his possession, and the video surveillance showed that the other deputy took out the plaintiff's ID card from the plaintiff's wallet in his back pocket and perfunctorily gave it to the casino personnel without looking at the ID card.

Given all of the evidence upon which the jury could have concluded reasonably that Hollywood was liable for conversion and trespass to chattels, the Verdict Form's limitation of damages for those torts to $925.00 was reasonable and not excessive.

### III. CONCLUSION

For the reasons discussed above, the court concludes that Hollywood's renewed motion for a judgment as a matter of law and alternative motion for a new trial and/or a remittitur should be denied. Accordingly, an Order shall issue forthwith,

N.D.Miss.,2009.
Grosch v. Tunica County, Miss.

Slip Copy, 2009 WL 161856 (N.D.Miss.)

END OF DOCUMENT

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.