IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF MISSISSIPPI

DELTA DIVISION

NORTHERN DISTRICT OF MISSISSIPPI
FILED
SEP 21 1989
Norman L. Gillespie, Clerk
By _____ Deputy

| | |
|---|---|
| DIANE COWAN, et al., ) | |
| Plaintiff, ) | |
| UNITED STATES OF AMERICA, ) | |
| Plaintiff-Intervenor, ) | |
| v. ) | CIVIL ACTION NO. DC 6531-K |
| SCHOOL DISTRICT NUMBER IV OF ) BOLIVAR COUNTY, MISSISSIPPI ) (NOW CLEVELAND SCHOOL ) DISTRICT), et al., ) | |
| Defendant. ) | |

## CONSENT ORDER

On March 21, 1985 the United States (hereafter plaintiff) filed its complaint-in-intervention in <u>Cowan</u> v. <u>Bolivar County Board of Education, et al.</u>, No. 6351-K (N.D. Miss. 1965), a school desegregation suit filed by private plaintiffs, pursuant to Title IV and Title IX of the Civil Rights Act of 1964. The United States alleged, <u>inter alia</u>, that defendant Bolivar County School District Four, now Cleveland School District, operated a racially dual system of public education in violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. Moreover, the United States alleged that School District Four pursued policies and practices which frustrated the implementation of the July 22, 1969 desegregation order entered in <u>Cowan</u>.

Prior to the filing of the complaint-in-intervention and subsequent thereto, the United States and the Cleveland School District Board of Trustees actively and in good faith conducted negotiations to resolve the issues raised in the complaint and, as indicated by signatures of their counsel, mutually agreed to the entry of this Consent Order. The defendant Cleveland School District has denied these allegations.

After reviewing its terms, this Court has determined and so finds that the agreement of the parties contained in this Consent Order is consistent with the objectives of the Fourteenth Amendment and Title IV of the Civil Rights Act of 1964. Accordingly, it is ORDERED, ADJUDGED, AND DECREED that the Cleveland School District, together with its agents, officers, employees, successors, and all those in active concert or participation with them are hereby directed to implement, effective for the 1989-90 academic year and succeeding academic years (unless modified hereafter by Order of this Court), the provisions herein.

### I. FACULTY/PROFESSIONAL STAFF DESEGREGATION

A. There shall be full faculty and professional staff desegregation at each school operated by the school district, so that the faculty and professional staff at each school is not racially identifiable. Specifically, the faculty and professional staff at each school to the extent feasible shall reflect the districtwide ratio of minority and nonminority faculty and professional staff.

B. The Cleveland School District shall in all other respects adopt and apply nondiscriminatory and objective criteria in making faculty and professional staff assignments and reassignments, and shall provide to the United States a copy of such criteria for review and comment within thirty days after this decree is approved by the Court.

C. The Cleveland School District will develop a plan for the recruitment of faculty and staff. The school district will make every effort to recruit qualified black professionals, specifically including, but not limited to, teachers, counselors, principals, and central office administrators. In particular, the school district shall: (1) inform the placement offices and education departments of all historically black colleges in its regional recruiting area which offer programs of teacher training of all vacancies for professional employment in the Cleveland School District; (2) advertise in educational publications; and (3) advertise all vacancies so that the faculty of the entire district are aware of vacancies.

D. The Cleveland School District shall hire, assign, promote, pay, demote, dismiss, and otherwise treat faculty and staff without regard to race, color or national origin, so as to be in compliance with the extant orders of this Court.

E. For the 1988-89 school year, defendant reassigned faculty within the district at least one of the traditionally white and one of the traditionally black schools at the

elementary, junior high, or high school level so that each one has a faculty which does not reflect the race of the majority of the students at such school. Any transfers necessary to achieve the proper desegregation of the faculty, staff and administrators of each school will be completed by the fall of 1990. The district agrees that it will immediately encourage voluntary transfers of administrators, faculty, and professional staff. In the event voluntary transfers are insufficient to achieve the required desegregation of the faculty, staff, and administrators for the remainder of the district's schools, reassignments will be made at the beginning of the 1990-1991 school year, except that any required transfers of principals will be accomplished by the 1989-1990 school year.

## II. STUDENT DESEGREGATION

### A. Majority-to-Minority Transfer Policy

1. Whenever there shall exist schools containing a majority of either black or white students, the school district shall encourage and permit a student (black or white) attending a school in which his or her race is in the majority to choose to attend another school where his/her race is in the minority.

2. In order to ensure the full implementation of this policy, the school district agrees that:

    a. Thirty (30) days prior to the close of each scholastic year, each student in the school district shall receive a written

statement for distribution to their parents/ guardians describing the school district's Majority-to-Minority transfer policy and outlining the procedures for participation in the transfer program. This notice shall explain that transportation shall be provided by the school district for those students desiring to transfer pursuant to the school district's Majority-to-Minority transfer policy and shall further provide a name and telephone number of the appropriate school district official from whom further information regarding to this policy can be obtained. A copy of this notice shall also be posted on the bulletin board at each school within the school district the day after it is provided to each student.

  b. During the first week in July of each year, the school district shall publish the notice of the school district's Majority-to-Minority transfer policy, described above in a newspaper of general circulation within the school district's geographical boundaries.

  c. The school district shall establish a transportation system to transfer the Majority-to-Minority transfer students.

3. Elementary Majority-to-Minority transfer students attending Cypress Park, Bell, and Nailor elementary schools shall be encouraged to consider transfers to Parks Elementary School as well as transfers to Pearman Elementary School.

4. At such time as the black student enrollment of Pearman Elementary School reaches 50% of the total student enrollment at the school, all Majority-to-Minority transfer students from Nailor, Bell, and Cypress Park zones will be required to attend Parks Elementary School.

5. In accordance with Part III (D) infra, the school district shall encourage non-minority students attending Parks and Pearman to utilize the Majority-to-Minority transfer policy available at Cypress Park, Bell, and Nailor elementary schools.

6. The school district shall encourage non-minority students attending Margaret Green Junior High School to attend Eastwood Junior High School. The school district shall make every effort to ensure that the instructional programs at all junior high schools are comparable in order to attract the Majority-to-Minority transfer students.

B. Attendance Zones

1. Except as provided in Part II.A. above Parts III.B. and Part IV below, students shall be required to attend schools located within the zone the student resides. The current attendance zones of the district have been changed so that the

former Merigold Elementary School zone is now included as a part of the current Pearman Elementary School zone within the district.

The Nailor Elementary School zone has been changed as follows: The north boundary line shall be McKnight Road, the south boundary line shall be Glascow Street, the west boundary line shall be the C&G railroad tracks, and the east boundary line shall be U.S. Highway 61.

The south line of the Nailor zone shall be the north line of the Bell zone between the C&G railroad tracks and U.S. Highway 61.

The west line of the Cypress Park zone will be U.S. Highway 61.

### III. **EQUIVALENT COURSE OFFERINGS**

A. The school district shall ensure uniform opportunity of course offerings to all students throughout the district regardless of which school a student attends, except as provided for under Parts III.B. and IV below.

B. Beginning with the 1988-89 academic year and each year thereafter, the school district will identify specific required college preparatory courses, a minimum of two of which shall be offered each year exclusively at Eastside High School and a minimum of two of which will be offered each year exclusively at Cleveland High School. The courses offered at each high school shall not be based upon student preference at that school. Transportation shall be provided to those students at Cleveland

High School who are taking the courses at Eastside High School, and transportation shall be provided to those students at Eastside High School who are taking the courses at Cleveland High School. The courses offered exclusively at the respective high school shall not be offered during the summer at any school.

C. The school district shall develop and implement a plan for desegregating the predominantly black Eastwood Junior High School. The plan shall be developed no later than January 1990 and implemented no later than September 1990. The school district shall provide a copy of such proposal to the United State within 120 days prior to its implementation. The United States shall have the opportunity to comment on the plan to defendant and, if necessary, to the Court.

D. The school district shall develop and improve the instructional programs at Cypress Park, Bell, and Nailor elementary schools such that those schools will be able to attract majority-to-minority transfer students, to Parks and Pearman elementary schools.

E. The school district shall explore developing cooperative arrangements with the Departments of Education at Delta State University and Mississippi Valley State University to facilitate enhancing the curricula at Cypress Park, Bell, and Nailor elementary schools and utilizing the respective university's faculty and graduate students to assist in providing instruction at said schools.

F. The school district shall ensure that each student attending school within the district is issued a textbook for each course at the beginning of the academic year.

G. The Cleveland School District shall equalize equipment, including libraries, science facilities and apparatus, physical education facilities and apparatus, typewriters, computers, and support materials essential for the educational programs at each elementary, junior-high, and high school operated by the district.

## IV. MAGNET PROGRAM

A. The school district shall establish a voluntary magnet school at one of the predominantly black elementary schools or at the former Hayes Cooper Elementary School in Merigold, Mississippi. This dedicated magnet school shall be designed to attract a substantial number of non-minority and minority students to participate in a desegregated magnet school program. The magnet school shall be established for the Fall 1990 school year. Transportation shall be provided to any student who will attend the magnet school. The district shall develop guidelines for the selection of students to attend the magnet school; however, the admission requirements established for the school will provide that neither race will exceed 50%, plus or minus 5%, of the total student population enrolled at the school.

B. The school district shall provide to the United States, within 120 days prior to the opening of the magnet school, the

school district's plan for implementing the magnet program. The implementation plan shall include:

1. A description of the magnet program and the magnet school theme (e.g., math, science, computer, arts, etc.), the location where the program is administered, the grade(s) level involved, and the number of students to be enrolled by grade, sex, and race;

2. A description of the committees, school entity, or faculty persons having responsibility for the management, operation, selection, and placement of students in the program;

3. A copy of the factors or criteria used by the school district to determine initially whether a student will be considered for admission to the program;

4. A description of the selection/admission criteria used by the school district for admission to the program, including but not limited to academic record, recommendations, test scores, sex, and race;

5. A description of the process for admission indicating whether students are required to submit applications and if, so, a copy of the admission application;

6. A description of the magnet program curriculum, equipment, and availability of funds to operate the program;

7. The racial composition of the faculty for the magnet program;

8. A description of the process utilized for filling vacancies occurring within the magnet program, and for handling overflow applications (e.g., waiting list, ranking order list, etc.); and

9. A description of the criteria and process utilized for administrators, faculty, and staff reassignment to the magnet school.

C. Students will be recruited to the magnet school program through newspaper and other media news releases, distribution of brochures describing the program, parental involvement, and other appropriate means.

D. Evaluation of the Cleveland School District Magnet School as an effective technique for providing a full and meaningful desegregation opportunity to district students shall occur periodically after implementation and shall be on-going during the existence of the decree. In making the evaluation, several factors shall be considered. Primary among these are the recruitment efforts undertaken by the school system to attract non-minority students to the magnet school, the amount of funding committed to make the school successful,

the convenience of transportation for students interested in attending the magnet school, and efforts by the school district to formulate, implement, and support all facets of the magnet program. Every effort shall be made to achieve a student enrollment in the magnet school program that is 50% minority. Should the district fail to achieve this objective, they shall fully document the steps which have been taken to reach the objective and prepare a detailed analysis as to the factors which prevented the district from achieving the objective. Said documentation and analysis shall be provided to all parties, if it becomes necessary for the parties to confer as stated below.

If plaintiff determines that the Cleveland magnet school and/or the other elements of this desegregation plan are failing in any respect to provide a full and meaningful desegregation opportunity to District students, it will confer with the district in an effort to resolve the matter voluntarily. If a voluntary resolution cannot be reached, plaintiff may petition the Court for a determination of whether and to what extent an amendment or modification of elements of this plan is needed to improve the effectiveness of educational incentives designed to attract voluntary, desegregative student transfers.

## V. **FACILITIES**

A. Specific Improvements

1. There will be no disparity of maintenance of any of the schools within the district. The school district shall

ensure that maintenance of all facilities is carried out in a consistent manner.

2. Provided funds are available, the school district will, by the Spring of 1990, construct a track at Eastside High School and obtain or construct a baseball field for said school. If funds are not available at such time, the school district shall give these items (i.e., the track and baseball field) priority when funds are available. In this regard, the school district further agrees to take all reasonable steps to obtain the funds necessary to construct a track and obtain a baseball field for Eastside High School. As money becomes available to the school district for capital improvements, the next priority in expending funds shall be to upgrade the other facilities at Eastside High School until such time as Eastside facilities are equal to those of Cleveland High School.

3. In the event the school district determines to continue operating Nailor Elementary School on a permanent basis, first priority in expending funds at the elementary level shall be for capital improvements at the Nailor Elementary School.

B. <u>School Construction and Site Selection</u>

The school district shall not be required to give the United States prior notice of its intent to make repairs or renovations that relate to health, safety, emergencies, or repairs necessary to comply with state or local governmental building codes. Such repairs and renovations include, but are not limited to, installing handrails, removing asbestos, and repairing plumbing

systems, air condition units, roofs, etc. The school district shall include a description of such repairs and costs in the district's annual report.

The school district shall be required to give the United States prior notice of its intention to undertake major renovations, capital improvements, or construction not covered by provision 1 above. The United States shall be given prior notice of any renovation or construction which would increase, expand, or modify the building capacity at any facility. Upon receiving said notice, the United States shall have twenty days (20) to respond to the same, unless an extension is agreed upon by the parties and/or approved by the Court. The parties shall make every effort to resolve any dispute amicably, and disputes which cannot be resolved between the parties shall be submitted to the Court for resolution.

## VII. **REPORTING**

The Cleveland School Board shall file with the Court and serve on counsel for the plaintiffs and the United States by June 1 of every school year, commencing with the school year in which the Plan is implemented and continuing until such time as the school district is released from the jurisdiction of this Court, reports containing at least the following information:

> (a) The total student enrollment of the district by race for the current school year;
>
> (b) The total student enrollment of each school by race for the current year;

(c) The total number of students by race participating on in the magnet school programs, including each student's sending and receiving school during the current school year;

(d) The total number of students by race participating in the Majority-to-Minority transfer program, including each student's sending and receiving school during the current school year;

(e) The total number of private school returns by race, including each such student's receiving school during the current school year;

(f) A description of all new construction, as well as a description of all renovations, modifications or additions to existing facilities, and repairs or renovations that relate to health, safety, emergencies, or repairs necessary to comply with state or local government buildings proposed to be undertaken and which has not previously been supplied;

(g) A current and accurate description of any and all enrichment-type programs in operation during the current school year, by school;

(h) An evaluation by the school district of the effectiveness of its desegregation measures. In making this evaluation, the school district should attempt to comment on various factors, including

the amount of funding committed to the magnet school and programs, the extent to which magnet schools and programs have been implemented at racially imbalanced schools, the recruitment efforts undertaken by the school system to attract students to utilize various desegregation measures, and the convenience of transportation for students interested in participating in voluntary transfers;

(i) The total number of full time teachers by race in the district;

(j) The total number of full time teachers by race in each school in the district; and

(k) The total number of administrative staff, by race, of each school facility.

### VIII. OTHER PROVISIONS

1. All previous orders and decrees of this Court shall remain in full force and effect to the extent they are not inconsistent with or expressly amended by this Consent Order.

2. This Court shall retain jurisdiction of this action for all purposes consistent with implementation of this Consent Order and other orders filed in this case.

3. Any party to this Order, upon good cause being shown, may move this Court to modify the terms to this Order, but any such motion must state that all parties have participated in good faith discussions to resolve consensually the outstanding disagreements.

4. The Cleveland School District shall make every effort to meet the guidelines set forth in this Order insofar as they apply to the 1989-90 school year; however, due to the inherently unknown length of time required to establish some of the programs called for under this order, deadlines set for the 1989-90 school year may be impractical and may be rescheduled for the immediately succeeding school year. In the event the district deems it to be impractical to establish the programs for the 1989-90 school year, the programs shall in all events be established and operated for the 1990-91 school year. The district shall notify the United States and the Court at least sixty (60) days prior to the beginning of the 1989-90 school year that it deems any such deadline to be impractical, and shall give the reasons why it has to concluded.

5. The Cleveland School District shall not engage in any conduct or activity that will reestablish the dual school structure.

6. Upon implementation of the elements of the plan embodied in this Consent Order, the defendant shall be required to demonstrate that the provisions of the Order have been satisfactorily complied with in all respects. At such time the United States and defendant shall make a good faith effort to reach a consent agreement showing that the provisions of the Order have been met. If the parties are unable to reach such an agreement, the issues on which the parties are unable to agree shall be submitted

to the Court for its consideration, and, if necessary, an evidentiary hearing shall be conducted. Upon an agreement between the parties or a determination by the Court that the provisions of the Order have been satisfactorily implemented, defendant shall be required to operate its school system for a period of three years in full compliance with the provisions of the Order and defendant shall engage in no instances of intentional discriminatory activity. At the end of that three-year period, the United States and defendant shall jointly move that this school district to declared to have attained unitary status, to have eliminated all vestiges of any past discrimination, and to have fully satisfied the judgment of this Court, and that accordingly the injunction entered herein should be dissolved, the judgment discharged, jurisdiction terminated, and the case closed and dismissed with prejudice. The burden shall be on the United States to demonstrate noncompliance and/or intentional discriminatory activity.

ORDERED, this 21st day of September, 1989.

_____
UNITED STATES DISTRICT JUDGE

Approved:

_____
NATHANIEL DOUGLAS
U.S. Department of Justice
Attorneys for Plaintiff-Intervenor

_____
GERALD JACKS
Attorney for Defendant Cleveland
  School District