IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
DELTA DIVISION

DIANE COWAN, minor, by her
mother and next friend, Mrs. Alberta
Johnson, et al.; and FLOYD COWAN, Jr.,
minor, by his mother and next friend, Mrs.
Alberta Johnson, et al.                                          PLAINTIFFS

and

UNITED STATES OF AMERICA                         PLAINTIFF-INTERVENOR

v.                                              CIVIL ACTION NO. 2:65-CV-00031-GHD

BOLIVAR COUNTY BOARD OF
EDUCATION, et al.                                               DEFENDANTS

## MEMORANDUM OPINION

Presently before the Court in this nearly forty-eight-year-old school desegregation case is

Defendant Cleveland School District's proposed plan [44] in response to the Court's March 28,

2012 Order [42] directing the District to submit a proposed plan to further integrate East Side

High School and D.M. Smith Middle School, and to achieve racial balance among its faculty

districtwide. The Government strenuously objects to the proposed plan as a constitutionally

inadequate measure. The Court held a hearing on the proposed plan and subsequently conducted

an on-site tour and inspection of the District's two high schools, Cleveland High School and East

Side High School, and the two junior high schools, Margaret Green Junior High School and

D.M. Smith Middle School. The Court also visited the two magnet elementary schools, Hayes

Cooper Center and Bell Academy. Upon due consideration of the parties' briefing and

arguments, the on-site tour and inspection, and statistical reports and data, the Court is now ready

to rule on the constitutionality of the District's proposed plan.

Cleveland School District is located in Bolivar County within the Mississippi Delta, which is in the northwest section of Mississippi approximately between the Mississippi River and Interstate 55. Although it has been said that the Mississippi Delta "begins in the lobby of the Peabody Hotel in Memphis and ends on Catfish Row in Vicksburg,"[1] the Mississippi Delta actually consists of about fifteen Mississippi counties with an approximate total population of 350,575 persons, 225,653 of which are African American and 119,499 of which are Caucasian.[2] By all accounts, the Mississippi Delta is currently one of the most economically depressed areas in the United States. The Delta's rich, fertile soil has made agriculture its main industry, but otherwise, the area has been unable to keep up with modern economic development of other areas due to its lagging manufacturing and commercial production. Affluent Delta families had a long tradition of sending their children to out-of-state boarding schools, while less wealthy families sent their children to Delta public schools, which were segregated by race according to the law at that time. After the United States Supreme Court ordered desegregation of public schools "with all deliberate speed," private schools began to dot the landscape, and Caucasian families pulled their children out of the public school system to send them to those private schools in an effort to bypass desegregation. What resulted was a majority-African-American enrollment in Delta school districts—far from the racially integrated utopia contemplated by *Brown v. Board of Education* and its progeny. Currently, most Delta school districts have 95% or greater African-American enrollment and 5% or less Caucasian enrollment.[3] Most Delta school districts also fare poorly in state testing.[4]

---

[1] DAVID L. COHN, WHERE I WAS BORN AND RAISED 12 (1948).

[2] These numbers were calculated based on 2011 Census data. *See generally* United States Census Bureau, http://quickfacts.census.gov/qfd/states/28000.html.

[3] *See* Mississippi Department of Education, Public Reports, Enrollment Year 2011–2012, http://orshome.mde.k12.ms.us/Accountability_Information/Home.aspx.

Upon traveling to Cleveland, however, the Court observed that the City of Cleveland is perhaps an exception to the generally economically depressed Mississippi Delta. The location of Delta State University and at least two major manufacturing employers contribute to an attractive, vibrant, clean downtown retail district. The Court also observed that generally the residential areas were well maintained, clean, and attractive. Cleveland is a small, yet thriving, city in eastern Bolivar County with an approximate population of 12,000 residents. Cleveland is the base of the Cleveland School District, which serves the cities of Cleveland, Boyle, Renova, and Merigold. The former Louisville, New Orleans & Texas Railroad ran through the City of Cleveland and has been the dividing line for the two junior high school attendance zones and two high school attendance zones. Students residing on the west side of the former railroad tracks have attended Margaret Green Junior High School and the adjacent Cleveland High School. Students residing on the east side of the former railroad tracks have attended D.M. Smith Middle School and the adjacent East Side High School. The schools on the west side of the former railroad tracks and the east side of the former railroad tracks are approximately 1.3 miles apart. Following this Court's initial Order to submit a plan to desegregate the District's schools, Cleveland School District's desegregation efforts have been supervised by this Court through a series of Orders for nearly five decades. Although the District has achieved remarkable progress toward desegregation over the past several decades, East Side High School and D.M. Smith Middle School have remained racially identifiable as African-American schools.

The Court notes that the case *sub judice* is unusual in many respects. First, it is a school desegregation case that has been pending for nearly five decades in which neither the United States Department of Justice nor the named Plaintiffs have filed any objections in the last

---

[4] *See* Mississippi Department of Education, Public Reports, Subject Area Testing Program 2011–2012, http://orshome.mde.k12.ms.us/Accountability_Information/SATP/SATP12.aspx.

3

twenty-five years. Second, it concerns a school district that appears to be the only school district in the Mississippi Delta, with the possible exception of Western Line School District in Washington County,[5] that has any significant Caucasian enrollment. According to 2011–2012 data, 66% of the children enrolled in Cleveland School District are African American, while 29% of the children enrolled are Caucasian. Third, the overall test scores for Cleveland School District generally exceed the test scores for other schools in the Mississippi Delta.[6] Fourth, the case is also unique among school desegregation cases in that the superintendent of schools is African American, as is the chairman of the School Board.

As heretofore stated, the Court has had occasion to visit, view, and inspect Cleveland High School, East Side High School, Margaret Green Junior High School, D.M. Smith Middle School, Bell Academy, and Hayes Cooper Center. After inspection and investigation of statistical reports and data, it appears to the Court that the City of Cleveland and Cleveland School District can perhaps be categorized as an oasis in the Mississippi Delta. The Court found all of the District's schools to be clean, well maintained, and immaculate in appearance.

The District maintains two high schools, Cleveland High School and East Side High School, and two junior high schools, D.M. Smith Middle School and Margaret Green Junior High School. In addition, the District maintains six elementary schools: Parks Elementary School, Pearman Elementary School, Cypress Park Elementary School, Nailor Elementary School, Bell Academy, and Hayes Cooper Center. Cleveland High School, located on the west side of the former railroad tracks, was an all-Caucasian school by law during the District's former *de jure* segregated school system. The Court notes that the core building for Cleveland

---

[5] There is a large electrical-producing power plant located in the Western Line School District territory. Due to this facility, Western Line School District enjoys a very favorable local tax base.
[6] *See* Mississippi Department of Education, Public Reports, Subject Area Testing Program 2011–2012, http://orshome.mde.k12.ms.us/Accountability_Information/SATP/SATP12.aspx.

4

High was constructed in 1939, prior to World War II. It is amazing that this building has been so well maintained over the years. East Side High School, located on the east side of the former railroad tracks in a much newer building, was an all-African-American school by law during the District's former *de jure* segregated school system. The District currently operates a magnet program at East Side High that consists of a visual and performing arts program for grades 9 through 12 and an international baccalaureate diploma program for grades 11 and 12. In addition to the magnet program at East Side High, the District also buses students who attend East Side High and Cleveland High to each other's schools to take certain classes to further enrich and equalize the educational experiences of the two schools.

Margaret Green Junior High School, located on the west side of the former railroad tracks, was an all-Caucasian school by law during the former *de jure* segregation school system. The school was constructed in the mid-1950s. D.M. Smith Middle School, located on the east side of the former railroad tracks and formerly known as Eastwood Junior High School, was an all-African-American school by law during the District's former *de jure* segregated school system. The District operates a magnet program at D.M. Smith Middle School which consists of an arts and international baccalaureate program that serves grades 7 and 8.

The Court notes that the predominantly African-American junior and high schools—East Side High School and D.M. Smith Middle School—are actually housed in newer and probably superior facilities than their counterparts located on the west side of the former railroad tracks. Upon touring the facility at East Side High School, the trophy cases for athletic achievement reminded the Court of what you might see at the University of Alabama. The president of the School Board, who is a graduate of East Side High School, testified at the hearing that there exists a long prideful legacy among the alumni of this institution.

5

During the Court's visit and tour of the school facilities, the Court was favorably impressed with the District's two magnet elementary schools at Hayes Cooper Center and Bell Academy. The clear organization, impeccability of facilities, and attention to detail by the teachers, maintenance staff, and students themselves is evident on a walk through the halls of these institutions. Both schools have been able to attract minority students and have achieved near racial balancing.

In our previous March 28, 2012 opinion, this Court found that the current enrollment at East Side High School and D.M. Smith Middle School did not meet the constitutional prerequisites for desegregation pursuant to the *Brown v. Board of Education* opinion and its progeny. The United States Supreme Court held in *Brown* that "[t]o separate [students] from others of similar age and qualifications solely because of their race generates a feeling of inferiority as to their status in the community that may affect their hearts and minds in a way unlikely ever to be undone." *See Brown v. Bd. of Educ.*, 347 U.S. 483, 494, 74 S. Ct. 686, 98 L. Ed. 873 (1954) (*Brown I*). Although "[s]chool authorities have the primary responsibility for elucidating, assessing, and solving these problems[,] courts will have to consider whether the action of school authorities constitutes good faith implementation of the governing constitutional principles." *Brown v. Bd. of Educ.*, 349 U.S. 294, 299, 75 S. Ct. 753, 99 L. Ed. 1083 (1955) (*Brown II*). Although allowing students of either race to attend the previously desegregated schools is a good start, such a step "merely begins, not ends" the inquiry of whether the school board has taken adequate steps to abolish its segregated system. *See Green v. Cnty. Sch. Bd. of New Kent Cnty., Va.*, 391 U.S. 430, 437, 88 S. Ct. 1689, 20 L. Ed. 2d 716 (1968). Invidious racial distinctions must be eliminated. In evaluating whether schools have reached good faith compliance with desegregation orders, courts examine the *Green* factors: student assignment,

6

faculty, staff, transportation, extracurricular activities, and facilities. *Anderson v. Madison Cnty. Sch. Dist.*, 517 F.3d 292, 298 (5th Cir. 1998); *see Freeman v. Pitts*, 503 U.S. 467, 483, 112 S. Ct. 1430, 118 L. Ed. 2d 108 (1992) (in turn citing *Green*, 391 U.S. at 435, 88 S. Ct. 1689). Complete racial balance is not required to achieve good faith compliance; instead, courts must look to whether "the school district has done all that it could to remedy the segregation caused by official action." *See Anderson*, 517 F.3d at 298 (internal quotation marks and citations omitted).

The Fifth Circuit has recognized that "the [United States Supreme] Court has repeatedly stressed the importance of local control over schools" and "[c]ourts have likewise emphasized the importance of maximum local responsibility for crafting integration strategies." *See Cavalier ex rel. Cavalier v. Caddo Parish Sch. Bd.*, 403 F.3d 246, 265–66 (5th Cir. 2005). This Court recognizes that "[r]eturning schools to the control of local authorities at the earliest practicable date is essential to restore their true accountability in our governmental system." *See Freeman*, 503 U.S. at 490, 112 S. Ct. 1430; *accord Missouri v. Jenkins*, 515 U.S. 70, 102, 115 S. Ct. 2038, 132 L. Ed. 2d 63 (1995) (ultimate goal in desegregation cases is "to restore state and local authorities to the control of a school system that is operating in compliance with the Constitution"); *Milliken v. Bradley*, 433 U.S. 267, 280–81, 97 S. Ct. 2749, 53 L. Ed. 2d 745 (1977) (in desegregation cases, the court "must take into account the interests of state and local authorities in managing their own affairs, consistent with the Constitution"). Indeed, "local autonomy of school districts is a vital national tradition." *Freeman*, 503 U.S. at 490, 112 S. Ct. 1430 (citing *Dayton Bd. of Educ. v. Brinkman*, 433 U.S. 406, 410, 97 S. Ct. 2766, 53 L. Ed. 2d 851 (1977)). "When the school district and all state entities participating with it in operating the schools make decisions in the absence of judicial supervision, they can be held accountable to the citizenry, to the political process, and to the courts in the ordinary course." *Id.*, 112 S. Ct.

1430. "[L]ocal control over the educational process affords citizens an opportunity to participate in decisionmaking, permits the structuring of school programs to fit local needs, and encourages 'experimentation, innovation, and a healthy competition for educational excellence.' " *Milliken*, 433 U.S. at 742, 94 S. Ct. 3126. However, school districts under desegregation orders must "take all steps necessary to eliminate the vestiges of the unconstitutional *de jure* system." *Hull v. Quitman Cnty. Bd. of Educ.*, 1 F.3d 1450, 1453 (5th Cir. 1993) (quoting *Freeman*, 503 U.S. at 485, 112 S. Ct. 1430).

The Court notes that the District has proposed its remedy of establishing magnet schools at both of these institutions as a solution to the Court's desegregation requirements. The Government has strenuously objected to this remedy as constitutionally inadequate. The Court is of the opinion that although the District has demonstrated some success with its magnet programs, it is now time for this Court to intervene and state its opinion as to a plan that will fall within the parameters of prevailing constitutional and case law.

The Court does not order consolidation of the two high schools and two junior high schools. However, the Court is of the opinion that the attendance zones, as defined by the former railroad tracks in Cleveland, perpetuate vestiges of racial segregation. The high school and junior high school students should have a true freedom of choice to attend either high school and either junior high school. Accordingly, the Court orders that the heretofore-established attendance zones shall be abolished, thus establishing an open-enrollment procedure. The District shall now work to establish procedures for pre-registration to ascertain the projected enrollment at each high school and each junior high school for the 2013–2014 school year. This pre-registration should be concluded by April 1, 2013. In the event that the existing facilities are

8

inadequate to meet the projected registration, the Court will then address the matter with the parties as to an appropriate utilization of existing facilities.

Also, the majority-to-minority transfer program, whereby a student of majority race at one's school could transfer to a school where one's race was in the minority, is hereby abolished. The requirement for his race to be a minority in the transferee school is eliminated, thus permitting any child within the District to enroll in either of the high schools or junior high schools, regardless of the racial composition of the student body at such schools. The Court is of the opinion that this arrangement will permit a true freedom-of-choice enrollment as to both the high school and junior high school grades. In the opinion of the Court, this true freedom-of-choice arrangement will meet the constitutional requirements. In the event transfers under this system result in a significant numerical imbalance in the high schools, Cleveland High School and East Side High School, and/or the junior high schools, Margaret Green Junior High School and D.M. Smith Middle School, the Court will address this problem accordingly.

Cleveland School District is encouraged to continue developing and expanding its magnet school programs, specifically with its proposals to establish magnet programs at D.M. Smith Middle School and East Side High School. In the opinion of the Court, the District has clearly demonstrated with its two magnet elementary schools, Bell Academy and Hayes Cooper Center, that magnet schools can result in increasingly racially integrated public schools.

A separate order in accordance with this opinion shall issue this day.

All Orders not inconsistent with this opinion and corresponding order herewith remain in full force and effect.

THIS, the 24 day of January, 2013.

SENIOR JUDGE