# UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 13-60464

United States Court of Appeals
Fifth Circuit

**FILED**
April 1, 2014

Lyle W. Cayce
Clerk

D.C. Docket No. 2:65-CV-31

DIANE COWAN, etc., et al

    Plaintiffs

UNITED STATES OF AMERICA,

    Intervenor Plaintiff - Appellant

v.

CLEVELAND SCHOOL DISTRICT,

    Defendant - Appellee

Appeal from the United States District Court for the
Northern District of Mississippi, Oxford

Before KING, SOUTHWICK, and GRAVES, Circuit Judges.

JUDGMENT

This cause was considered on the record on appeal and was argued by counsel.

It is ordered and adjudged that the judgment of the District Court is reversed, and the cause is remanded to the District Court for further proceedings in accordance with the opinion of this Court.

IT IS FURTHER ORDERED that appellee pay to appellant the costs on appeal to be taxed by the Clerk of this Court.

ISSUED AS MANDATE: 2 7 MAY 2014

A True Copy
Attest

Clerk, U.S. Court of Appeals, Fifth Circuit

By: _____
Deputy

2 7 MAY 2014

New Orleans, Louisiana

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 13-60464

United States Court of Appeals
Fifth Circuit
**FILED**
April 1, 2014
Lyle W. Cayce
Clerk

DIANE COWAN, etc., et al

Plaintiffs

UNITED STATES OF AMERICA,

Intervenor Plaintiff - Appellant

v.

CLEVELAND SCHOOL DISTRICT,

Defendant - Appellee

Appeal from the United States District Court
for the Northern District of Mississippi

Before KING, SOUTHWICK, and GRAVES, Circuit Judges.

JAMES E. GRAVES, JR., Circuit Judge:

In this nearly fifty-year-old desegregation case, the United States appeals the district court's order implementing a freedom of choice plan intended to desegregate the formerly *de jure* African-American middle school and high school in the Cleveland School District ("the District"). We reverse and remand for further consideration of the desegregation remedy.

### I. Factual and Procedural Background

The Cleveland School District encompasses the southeast area of Bolivar County in the Mississippi Delta, including the city of Cleveland, the towns of

No. 13-60464

Boyle, Renova, and Merigold, and outlying areas. Most of the District's schools are located in Cleveland, a city of approximately 12,000 people. The District is one of many school districts in Mississippi that previously practiced race-based *de jure* segregation in education. Under that system, African-American students were required to attend schools on the east side of the railroad tracks that run north to south through Cleveland, while white students attended schools on the west side of town. The original plaintiffs in this case sued in 1965 to enjoin the District from maintaining segregated schools, and the district court ordered the District to submit a desegregation plan to dismantle the dual school system and remedy the continuing effects of segregation. The United States intervened in 1985. Over the ensuing decades, the district court has supervised the desegregation efforts in the District through a series of desegregation orders.[1] The present appeal concerns D.M. Smith Middle School and East Side High School, the formerly *de jure* African-American junior high and high school in the District, which are located near each other on the east side of town.[2] The formerly *de jure* white junior high and high school, Margaret Green Junior High and Cleveland High School, are located adjacent to each other on the west side of town.

The United States filed a motion in May 2011, arguing that the District was not in compliance with the extant desegregation orders and requesting further relief. The desegregation orders contain a number of components, but the United States challenged only the District's non-compliance with the

---

[1] The details of these orders are recounted at length in the district court's thorough March 28, 2012 memorandum opinion. *See Cowan ex rel. Johnson v. Bolivar Cnty. Bd. of Educ.* (*Cowan I*), 914 F. Supp. 2d 801 (N.D. Miss. 2012). We discuss only those portions of the orders that are relevant to the instant appeal.

[2] Under the *de jure* system, all African-Americans in grades 7-12 attended a single school, now East Side High School. A second junior high, D.M. Smith Middle School was constructed later, on a site behind East Side High School.

2

student assignment and faculty assignment components of the desegregation orders. In relevant part, with regard to junior high and high school student assignment, the previous desegregation orders created east and west attendance zones, bounded by the railroad tracks in the center of town: all students living west of the tracks attended Margaret Green Junior High and Cleveland High School, while all students living east of the tracks attended D.M. Smith Middle School and East Side High School. The orders also included a majority-to-minority transfer policy requiring the District to encourage and permit students in the racial majority at one school to transfer if they would be in the racial minority at the other school. The faculty assignment component of the desegregation orders provided that the faculty and professional staff at each school should reflect the districtwide ratio of minority and nonminority faculty and professional staff to the extent feasible.

In a thorough, well-reasoned March 28, 2012 memorandum opinion, the district court analyzed whether the District was in compliance with the student assignment and faculty assignment components of the desegregation orders. *Cowan ex rel. Johnson v. Bolivar Cnty. Bd. of Educ. (Cowan I)*, 914 F. Supp. 2d 801 (N.D. Miss. 2012). It determined that the District had achieved desegregation in many of its schools, particularly within the District's six elementary schools. It noted the District's success in attracting white students to its formerly *de jure* African-American elementary schools through magnet programs and magnet schools. It also found that the District's formerly *de jure* white junior high and high school, Margaret Green Junior High School and Cleveland High School, were desegregated. However, the district court found that a new plan was needed to eliminate segregation at D.M. Smith Middle School and East Side High School, which have never been meaningfully desegregated but have always been and continue to be racially identifiable, almost exclusively black schools. Although white enrollment in the District

No. 13-60464

has held steady around 29% in recent years, the student population at D.M. Smith and East Side High is now and has always been between 98% and 100% black.

The District submitted its proposed desegregation plan for the 2012-2013 academic year in May 2012. The District proposed to create new magnet programs and revitalize existing magnet programs at D.M. Smith and East Side High. The proposed plans consisted of offering specialized or advanced classes only at D.M. Smith Middle School and East Side High School, and recommitting to the International Baccalaureate programs at both schools in order to attract students enrolled at Margaret Green Junior High School and Cleveland High School, and to attract students graduating from the successful magnet programs at the elementary schools. Parts of the District's plan called for white students to attend D.M. Smith or East Side High for certain classes or for part of the day, without enrolling full time at those schools. The United States objected to the District's plan, claiming that the magnet programs did not and would not attract white students in significant numbers and the District's plan would not meaningfully integrate the schools. The United States also argued that consolidation of the schools into one junior high and one high school for the entire District would accomplish the objectives set forth by the district court.

The district court held a hearing on the adequacy of the District's proposed plan in December 2012. Beverly Hardy, an elementary school principal and director of the magnet program, and Maurice Lucas, president of the school board, testified in favor of the District's plan. Hardy explained how the magnet programs at the schools would work, and Lucas explained why the school board chose its plan, claiming that the magnet programs were likely to be successful. He also testified that the school board had not considered consolidation. The United States called Reverend Edward Duval, Lenden

4

No. 13-60464

Sanders and Tonya Short, parents of children attending East Side High School and D.M. Smith Middle School. These witnesses opposed the District's plan, generally testifying that the schools on the east side of town were not academically challenging for their children, that there was a continuing stigma associated with attending those schools, and that the public consensus was in favor of consolidation.

The district court issued its memorandum opinion regarding the desegregation remedy on January 24, 2013. *Cowan ex rel. Johnson v. Bolivar Cnty. Bd. of Educ. (Cowan II)*, 923 F. Supp. 2d 876 (N.D. Miss. 2013). The district court detailed observations from its site visit to the Cleveland schools, noting that D.M. Smith and East Side High had equal or better facilities compared to Margaret Green Junior High and Cleveland High School. The district court then rejected both the District's proposed desegregation plan and the United States's proposed alternative of consolidation, and adopted a new plan not previously suggested. Finding that "the attendance zones, as defined by the former railroad tracks in Cleveland, perpetuate vestiges of racial segregation," the district court adopted a plan that abolished the attendance zones and majority-to-minority transfer program and implemented a freedom of choice plan that allows each student in the district to choose to attend any junior high or high school.

Shortly thereafter, the United States filed a Rule 59 motion to alter the judgment. It maintained, as it does on appeal, that the freedom of choice plan was constitutionally inadequate and again argued that the appropriate solution was consolidation. The District responded, as it does on appeal, by defending the freedom of choice plan. It argued that the plan was constitutionally adequate and that the United States had not offered evidence that the plan would not work. It also argued that a mandatory consolidation plan would ultimately result in decreased integration due to "white flight" from

5

the District, as mandatory consolidation would lead to white parents leaving the District or placing their children into private schools. While the Rule 59 motion was pending, the District submitted pre-enrollment data for the 2013-14 school year. As of April 1, 2013, approximately three-quarters of the District's eligible junior high and high school students had pre-enrolled. Of those that had pre-enrolled, not one white student chose to pre-enroll at East Side High School, but 216 African-American students pre-enrolled at that school. Similarly, not a single white student pre-enrolled at D.M. Smith Middle School, but 134 African-American students pre-enrolled there. In addition to noting the obvious racial imbalance suggested by this data, the United States pointed out that, depending upon where the undecided African-American students chose to pre-enroll, there was a real possibility that Margaret Green Junior High School and Cleveland High School might be oversubscribed and D.M. Smith Middle School and East Side High School would not have enough students to operate economically. The district court denied the Rule 59 motion. It stated that it had considered the pre-enrollment data and the response of the United States but that it would not alter its judgment. In reaching this conclusion, the district court stated that it "gives credence to the testimony of the African-American president of the District's school board, Maurice Lucas." Mr. Lucas had testified that he did not support consolidation, because it was not his intention to eliminate East Side High School and that he believed the identity of the two high schools was important to the community.

The United States appeals the district court's order instituting the freedom of choice plan as a desegregation remedy. Neither the United States nor the District appealed the district court's March 28, 2012 memorandum opinion, which found that the District had achieved integration at many of its

No. 13-60464

schools but found continuing segregation at East Side High School and D.M. Smith Middle School.[3]

## II. Analysis

"Failure on the part of school authorities to implement a constitutionally prescribed unitary school system brings into play the full panoply of the trial court's remedial power." *Valley v. Rapides Parish Sch. Bd.*, 702 F.2d 1221, 1225 (5th Cir. 1983) (citing *Swann v. Charlotte-Mecklenburg Board of Education*, 402 U.S. 1 (1971)). We review the district court's implementation of desegregation remedies for abuse of discretion. *Id.* We review conclusions of law *de novo*, and findings of fact for clear error. *Id.* Here, neither party challenged the district court's determinations that a new plan should be administered to desegregate D.M. Smith Middle School and East Side High School, and that further remedies were not necessary in the District's elementary schools. On appeal, the United States asks us to remand so that the district court can consider alternative plans to desegregate D.M. Smith and East Side High, including consolidation, while the District requests that we affirm the implementation of the freedom of choice plan.

In desegregation cases, the objective is "to eliminate from the public schools all vestiges of state-imposed segregation." *Swann*, 402 U.S. at 15. "The transition to a unitary, nonracial system of public education was and is the ultimate end to be brought about. . . ." *Green v. Cnty. Sch. Bd. of New Kent*

---

[3] The district court also determined that, despite its good faith effort, the District was not in compliance with the faculty assignment component of the extant desegregation orders. The district court ordered the District to submit a plan with "real prospects for achieving a ratio of African-American to Caucasian teachers and administration in each school to approximate the race ratio throughout the districtwide school system." However, the subsequent order regarding the desegregation remedy failed to address faculty assignment, an issue the parties only briefly mention on appeal. On remand, the district court should clarify the status of this issue, particularly whether there is a continuing violation, and if so, the remedy to be implemented.

7

*Cnty., Va.*, 391 U.S. 430, 436 (1968). The duty is not simply to eliminate express racial segregation: where *de jure* segregation existed, the school district's duty is to eliminate its effects "root and branch." *Id.* at 437-38. Now, six decades after *Brown v. Topeka Board of Education*, 347 U.S. 483 (1954), "[t]he burden on a school board today is to come forward with a plan that promises realistically to work, and promises realistically to work now." *Green*, 391 U.S. at 439; *see Davis v. E. Baton Rouge Parish Sch. Bd.*, 721 F.2d 1425, 1437 (5th Cir. 1983).

A freedom of choice plan is not necessarily an unreasonable remedy for eliminating the vestiges of state-sponsored segregation, but it has historically proven to be an ineffective desegregation tool. *See Green*, 391 U.S. at 439-40. Likewise, some racially homogeneous schools within a school system do not necessarily violate the federal Constitution. *See Swann*, 402 U.S. at 25-26; *Valley*, 702 F.2d at 1226; *see also Flax v. Potts*, 915 F.2d 155, 160-62 (5th Cir. 1990). However, "[t]he retention of all-black or virtually all-black schools within a dual system is nonetheless unacceptable where reasonable alternatives may be implemented." *Valley*, 702 F.2d at 1226. The retention of single-race schools may be particularly unacceptable where, as here, the district is relatively small, the schools at issue are a single junior high school and a single high school, which have never been meaningfully desegregated and which are located less than a mile and a half away from the only other junior high school and high school in the district, and where the original purpose of this configuration of schools was to segregate the races. Apart from the fact that Cleveland has not sought a declaration of unitary status and has not challenged the district court's conclusion that further remedies are necessary, on the record now before us, the situation in Cleveland is distinguishable from those where we have found that the retention of some one-race schools did not preclude a declaration of unitary status. *See Flax*, 915

8

F.2d at 161 (finding that fourteen schools that were over 80% black did not preclude declaration of unitary status in large urban district with 98 total schools, where it was "essentially uncontroverted" that the district had succeeded in "removing the vestiges of the dual system"); *Ross v. Houston Independent School District*, 699 F.2d 218, 226-28 (5th Cir. 1983) (finding that thirty-three schools that were 90% black did not preclude declaration of unitary status in large urban district with 226 schools facing "unusual, perhaps unique, problems," including rapidly changing demographics and housing patterns).

    We acknowledge that confecting a remedy in these types of cases can be especially difficult. No matter how noble the effort, the effect can be less than adequate. Unlike the district court's earlier opinion finding that further remedies were necessary, the remedial order adopting the freedom of choice plan lacks explanation. While we are "mindful that the scope of a district court's equitable power to remedy past wrongs is broad, for breadth and flexibility are inherent in equitable remedies," *Valley*, 702 F.2d at 1225 (internal quotation marks omitted) (quoting *Swann*, 402 U.S. at 15), we are unable to evaluate the soundness or reasoning of the decision, where it is not discussed in the opinion. Although we do not hold that the freedom of choice plan is necessarily inadequate, there are apparent deficiencies in the plan that were not addressed by the district court. First, there was no evidence or explanation indicating that the freedom of choice plan was likely to work, and all the available empirical evidence indicates that the plan is not likely to contribute to meaningful desegregation at D.M. Smith Middle School or East Side High School. African-American students residing in the eastern attendance zone have availed themselves of the now abolished majority-to-minority transfer policy over the years, but in the nearly five decades in which the District has been under federal court supervision, not one white student

9

has ever voluntarily transferred to D.M. Smith Middle School or East Side High School. The pre-enrollment data for the 2012-13 school year, submitted while the Rule 59 motion was pending, indicated that the order had no effect on the status quo: no white student pre-enrolled at D.M. Smith or East Side High. Albeit not part of the record before the district court, the District at oral argument acknowledged that the plan has now been in effect for over a year, and no white student has enrolled at D.M. Smith or East Side High. In defending the freedom of choice plan on appeal, the District does not even forcefully argue that the plan is likely to work at D.M. Smith Middle School and East Side High School, instead focusing on its successes at other schools in the district. Lastly, the district court did not explain its reasoning for rejecting the District's proposed desegregation plan of revitalizing and expanding magnet programs at the black schools, or the United States's proposed remedy of consolidation, and instead adopted a freedom of choice plan that neither party had suggested. The district court encouraged the District to continue to strengthen its magnet programs but did not order the magnet program plan to be implemented.

"The findings and conclusions we review must be expressed with sufficient particularity to allow us to determine rather than speculate that the law has been correctly applied." *Davis v. E. Baton Rouge Parish Sch. Bd.*, 570 F.2d 1260, 1263-64 (5th Cir. 1978). The district court did not make clear its conclusion that the problem of the continuing racial isolation and racial identifiability of D.M. Smith Middle School and East Side High School would be resolved by the implementation of a freedom of choice plan. We do not hold that the freedom of choice plan is constitutionally inadequate or could form no part of a desegregation plan. But the district court should consider, review and explain why it is discarding some remedies in favor of others. If the district court concluded that the freedom of choice plan was likely to be successful, it

No. 13-60464

must explain why and consider the contradictory evidence in the record. On appeal, the District strongly implies that, essentially, there is no more that it can do to desegregate D.M. Smith and East Side High. The district court, however, concluded that the District should remain under federal supervision and ordered the District to propose a new desegregation plan for those two schools. Further, the District has not moved for unitary status. However, if the district court's remedy is premised on a conclusion that, aside from the freedom of choice plan, there is nothing more that the District can or should do to desegregate D.M. Smith and East Side High, that conclusion should be justified. If the district court's order is premised on avoiding "white flight" that may occur as a result of other proposed remedies such as consolidation, it must grapple with the complexities of that issue. *See United States v. Pittman by Pittman*, 808 F.2d 385, 391 (5th Cir. 1987) (noting that white flight may be one legitimate concern "when choosing among constitutionally permissible plans" but "cannot be accepted as a reason for achieving less than complete uprooting of the dual public school system"). While we do not require the district court to provide us a granular report regarding every option considered, the district court should sort through the various proposed remedies, exclude those that are inadequate or infeasible and ultimately adopt the one that is most likely to achieve the desired effect: desegregation.

Given the available statistics showing that not a single white student chose to enroll at D.M Smith or East Side High after the district court's order, and that historically, over the course of multiple decades, no white student has ever chosen to enroll at D.M. Smith or East Side High, the district court's conclusion that a freedom of choice plan was the most appropriate desegregation remedy at those schools certainly needed to be expressed with sufficient particularity to enable us to review it. *See Davis*, 570 F.2d at 1263-64. We therefore reverse and remand for a more explicit explanation of the

11

reasons for adopting the freedom of choice plan, and/or for consideration of the alternative desegregation plans proposed by the parties, as appropriate.

### III. Conclusion

For the foregoing reasons, we REVERSE and REMAND to the district court for further proceedings consistent with this opinion.