IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
DELTA DIVISION

DIANE COWAN, minor, by her
mother and next friend, Mrs. Alberto
Johnson, et al.; and FLOYD COWAN, Jr.,
minor, by his mother and next friend, Mrs.
Alberto Johnson, et al.                                                    PLAINTIFFS

and

UNITED STATES OF AMERICA                          PLAINTIFF-INTERVENOR

v.                                                            CIVIL ACTION NO. 2:65-cv-00031-GHD

BOLIVAR COUNTY BOARD OF
EDUCATION, et al.                                                          DEFENDANTS

MEMORANDUM OPINION

It was recently brought to the Court's attention by one of the parties to this nearly fifty-year-old litigation that while the undersigned was the Presidentially appointed United States Attorney of the Northern District of Mississippi the undersigned's name appeared in documents pertaining to the Government's request to intervene that were filed with the Court in January of 1985. For the reasons stated below, the undersigned is of the opinion that he should recuse himself from this case. The undersigned notes that more than twenty years have transpired since he has recused from any case involving a possible conflict in connection with his service as United States Attorney.

*A. Pertinent Procedural History*

The case *sub judice* was initially filed on July 24, 1965, and was at that time assigned to Judge Claude F. Clayton. In 1968, Judge Clayton was elevated to the Fifth Circuit Court of Appeals. The case was then assigned to Judge William C. Keady. On January 23, 1985, while the case was still assigned to Judge Keady, the Government filed the following documents in the

1

case: a notice of motion for leave to intervene as a party-plaintiff and to file a complaint-in-intervention, a motion for leave to intervene as a party-plaintiff, a memorandum of law in support of the same, and a complaint-in-intervention.[1]  The undersigned was the Presidentially appointed United States Attorney in the Northern District of Mississippi from July 1, 1981 until October 10, 1985. Thus, the notice, petition to intervene, and complaint-in-intervention included a signature block with the undersigned's name indicated as the United States Attorney for the Northern District of Mississippi.[2]  The undersigned did not actually sign the documents, which were prepared by the United States Department of Justice Civil Rights Division in Washington, D.C.  However, the undersigned did authorize an Assistant United States Attorney to sign the documents on behalf of the United States.  On March 21, 1985, Judge Keady entered an Order granting the Government's motion for leave to intervene, and a supplemental Order with respect to the same on May 3, 1985.  Then, on November 8, 1985, Judge Keady transferred the case to the undersigned, who had recently been appointed as a United States District Court judge for the Northern District of Mississippi.

On September 2, 1986, the undersigned entered an Order transferring the case to Judge L.T. Senter, Jr.  The case remained under the supervision of Judge Senter until it was transferred back to the undersigned on August 21, 2003, when the parties filed a joint motion to authorize the sale of real property.[3]  After the Court granted that unopposed motion, the Defendant, Cleveland School District (the "School District"), continued to submit reports to the Court. However, the case essentially remained inactive until May 2, 2011, when the Government filed a

---

[1] The aforementioned documents are attached to this opinion.

[2] It is noted that the then-Attorney General of the United States, the Honorable William French Smith, and the then-Assistant Attorney General, Civil Rights Division of the United States Department of Justice, the Honorable Bradford Reynolds, personally signed the complaint-in-intervention.

[3] After assuming senior status, Judge Senter transferred to the United States District Court for the Southern District of Mississippi in January of 1999.

motion for further relief [5] asking the Court to find the School District in violation of the Court's prior desegregation Orders and to order the School District to devise a desegregation plan that would comport with those prior desegregation Orders. The School District filed a response in opposition to the motion, and the Government filed a reply. It thus became necessary for the Court to review the developments in the case up to the 2011 filing. All documents filed prior to 2010 were done so before the implementation of electronic filing in the court system and are stored in the National Archives, Southeast Region in Morrow, Georgia. Therefore, in preparing to address the developments in the case prior to 2011, the Court obtained all prior Orders, opinions, and decrees, but did not obtain all pleadings and motions.

Accordingly, the undersigned had no recollection that his name had appeared in the signature blocks of the Government's motion to intervene and related documents until he was notified of the same by one of the parties to this litigation.

### B. Analysis and Discussion

Two federal statutes, 28 U.S.C. §§ 455 and 144, govern the disqualification of United States judges. Section 455 is the statute pertinent to this case and provides that "[a]ny . . . judge . . . of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). Section 455(b)(3), which is also codified as Canon 3(C)(1)(e) of the Judicial Code of Conduct for Judges, provides that a United States judge "shall disqualify himself. . . in a proceeding in which judge's impartiality might reasonably be questioned, including . . . instances in which: the judge has served in governmental employment and in that capacity participated as . . . counsel . . . concerning the proceeding . . . ."

The majority of United States Circuit Courts of Appeal have held that "a United States Attorney serves as counsel to the government in all prosecutions brought in his district while he

is in office and that he therefore is prohibited from later presiding over such cases as a judge";
thus, "actual participation" need not be shown by the former United States Attorney in the
proceeding for recusal to be necessary. *See Kendrick v. Carlson*, 995 F.2d 1440, 1444 (8th Cir.
1993). This *per se* rule is adhered to by the Third Circuit, the Seventh Circuit, the Eighth
Circuit, and the Ninth Circuit, and the United States Supreme Court has denied certiorari in
many such cases. *See United States v. Di Pasquale*, 864 F.2d 271, 278–79 (3rd Cir. 1988), *cert.
denied*, 492 U.S. 906, 109 S. Ct. 3216, 106 L. Ed. 2d 566 (1989); *Barry v. United States*, 528
F.2d 1094, 1099 n.14 (7th Cir.), *cert. denied*, 429 U.S. 826, 97 S. Ct. 81, 50 L. Ed. 2d 88 (1976);
*United States v. Lara-Unzueta*, 735 F.3d 954, 959–60 (7th Cir. 2013); *United States v. Ruzzano*,
247 F.3d 688, 696 (7th Cir. 2001); *United States v. Arnpriester*, 37 F.3d 466, 467 (9th Cir.
1994); *Kendrick*, 995 F.2d at 1444.

However, the Tenth Circuit holds to the contrary, that when the United States District
Judge was a former United States Attorney in the district and was of counsel in the case, but did
not actively participate in the case, recusal is not warranted. *See Gibbs v. Massanari*, 21 F.
App'x 813, 815 (10th Cir. 2001). *See also Laird v. Tatum*, 409 U.S. 824 (1972) (memorandum
of Rehnquist, J.) (Supreme Court Justice not required to recuse himself from case to which he
had a formal relationship while serving in the United States Justice Department); *Muench v.
Israel*, 524 F. Supp. 1115 (E.D. Wis. 1981) (former Wisconsin Attorney General refused to
recuse himself from case where his relationship to it has been merely formal). The Tenth Circuit
stresses that "[m]andatory disqualification . . . is restricted to those cases in which a judge had
previously taken a part, albeit small, in the investigation, preparation, or prosecution of a case."
*United States v. Gipson*, 835 F.2d 1323, 1326 (10th Cir. 1988). The Tenth Circuit made clear in
*Gipson*, 835 F.2d at 1326, that the current version of § 455(b)(3), by its language, requires actual

4

participation on the case currently being decided, because Congress' use of the word "participated" in the current version of the statute implies that a higher degree of activity on the case is required than in the previous version of the statute which referred to any case on which the judge had been "of counsel."

This Court is aware that the Fifth Circuit has not had occasion to decide this particular issue. The Court finds that it must recuse to comply fully with the provisions of Canon 3(C)(1)(e) of the Judicial Code of Conduct for Judges. Therefore, in the interest of avoiding even the appearance of any judicial impropriety and to forestall any possible problems at some future date, the undersigned hereby recuses himself and returns this matter to the trial docket in the United States Court for the Northern District of Mississippi for reassignment.

An order in accordance with this opinion shall issue this day.

THIS, the 21st day of July, 2014.

_____
SENIOR JUDGE

IN THE UNITED STATES DISTRICT COURT FOR THE

NORTHERN DISTRICT OF MISSISSIPPI

DELTA DIVISION

**FILED**

DIANE COWAN, ET AL.          )
                             )
        Plaintiffs,          )
                             )
UNITED STATES OF AMERICA,    )
                             )
        Plaintiff-Intervenor )
        Applicant,           )
                             )          CIVIL ACTION NO.
    v.                       )          DC 6531-K
                             )
BOLIVAR COUNTY BOARD OF      )
EDUCATION, SCHOOL DISTRICT   )
NUMBER FOUR OF BOLIVAR COUNTY, )
MISSISSIPPI, ET AL.          )
                             )
        Defendants.          )

JAN 23 1985

NORMAN L. GILLESPIE, CLERK
By _____
                    Deputy

## NOTICE OF MOTION

PLEASE TAKE NOTICE that as soon as counsel may be heard in the courtroom of the United States District Court for the Northern District of Mississippi, Delta Division, Clarksdale, Mississippi, the United States will move this Court, pursuant to Rule 24(a) of the Federal Rules of Civil Procedure, for leave to intervene as a party-plaintiff in this action and to file the complaint-in-intervention attached hereto.

Respectfully submitted,

WM. BRADFORD REYNOLDS
Assistant Attorney General

GLEN H. DAVIDSON
UNITED STATES ATTORNEY

NATHANIEL DOUGLAS
LEVERN M. YOUNGER
ZITA JOHNSON-BETTS
Attorneys
Civil Rights Division
Educational Opportunities
  Litigation Section
U.S. Department of Justice
Washington, D.C. 20530

IN THE UNITED STATES DISTRICT COURT FOR THE

NORTHERN DISTRICT OF MISSISSIPPI

DELTA DIVISION

FILED

JAN 23 1985

NORMAN L. GILLESPIE, CLERK
By _____ Deputy

DIANE COWAN, ET AL.,

     Plaintiffs,

UNITED STATES OF AMERICA,

     Plaintiff-Intervenor
     Applicant,

     v.

BOLIVAR COUNTY BOARD OF
EDUCATION, SCHOOL DISTRICT
NUMBER FOUR OF BOLIVAR COUNTY,
MISSISSIPPI, ET AL.

     Defendants.

CIVIL ACTION NO.
DC 6531-K

## MOTION OF THE UNITED STATES FOR LEAVE TO INTERVENE AS PLAINTIFF

The United States of America respectfully moves this Court pursuant to Rule 24(a) of the Federal Rules of Civil Procedure and 42 U.S.C. 2000h-2 for leave to intervene as plaintiff in this case and to file the attached Complaint-In-Intervention.

As grounds for this motion, the United States alleges:

1. The original complaint in this action was filed on July 24, 1965, by private plaintiffs seeking injunctive relief from a denial of equal protection of the laws on account of race and alleging unconstitutional racial segregation in the public schools of Bolivar County, Mississippi.

2. The Attorney General of the United States has certified that this case is one of general public importance in which intervention of right by the United States is authorized by Title IX of

the Civil Rights Act of 1964, 42 U.S.C. §2000h-2. The certificate
of the Attorney General is attached to the Complaint-In-Intervention.

3. The United States' application for intervention in this
action is timely and alleges that the defendants have failed to
eliminate vestiges of the dual system of public education as re-
quired by the Supreme Court in Swann v. Charlotte Mecklenburg Board
of Education, 402 U.S. 1 (1970), Green v. County School Board, 391
U.S. 430 (1968), and have engaged in conduct which violates the
Constitution of the United States and other applicable federal law.

4. The grounds relied upon by the United States are more
fully set out in the attached Memorandum In Support of the Motion
of the United States for Leave to Intervene as Plaintiff, which
is incorporated herein and filed herewith.

WHEREFORE, the United States prays that this Court permit
it to intervene as a party plaintiff in the above-styled action
and to file the attached complaint-in-intervention and certificate.

Respectfully submitted,

WM. BRADFORD REYNOLDS
Assistant Attorney General

GLEN H. DAVIDSON
United States Attorney

NATHANIEL DOUGLAS
LEVERN M. YOUNGER
ZITA JOHNSON-BETTS
Attorneys
Civil Rights Division
Educational Opportunities
  Litigation Section
U.S. Department of Justice
Washington, D.C.  20530

IN THE UNITED STATES DISTRICT COURT FOR THE

NORTHERN DISTRICT OF MISSISSIPPI

DELTA DIVISION

DIANE COWAN, ET AL.                    )
                                       )
            Plaintiffs,                )
                                       )
UNITED STATES OF AMERICA,              )
                                       )     CIVIL ACTION
            Plaintiff-Intervenor       )     NO. DC 6531-K
              Applicant,               )
                                       )
      v,                               )
                                       )
BOLIVAR COUNTY BOARD OF EDUCATION,     )
SCHOOL DISTRICT NUMBER FOUR OF         )
BOLIVAR COUNTY, MISSISSIPPI, ET AL,    )
                                       )
            Defendants,                )
                                       )

MEMORANDUM IN SUPPORT OF MOTION OF UNITED STATES
FOR LEAVE TO INTERVENE AS PLAINTIFF

The United States of America has moved this Court pursuant

to Rule 24(a) of the Federal Rules of Civil Procedure and 42 U.S.C.

§2000h-2 for leave to intervene in this case and for leave to file

the attached complaint-in-intervention.  This memorandum is

respectfully submitted in support of that motion.

DISCUSSION

The United States has moved to intervene in this case to

protect its strong interest in ensuring that students enrolled in

the public schools administered by the Bolivar County Board of

Education in School District Number Four are offered equal protec-

tion of the laws and equal educational opportunities in compliance

with the United States Constitution and other applicable federal

law.  The United States' motion to intervene as a plaintiff in

this case is governed by Rule 24(a) of the Federal Rules of Civil Procedure, Section 902 of Title IX of the Civil Rights Act of 1964 (42 U.S.C. §2000h-2), and the applicable requirements of these provisions.

### 1.  The United States May Intervene As of Right

The right of the United States to intervene in this litigation is absolute and not permissive. Rule 24(a) of the Federal Rules of Civil Procedure provides that upon timely application anyone shall be permitted to intervene in an action when a statute of the United States confers an unconditional right to intervene. Section 902 of Title IX of the Civil Rights Act of 1964, as amended (42 U.S.C. §2000h-2) provides in pertinent part:

> Whenever an action has been commenced in any court of the United States seeking relief from the denial of equal protection of the laws under the fourteenth amendment to the Constitution on account of race, color, religion, sex or national origin, the Attorney General for or in the name of the United States may intervene in such action upon timely application if the Attorney General certifies that the case is of general public importance (emphasis added).

This statute grants to the United States an unconditional right to intervene under Rule 24(a). Spangler v. United States, 415 F.2d 1242, 1242-1246 (9th Cir, 1969).

Plaintiffs filed suit in this case seeking injunctive relief from the policies and practices of the Bolivar County Board of Education, and each of its school districts, requiring assignment of students and faculty to public schools on the basis of race, thereby dictating racial segregation in public

- 2 -

education.  Plaintiffs alleged that these policies and practices constituted a denial of the equal protection of the laws on account of race or color under the Fourteenth Amendment to the United States Constitution and other applicable federal law. After substantial litigation, the Court enjoined the defendants from operating Bolivar County public schools in a racially segregated manner, and ordered the defendants to implement desegregation plans for each of its school districts in order to dismantle the dual educational system and to eliminate its continuing effects. The desegregation plans contained, inter alia, detailed student, faculty and staff, and transportation desegregation provisions. Those orders remain in effect today and the court has retained jurisdiction to ensure their enforcement.

The Department of Justice in 1983 received several complaints from parents of black and white children enrolled in public schools in School District Number Four alleging that the defendants had failed to enforce the student assignment provision in Cowan v. Bolivar County Board of Education, No. 6531-K (N.D. Miss. July 22, 1969), and had engaged in practices designed to maintain racially identifiable schools in both student and faculty assignment.  The black parents further alleged that black children were being denied an equal educational opportunity.  Both groups of parents complained that these practices violated their children's constitutional right to the equal protection of the laws and an equal educational opportunity.  The Department of Justice, having

- 3 -

conducted a thorough investigation of the matter, has determined
that the defendants have pursued policies and practices that have in
effect perpetuated rather than eliminated the vestiges of the dual
system of public education in School District Number Four in viola-
tion of the Fourteenth Amendment to the United States Constitution,
the Court's desegregation order in Cowan, and other applicable
federal law.

Because this action involves the equal protection of the
laws, it is clear that the United States may exercise its right to
intervene if the motion is timely and the Attorney General certifies
that the case is of general public importance.

2. The United States' Application For Intervention Is Timely

While the United States' proposed intervention is of right,
it must be timely. The question of timeliness is a matter for the
sound discretion of the trial court to be determined from all the
circumstances of the case. */ Timeliness is not a word of exactitude
nor merely a function of the amount of time passed since inception
of the action but must be construed with an accommodating flexibil-
ity toward both the court and the litigants. **/ Undue delay
resulting in harm or prejudice to the rights of existing parties is

---

*/ NAACP v. New York, 413 U.S. 345, 365-366 (1973); Jones v.
Caddo Parish School Board, 735 F.2d 923, 924-925 (5th Cir. 1984);
Smith Petroleum Service, Inc. v. Monsanto Chemical Co., 420 F.2d
1103, 1115 (5th Cir. 1970).

**/ Jones v. Caddo Parish School Board, 704 F.2d 206, 218 (5th
Cir. 1983), aff'd on rehearing, 735 F.2d 923 (5th Cir. 1984);
McDonald v. E.J. Lavino Co., 430 F.2d 1065, 1074 (5th Cir. 1970);
Smith Petroleum Service Inc. v. Monsanto Chemical Co., 420 F.2d
at 1115.

the important consideration in determining timeliness. ***/ Even
this consideration should be viewed with an eye towards the
liberal treatment usually accorded applications for intervention
of right, which may be granted at a time when permissive inter-
vention would not be allowed. ****/

In 1983 the Department of Justice first received complaints
concerning School District Number Four.  The Department moved
swiftly to investigate the information provided in the complaints
and, thereafter, to file the instant proposed complaint-in-inter-
vention.  As shown in the proposed complaint-in-intervention,
School District Four has failed to eliminate the vestiges of the
dual system as required by the Supreme Court in Swann v. Charlotte
Mecklenburg Board of Education, 402 U.S. 1 (1970), and Green v.
County School Board, 391 U.S. 430 (1968), and has taken actions
that have perpetuated rather than eliminated vestiges of the dual
school system in violation of the Fourteenth Amendment to the
Constitution.  As will be explained more fully in the proposed

---

***/  Diaz v. Southern Drilling Corp., 427 F.2d 1118, 1125 (5th
Cir. 1970), cert. denied sub nom.  Trefina, A.G. v. United
States, 400 U.S. 878 (1970); Smith Petroleum Service, Inc. v.
Monsanto Chemical Co., 420 F.2d at 1115.

****/  Diaz v. Southern Drilling Corp., 427 F.2d at 1126; See
generally, Smith v. Board of Education of Morrilton, 365 F.2d 770,
773 (8th Cir. 1966) (United States allowed to intervene under
Section 902 after an appeal had been perfected); Carter v. School
Board of West Feliciana Parish, 569 F.Supp. 568,571 (M.D. La. 1983)
(United States' motion to intervene under Section 902 was timely even
though action had been pending for more than eighteen years and more
than thirteen years had passed since original plaintiffs obtained
judical orders directing desegregation).

- 5 -

complaint-in-intervention, these actions have included the adoption
of a dual residency policy to avoid compliance with court ordered
attendance zones; the continued practice of assigning faculty to
schools on the basis of the racial identifiability of the school;
and the practice of selecting sites for new school construction
such that new schools remain almost 100% black.

The United States, like the private plaintiffs, seeks relief
in the form of the promotion of equal protection of the laws and
equal educational opportunity in the public schools of School
District Number Four in Bolivar County, Mississippi.  The United
States' proposed complaint-in-intervention seeks further relief
and enforcement of existing orders at a time when there are no
other pending proceedings in this case,*****/ and private plain-
tiffs do not intend to pursue further relief. ******/  Accordingly,
intervention by the United States will not cause any delay in the
litigation and cannot prejudice the rights of any party.  Conse-
quently, the proposed complaint-in-intervention of the United
States is timely.

---

*****/ No issues have been litigated concerning District Four
since 1970.

******/ The Fifth Circuit has also indicated that intervening in
existing suits rather than initiating new law suits is the pre-
ferred procedure for third parties challenging compliance with
school desegregation orders; claiming deficiencies in the implement-
ation of those orders; or seeking further relief from the Court.
Davis v. Board of School Commissioners of Mobile County, 517 F.2d
1044, 1046 (5th Cir. 1975); Hines v. Rapides Parish School Board,
479 F.2d 762, 765 (5th Cir. 1973).

- 8 -

3.   This Case Has Been Certified By the Attorney General

The Attorney General of the United States has certified that this case is of general public importance in which intervention of right by the United States is authorized by Title IX of the Civil Rights Act of 1964, 42 U.S.C. §2000h-2. A copy of that certificate is attached to the Complaint-In-Intervention, which is incorporated herein and filed herewith.

## CONCLUSION

For the reasons set forth above, the United States' Motion for Leave to Intervene should be granted.

Respectfully submitted,

GLEN H. DAVIDSON
UNITED STATES ATTORNEY

WM. BRADFORD REYNOLDS
Assistant Attorney General

NATHANIEL DOUGLAS
LEVERN M. YOUNGER
ZITA JOHNSON-BETTS
Attorneys
Civil Rights Division
Educational Opportunities
    Litigation Section
U.S. Department of Justice
Washington, D.C.  20530

IN THE UNITED STATES DISTRICT COURT FOR

THE NORTHERN DISTRICT OF MISSISSIPPI

DELTA DIVISION

FILED

JAN 23 1985

NORMAN L. GILLESPIE, CLERK

By _____ Deputy

DIANE COWAN, ET AL.,

    Plaintiffs,

UNITED STATES OF AMERICA,

    Plaintiff-Intervenor
    Applicant,

    v.

BOLIVAR COUNTY BOARD OF
EDUCATION, SCHOOL DISTRICT
NUMBER FOUR OF BOLIVAR COUNTY,
MISSISSIPPI, ET AL.

    Defendants.

CIVIL ACTION NO.
DC 6531-K

## COMPLAINT-IN-INTERVENTION

The United States of America, plaintiff-intervenor, alleges:

1.   This is a complaint-in-intervention brought by the
Attorney General on behalf of the United States pursuant to Title
IX of the Civil Rights Act of 1964, 42 U.S.C. 2000h-2, and also a
complaint pursuant to Title IV of the Civil Rights Act of 1964, 42
U.S.C. 2000c-6, and the Fourteenth Amendment to the Constitution
of the United States.

2.   This Court has jurisdiction of this action pursuant to
28 U.S.C. 1345, 42 U.S.C. 2000h-2, and 42 U.S.C. 2000c-6.

3.   The plaintiffs filed this action on July 24, 1965,
alleging that the defendants denied black students in Bolivar
County equal protection of the laws on account of race in viola-
tion of the Fourteenth Amendment to the United States Constitution.
Plaintiffs sought injunctive relief including the desegregation of
Bolivar County's dual school system.

4.   Defendant Bolivar County Board of Education is responsible under Mississippi law for the general management of all public schools in Bolivar County. Other responsibilities of the Bolivar County Board of Education, with respect to the public school system, include the allocation and disbursement of minimum education funds, the administration of rules and regulations governing student transportation, the administration of the section 16 program, and the acquisition of all supplies, fuel, and materials for all public schools in Bolivar County.

5.   Defendant Bolivar County School District Four is responsible under Mississippi law for the public education of children residing in the School District Four.

6.   Defendant Glen Mason is Superintendent of the Bolivar County Board of Education and is the chief administrative officer of the Bolivar County Board of Education.

7.   Defendant John Arnold is Superintendent of School District Four.

8.   Defendant Board of Trustees for School District Four and its members have under Mississippi law the responsibility for the management and control of the public schools in School District Four.

9.   Prior to 1965, the defendants operated pursuant to Mississippi laws a dual system of public education on the basis of race, with separate schools for black and white students and faculty. Bell Elementary, Nailor Elementary, Cooper Elementary, Merigold Elementary and Eastside High School were constructed and maintained as black schools under the dual system.

- 2 -

10.  On or about July 22, 1969, in Cowan v. Bolivar County Board of Education, et al., No. 6531-K, the United States District Court for the Northern District of Mississippi, ordered the implementation of desegregation plans for five of the six school districts including District Four, under the jurisdiction of the Bolivar County Board of Education.

11.  The 1969 desegregation order for School District Four required faculty and staff desegregation, established student attendance zones that required students to attend schools located within the zone in which the student resided, and allowed majority to minority student transfers.

12.  Since the July 22, 1969 Order in Cowan, the defendants have failed and refused to take steps to eliminate the vestiges of the dual system of public education; rather, the defendants have pursued policies and practices for the purpose and affect of continuing to maintain separate schools for black students and faculty and white students and faculty.

13.  Defendants have actively pursued the following policies and practices, which have frustrated the implementation of the Court's Order in Cowan and impeded the elimination of the vestiges of the dual system of public education in School District Four.

        a.  Defendants have instituted informally a dual
            residency policy and practice allowing
            students to attend schools in zones outside
            of their residence if the student establishes
            a second residence during the school week.

- 3 -

b. The dual residency policy has adversely affected the desegregation of School District Four and has served to maintain segregated schools.

c. Defendants have made faculty assignments on the basis of race so that faculty are assigned to schools identifiable as "white" or "black" based upon student enrollment. In 1983-84 of the total number of faculty assigned to schools with student enrollments averaging 99% black, approximately 66% of the faculty were black and 34% white, while of the schools with student enrollments averaging 77% white, 64% of the total faculty assigned were white and only 36% black. Assignments by race for faculty and student enrollment for District Four schools for 1983-84 are set out in Attachments A and B, which are incorporated as though fully set out herein.

d. Defendants have made professional staff assignments on the basis of race so that black persons serve as administrators for those schools with predominantly black student enrollments while white persons serve as administrators of schools with majority white student enrollments.

— 4 —

e. Defendants in order to maintain racial segregation have chosen to construct three new schools in areas such that black students continue to attend schools with 100% black enrollments.

f. Defendants have discriminated against students attending Eastside High School, Nailor, and Marigold elementary schools with respect to the condition and maintenance of facilities.

14. The dual residency policy has been used by the defendants to allow white students who reside in attendance zones of schools with predominantly black student enrollments to attend schools with predominantly white enrollments. In conjunction with the policies and practices set out in paragraph 13 above, this policy has been used to impede elimination of the vestiges of the racially dual school system.

15. As a result of the policies and practices described in paragraphs 13 and 14 above, Merigold Elementary, Nailor Elementary, and Eastside High School, black schools under the dual system as well as those schools constructed more recently, Cypress Park Elementary, Eastwood Junior High, and Ball Elementary (a black school under the dual system reconstructed on the same site) remain predominantly black schools with 99% black enrollment. Eighty three percent of the black students enrolled in School District Four attend these six schools. Enrollment statistics by race for District Four schools for 1983-84 are set out in Attachment B.

- 5 -

16.  The Attorney General has certified that this case is of general public importance.  The Attorney General, in addition, has certified that he has received a complaint, alleging that said children are being denied equal protection of the laws by defendants; that he believes the complaint to be meritorious; that the signer of the complaint is unable, in his judgment, to maintain appropriate legal proceedings for relief; that the defendants have been notified of the complaint and have had a reasonable time to adjust the conditions alleged in the complaint; and that the institution of this action will materially further the orderly achievement of desegregation in public education.

17.  The acts and practices of the defendants as described in the complaint, have denied and continue to deny, the black students of the Bolivar County public schools in School District Four the equal protection of the laws in violation of the Four-teenth Amendment to the Constitution and other federal laws set out herein.  Unless enjoined by this Court, defendants will continue to operate a school system in which the vestiges of a segregated system remain, in violation of the constitutional rights of black students enrolled in the public schools of the Bolivar County School District Four.

- 6 -

WHEREFORE, the United States prays that this Court enter an order enjoining defendants, their agents, officers, employees, successors, and all persons in active concert or participation with them from discriminating against any person on the basis of race or color in the operation of the Bolivar County District Four school system, including prohibition of

a) the continued use of any dual residency policy;

b) the practice of making faculty and staff assignments on the basis of the racial identifiabilty of the school;

c) the construction of new schools in areas that ensure the schools' racial identifiability; and

d) the maintenance of unequal facilities at Eastside High School, Nailor and Merigold Elementary schools.

The United States further prays that this Court require defendants to adopt and implement a plan that will eliminate the aforementioned discriminatory practices including the improvement and maintenance of facilities at Eastside High School, Nailor and Merigold Elementary schools to achieve parity with other schools

-7-

operated by defendants, and grant such additional relief as
necessary to establish and maintain hereafter a unitary public
school system in Bolivar County School District Four in compliance
with the Fourteenth Amendment to the Constitution of the United
States.

WILLIAM FRENCH SMITH
Attorney General

WM. BRADFORD REYNOLDS
Assistant Attorney General

GLEN H. DAVIDSON
United States Attorney
BY JOHN HAILMAN
Assistant United States Attorney

NATHANIEL DOUGLAS
LEVERN M. YOUNGER
ZITA JOHNSON-BETTS
Attorneys
Educational Opportunities
  Litigation Section
Civil Rights Division
U.S. Department of Justice
Washington, D.C.  20530
(202) 633-3809

ATTACHMENT A

## FACULTY ASSIGNMENTS
### (1983-1984)

| SCHOOL | BLACK FACULTY | % BLACK | WHITE FACULTY | % WHITE | TOTAL |
|---|---|---|---|---|---|
| Bell Elementary | 13 | 68% | 6 | 32% | 19 |
| Cypress Park Elem. | 20 | 58.8% | 14 | 41% | 34 |
| Merigold Elementary | 7 | 46.6% | 8 | 53% | 15 |
| Nailor Elementary | 15 | 71.4% | 6 | 29% | 21 |
| Eastwood Jr. High | 14 | 60.8% | 9 | 39% | 23 |
| Eastside High School | 29 | 78.3% | 8 | 23% | 37 |
| Pearman Elementary | 10 | 35.7% | 18 | 64% | 28 |
| Parks Elementary | 10 | 35.7% | 18 | 64% | 28 |
| Margaret Green Jr. High | 13 | 40.6% | 19 | 59% | 32 |
| Cleveland High | 9 | 32% | 19 | 68% | 28 |
| TOTAL | 140 | 53% | 125 | 47% | 265 |

ATTACHMENT B

STUDENT ENROLLMENT
(1983-1984)

| SCHOOL | BLACK | WHITE | % BLACK | % WHITE | TOTAL |
|---|---|---|---|---|---|
| Bell Elementary | 289 | 0 | 100% | | 289 |
| Nailor Elementary | 271 | 0 | 100% | | 271 |
| Marigold Elementary | 95 | 7 | 93.1% | 6.9% | 102 |
| Cypress Park Elem. | 562 | 0 | 100% | | 562 |
| Eastwood Jr. High | 420 | 3 | 99.3% | 0.7% | 423 |
| Eastside High School | 669 | 1 | 99.9% | | 670 |
| Parks Elementary | 30 | 430 | 6.5% | 93.5% | 460 |
| Pearman Elementary | 156 | 257 | 37.8% | 62.2% | 413 |
| Margaret Green Jr. High | 151 | 462 | 24.6% | 75.4% | 613 |
| Cleveland High School | 121 | 397 | 23.4% | 76.6% | 518 |