IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
DELTA DIVISION

**DIANE COWAN, et al.**                                                                  **PLAINTIFFS**

**and**

**UNITED STATES OF AMERICA**                        **PLAINTIFF- INTERVENOR**

**v.**                                                                **Civil Action No. 2:65-CV-00031-DMB**
                                                                                           **(previously DC 6531-K)**

**BOLIVAR COUNTY BOARD OF**
**EDUCATION, et al.**                                                              **DEFENDANTS**

**THE CLEVELAND SCHOOL DISTRICT'S RESPONSE TO THE
UNITED STATES' OBJECTIONS TO THE DISTRICT'S PROPOSED PLAN**

Defendant Cleveland School District (the "District") files this Response to the United States' Objections to the District's Proposed Plan and, in support thereof, would show this Court as follows:

### Introduction

In its objection, the United States is correct in one respect: this case is a fifty-year old desegregation case in which the District has attempted to attract more whites to D.M. Smith Middle School and East Side High by modifying attendance zones, using majority to minority policies, and allowing open enrollment. However, the United States is incorrect when it states "[d]espite repeated attempts over the last half-century to adopt choice-based approaches to desegregation, those approaches have always failed." [113, p. 4].

From this Court's vantage point, the District's perspective, and that of this case's lone desegregation expert, the Cleveland School District is not a "failure" but an anomaly, an "oasis" of integrated education in a sea of racially isolated school systems. [78, p.4]. The United States

wishes to impose a consolidation plan on the only district in the Mississippi Delta that has maintained a diverse student population for decades—a district where more black students and white students are attending school together every day. All of the District's formerly "white" schools are now racially mixed, two historically black elementary schools are racially mixed and, while not enrolled full-time, white and black students attend East Side.[1] (See Table I).

TABLE 1: CLEVELAND SCHOOL DISTRICT'S 2014-2015 STUDENT ENROLLMENT

| SCHOOL | BLACK | WHITE | OTHER | TOTAL |
|---|---|---|---|---|
| Bell Academy (Magnet elementary/PreK-6) | 193 (52.59%) | 153 (41.69%) | 21 (5.72%) | 367 |
| Cypress Park Elementary School (3rd – 5th Grade) | 264 (99.62%) | 1 (0.38%) | 0 (0.00%) | 265 |
| Hayes-Cooper Center (Magnet elementary/PreK-6) | 160 (43.36%) | 185 (50.14%) | 24 (6.50%) | 369 |
| Nailor Elementary School (K-2nd Grade) | 365 (98.65%) | 4 (1.08%) | 1 (0.27%) | 370 |
| Parks Elementary School (K-5th Grade) | 163 (45.66%) | 179 (50.14%) | 15 (4.20%) | 357 |
| Pearman Elementary School (K-5th Grade) | 173 (64.79%) | 72 (26.97%) | 22 (8.24%) | 267 |
| Margaret Green Junior High School (6th – 8th Grade) | 262 (50.38%) | 224 (43.08%) | 34 (6.54%) | 520 |
| D.M. Smith Middle School (6th – 8th Grade) | 249 (99.6%) | 0 (0.00%) | 1 (0.004%) | 250 |
| Cleveland High School (9th – 12th Grade) | 290 (46.93%) | 285 (46.12%) | 43 (6.95%) | 618 |
| East Side High School (9th – 12th Grade) | 352 (100%) | 0 (0.00%) | 0 (0.00%) | 352 |
| School District Total (all schools as of 2/12/15) | 2471 (66.16%) | 1103 (29.53%) | 161 (4.31%) | 3735 |

The District has accomplished this sustained integration over the last fifty years, utilizing the voluntary methods the United States calls into question. This level of sustained integration is not a "failure."

The United States urges this Court to abolish voluntary choice and mandatorily reassign the District's high school and middle school students to one combined middle school and one

---

[1] Thirty white students attend classes this year at East Side.

37213951_1                                2

high school. The United States' plan is nothing new. It is a plan the United States has imposed on many other school districts with abysmal results in terms of integration. In contrast, the District seeks to continue educating students through a plan which this Court called "true freedom of choice." Alternatively, the District offers Plan B, which creates one middle school and allows for two high schools, with balanced enrollment, interesting educational programs, and maximum extra-curricular opportunities for District students.

The United States makes three objections to the District's open enrollment plan and two objections to Plan B. First, the United States argues open enrollment (Plan A) is unconstitutional because under the last two years of open enrollment no white student has enrolled full-time at East Side or D.M. Smith, and the District offers no evidence that open enrollment would desegregate these schools. The United States also argues that a cap of 550 students at the high schools, as suggested by the District, "may exacerbate" segregation at the high schools. As for Plan B, the United States argues that it will not "meaningfully desegregate" the District's high schools and "unnecessarily delays" the desegregation of the middle schools until 2017.

The United States' objections are not well taken. Both plans proffered by the District are constitutional. The remedy in a school desegregation case should be narrowly tailored to cure the constitutional violation. This Court found the only "violation" of the Constitution was the now abolished Court-imposed attendance zone line. Thus, the open enrollment plan is narrowly tailored to meet the constitutional infirmity. Moreover, as previously argued by the District in its Objection to the United States' plan, open enrollment also gives the District its best chance at maintaining stabilized integration. It is also a plan endorsed by the District, which should be given deference as it has been working in good faith. While the United States argues open

enrollment does not guarantee any white enrollment at East Side or D.M. Smith, the Constitution does not require any such quota.

Alternatively, Plan B creates racially balanced high schools and one middle school, all of which is constitutional.

1.  **No racial quota is constitutionally required at D.M. Smith and East Side.**

The United States strenuously objects to the District's open enrollment plan, citing the lack of a guaranteed number of white students who will enroll full-time at East Side and D.M. Smith sufficient to "desegregate" these two schools. The Constitution, however, does not require a particular racial make-up at any one school, so long as the school system as a whole is desegregated. *Stell v. Savannah-Chatham Co. Bd of Education*, 724 F. Supp. 1384 (S.D. Ga. 1988); *Stell v. Savannah-Chatham County Board of Education*, 888 F.2d 82 (11th Cir. 1989).

In *Stell*, the Eleventh Circuit Court of Appeals approved a desegregation plan largely based on choice and magnet school programming. The plan was already in place by the time the case was appealed and the evidence showed that, under the voluntary plan, the district had failed to bring some of its historically black schools within +/- 20% of the school district's overall racial make-up. The Eleventh Circuit Court of Appeals found the plan nevertheless constitutional. The court found the focus was not on individual schools, but on how the plan "promises to effectively desegregate the *school district*." *Stell,* 88 F.2d at 84 (emphasis added).

Here, like *Stell*, the District proposes a voluntary enrollment plan and will offer two magnet programs within a school at East Side. These two programs are the International Baccalaureate (or "IB" program) diploma track program[2] and an "Early College" magnet program with Delta State University. [108-1, p.2].

---

[2] The IB program offers academically rigorous, inquiry based classes. See affidavit of Mrs. Hardy, [112-7].

37213951_1                                    4

In fashioning the open enrollment remedy, this Court did not require any specific racial quota be achieved at either school and the Constitution does not require any such numerical quota. "We have emphasized that the harm being remedied by mandatory desegregation plans is the harm that is traceable to segregation, and that 'the Constitution is not violated by racial imbalance in schools, without more." *Parents Involved in Community Schools v. Seattle School District No. 1*, 551 U.S. 701, 721 (2007) (*citing Miliken v. Bradley*, 433 U.S. 267, 280 (1977)).

"The constitutional command to desegregate schools does not mean that every school in every community must always reflect the racial composition of the school system as a whole. The school board's constitutional duty is to cure the continuing effects of the dual school system, not to achieve an ideal racial balance." *Monteilh v. St. Landry Parish Sch. Bd*., 848 F.2d 625, 632 (5th Cir. 1988) (internal quotations and citations omitted).That not a single white student enrolls at East Side or D.M. Smith under "open enrollment" does not mean the District has failed to cure any lingering effect of the former dual school system any more than if no white child enrolls at the single high school and middle school under the United States' consolidation plan.

This Court found the only constitutionally required measure to be taken in this case was to remove the attendance zone lines for the middle and high schools so that any middle school or high school student could attend any school the student wants to attend. That the removal of the line has not resulted in "ideal racial balance" does not mean the District has neglected its constitutional duty. The District followed this Court's Order, removed the attendance zone line and, by doing so, has eliminated the vestige of the former *de jure* system.

The United States argues that unless and until white students enroll at D.M. Smith and East Side, the District is still operating a segregated school system or, at least, segregated schools. However, the United States Supreme Court cautioned that courts must not confuse

"segregation" with "racial imbalance." While the Supreme Court recognized that racial imbalance can result from *de jure* segregation, it does not necessarily and "the further we get from the era of state sponsored racial separation, the less likely it is that a racial imbalance has a traceable connection to any prior segregation." *Parents Involved in Community Schools*, 551 U.S. at 756.

The United States Supreme Court also found that school districts cannot "remedy" racial imbalance the same way they remedy segregation. *Id*. In *Parents Involved in Community Schools,* the court clarified that remediation of past *de jure* segregation is a one-time process involving the redress of a "discrete legal injury." Unlike *de jure* desegregation, there is no ultimate remedy for racial imbalance. *Id*. The court further found that racial balancing is an ongoing process, with no culpable party and no end point. "[T]he Court has never permitted outright racial balancing solely for the purpose of achieving a particular racial balance." *Id*.

In this case, the District is four decades past any state-sponsored segregation. Over these forty years, the District has re-zoned the middle and high schools, implemented majority to minority transfer plans, established magnet schools, and now allows for open enrollment. All formerly all-white schools are fully integrated, elementary schools are desegregated, and Cleveland High School, according to this Court, has achieved what the authors of *Brown* must have been hoping for, a fully integrated school experience. [43, pp. 24-29]. East Side has a rigorous in-house magnet program (attended by 30 white students), good academic test scores, and was recently named by *U.S. News and World Report* as one of the top high schools in the country. The District has been led by a succession of black superintendents and the last two school board presidents have been black. [78, p. 1].

... 

The District has redressed the "discrete legal injury" by removing the attendance zone line and by implementing programs and plans over the last forty-plus years which have removed all vestiges of the former *de jure* system. The District should be allowed to continue open enrollment for the next school term (2015-2016), at the close of which the District may move for unitary status. In May 2016, the District will have operated under the "open enrollment" plan for three years and will have removed, to the extent practicable, all vestiges of the former *de jure* system, making unitary status appropriate.

**2.     Open enrollment is not unconstitutional.**

Citing to old cases from the 1970's, the United States argues open enrollment is a remedy discarded by many courts. These same courts ordered mandatory measures instead. First, according to Dr. Rossell, mandatory measures have a track record of creating a loss of integration instead of improving integration. Plans that involve choice create more integration in the long term. See Dr. Rossell Report, [112-6], at pp. 21-25 and Figures 19, 20 and 21.

Further, open enrollment in 2015 is an entirely different concept from the open enrollment plans of the 1960's and early 1970's. Forty years ago, open enrollment was discredited because it was being implemented in school systems where virtually all schools in the system remained one-race schools. *See, e.g., Beaumont Independent School District v. Department of Health, Education and Welfare*, 504 F.2d 855 (5th Cir. 1974) (freedom of choice plan found inadequate because 66% of black students attended an all-black or near all-black school, despite a district-wide student population of 50% white and 50% black).

Here, the District has an integrated system where students have been choosing their schools for years under the majority to minority transfer program, opting for magnet schools, and

now exercising freedom of choice under the open enrollment at the high school and middle school levels.[3]

### 3. The District anticipates some white students enrolling at East Side under open enrollment.

The District anticipates that the International Baccalaureate program and the Early College program at Delta State will result in some current Cleveland High students (white and black) opting to enroll at East Side. See Affidavits of Mrs. Hardy and Dr. Fioranelli, [112-7] and [112-8], respectively. These programs respond directly to Judge Davidson's admonition in his January 2013 Order where he encouraged the District to continue developing magnet programs. [78, p. 9].

The United States complains that students at Cleveland High could still attend Delta State University independently, thereby undercutting the Early College Program at East Side. While the District cannot prevent students at Cleveland High from taking courses at Delta State University on their own time, under the Early College program the District will pay the tuition for these courses for East Side students. The District has been informed that Delta State is considering raising the tuition for the dual enrollment classes from the current $60.00 per class to $750.00 per class. While no amount has been finally set, the District believes Delta State will increase the tuition significantly. By providing the program free of charge to East Side students the District will create an incentive for enrolling at East Side.

---

[3] The Department of Justice argues the caps on enrollment may frustrate integration at Cleveland High. The District's desegregation expert, Dr. Christine Rossell, is studying the matter and will likely testify that in order to continue the upward trend in interracial exposure the District is enjoying under open enrollment, the District should continue to accommodate all students who choose Cleveland High and invest in portable classrooms, as needed, until a more permanent structure can be built.

**4.	Plan B is a constitutionally sound alternative.**

The District has proposed an alternate plan, Plan B, for this Court's consideration if the Court rejects Judge Davidson's open enrollment plan as unconstitutional. The United States objects to Plan B because, argues the government, it suffers from "design flaws," "internal inconsistencies," and relies on "student choice."

**a.	The high school plan is constitutional.**

The United States argues the plan to assign all high school students to East Side and open Cleveland High as a STEM magnet is faulty because white students may not attend East Side despite being assigned to that school. However, mandatory reassignment is exactly what the United States suggests in its consolidation plan. There is a risk of enrollment loss under any mandatory reassignment plan. This is precisely the reason this Court's open enrollment plan is preferred, and Plan B is an alternative. Dr. Christine Rossell will testify that "open enrollment" is the optimum plan for maintaining a diverse enrollment.

The United States criticizes Plan B as "underdeveloped." But the District's two experienced magnet coordinators, Mrs. Hardy and Dr. Fioranelli, have outlined the STEM and Early College programs and will spend the next year writing the details of these magnet programs for submission to the United States Department of Education for funding. The time to bring together the components of these programs is during this one-year design phase. Hardy and Fioranelli have the experience and expertise to pull the plan together. They are the architects of the highly successful Bell Academy and Hayes Cooper magnets.

Finally, the United States complains that the details of the lottery for the STEM high school entrance have not been submitted. The District intends to use the same criteria used for Hayes Cooper and Bell magnets.

### b. The middle school plan is constitutional.

The government argues the middle school plan takes too long to implement and the District will segregate students within the programs being offered. Both criticisms are without merit.

Plan B proposes the creation of one middle school on the Margaret Green Junior High campus. The District initially proposed that this middle school would open in August 2017, because of the potential loss of grant funds if D.M. Smith were to close before the end of the School Improvement Grant cycle (ending July 2017). However, the District has now received word from the Mississippi Department of Education that School Improvement Grant funds could transfer to the new Margaret Green. Therefore, the District could implement the new middle school under the same time frame as the United States is suggesting for its plan, August 2016.

During the coming school year, the District would plan for and write the STEM magnet grant proposal and curriculum for the middle school and also design, bid and build the additional classrooms needed at Margaret Green for the 250 students who will be transferring from D.M. Smith Middle School. The District is fully capable of completing these tasks in this time frame.

The United States' other criticism of the one middle school is that the special programs—STEM and STAR— are "likely" to result in disproportionately white classrooms. If Plan B is chosen by this Court, the District will ensure that all enrollment criteria for these special programs will not discriminate on the basis of race. Specifically, the District will ensure that entrance into the STEM program at Margaret Green is based on the same lottery system used for the other elementary magnets and which will also be used for the high school STEM magnet. As for the STAR program, it has specific academic criteria and is based on, among other things, test

scores. As such, the population in the program will fluctuate from year to year, but the procedure for gaining entrance into the program is constitutional.

## Conclusion

Both Plans A and B are constitutional. Therefore, this Court should defer to the District to choose between the constitutional alternatives.

Respectfully submitted, this 27th day of February 2015.

/s/ Holmes S. Adams

OF COUNSEL:

| | |
|---|---|
| Holmes S. Adams | Adams and Reese LLP |
| Miss. Bar No. 1126 | 1018 Highland Colony Parkway |
| John S. Hooks | Suite 800 |
| Miss. Bar No. 20708 | Ridgeland, Mississippi 39157 |
| Lindsey N. Oswalt | Telephone: (601) 355-3234 |
| Miss. Bar No. 103329 | Facsimile: (601)355-9708 |

and

| | |
|---|---|
| Gerald H . Jacks | Jacks Luciano, P.A. |
| Miss. Bar No. 3232 | Post Office Box 1209 |
| Jamie F. Jacks | Cleveland, Mississippi 38732 |
| Miss. Bar No. 101881 | Telephone: (662) 843-6171 |
| | Facsimile: (662) 843-6176 |

## **CERTIFICATE OF SERVICE**

  I, Holmes S. Adams, do hereby certify that I have this date served a true and correct copy of the above and foregoing Cleveland School District's Response to the United States' Objections by electronically filing via the ECF system to:

Joseph J. Wardenski
Joseph.Wardenski@usdoj.gov

Renee Wohlenhaus
Renee.wohlenhaus@usdoj.gov

Ellis Turnage
eturnage@tecinfo.com
turnagelaw@tecinfo.com

Shakti Belway
Shakti.belway@gmail.com

  This, the 27th day of February, 2015.


            /s/ Holmes S. Adams