**UNITED STATES DISTRICT COURT FOR THE**
**NORTHERN DISTRICT OF MISSISSIPPI**
**GREENVILLE DIVISION**


DIANE COWAN, et al.,

           Plaintiffs,

and


UNITED STATES OF AMERICA,          Civil Action No. 2:65-CV-00031-DMB

           Plaintiff-Intervenor,

vs.


BOLIVAR COUNTY BOARD OF
EDUCATION, et al.,

           Defendants.

---

**PLAINTIFFS' RESPONSE TO THE OBJECTIONS OF THE**
**CLEVELAND SCHOOL DISTRICT TO THE**
**JUSTICE DEPARTMENT'S PROPOSED PLAN**

---

I.      INTRODUCTION

Almost fifty years ago, this Court ordered the Cleveland School District to provide all schoolchildren with equality of opportunity and access to educational resources in an integrated setting.  The Cleveland School District has yet to comply with that order. This Court mandated the Cleveland School District (hereinafter the "District") to ensure that these basic educational rights were afforded to its students.   Now, nearly fifty years and several generations later, the District continues to forestall the creation of a public school system that operates in an efficient and integrated manner that would also ensure equality of opportunity for all the schoolchildren.

Plaintiffs seek a remedy that will result in a public school system unified by grade level and integrated across both race and socioeconomic status, in which railroad tracks no longer divide the children, their educational opportunities and hence life outcomes. Plaintiffs seek a public school system that would create progress and afford greater academic and social opportunity to all students in the District.  Plaintiffs request that the Court mandate both enforcement of the original precepts of the order and adoption of the Plaintiff-Intervener U.S. Department of Justice (hereinafter "DOJ") plan (hereinafter "DOJ's Proposed Plan"). Resolving this case and creating a unified system of schools will allow the Cleveland community to begin to resolve the racial segregation that has been maintained and exacerbated through the current configuration of the schools and their operation as racially identifiable, and most importantly afford its children equality of educational opportunity.

## II.        FACTS

Both DOJ and the District submitted to the Court proposals to desegregate the schools on January 23, 2015.  The District's plan consists of two proposals, Plan A and Plan B. Neither of the District's plans will achieve the desegregation objectives of this Court.  In fact, both Plan A and Plan B involve measures that have already been attempted and failed, with only Plan B having a few minor and perfunctory additions.  In contrast, the DOJ Proposed Plan would begin in 2016-17, after a year of planning with community input and implementation measures. The DOJ Proposed Plan includes unifying and consolidating the middle and high schools by grade level, which would necessarily desegregate the schools.  Further, DOJ's plan would ensure that all schoolchildren in the District receive equal access to educational resources and curriculum, and thus equality of opportunity, at last.

On February 13, 2015, both DOJ and the District submitted Objections to their alternative plans.   This Response by the Plaintiffs is in response to the Objections by the District to the DOJ Proposed Plan and, as such, addresses only student assignment. Plaintiffs strongly object to the assertions put forth by the District in its Objection to the DOJ's Proposed Plan (hereinafter the "District's Objection").  The District's Objection lacks merit and is based on the misguided assertion that the District's Proposed Plan will succeed.

Plaintiffs reject both Plan A and Plan B under the District's Proposed Plan. The District's Proposed Plan and the District's Objection illustrate its depth of resistance to creating a unified system of schools.   The District's lack of concern for the academic aspirations of Plaintiffs and their children, as evidenced once again by the language and

tone of the District's Objection to the DOJ's proposed plan, shows that only by this Court's order will an integrated academic environment ever become within the reach of all of the schoolchildren of Cleveland.

For nearly ten years, community members have united around the concept of unified, state-of-the-art middle and high schools, in which all of Cleveland's schoolchildren would be educated together in an academically challenging and enriching environment.  In fact, the DOJ's review of this case arose from the complaints made by multiple community members about the ongoing violations of the Court's order.  Rather than giving up hope, students, parents, community leaders and elders have come together to discuss the components of an integrated school system that would comport with this Court's mandates.  They have congregated regularly for approximately a decade, both with each other and on multiple occasions with representatives from DOJ.  The DOJ's Proposed Plan in most regards reflects a modest version of the calls for unity that have been expressed on scores of occasions, in churches and living rooms throughout Cleveland.  Rather than being preoccupied with a school name or mascot, Plaintiffs are concerned with improving educational attainment for their children.

It is clear that without a final order from the Court in favor of a unified, integrated and efficient system of schools, the District will continue to flout its obligations to provide all of Cleveland's children the same opportunity to achieve academically.  If the District is permitted to disregard this Court indefinitely, the children and families it serves will continue to suffer the irreparable harm that comes with a segregated and inherently unequal education - harm already inflicted upon thousands of students across multiple generations.  Now Plaintiffs request that the Court act and for the District to

4

comply, "*with all deliberate speed*." *Brown v. Board*. 349 U.S. 294, 301 (1955).

**III.        DISTRICT'S OBJECTION TO THE DOJ'S PROPOSED PLAN
                   IS UNREASONABLE**

Plaintiffs urge the Court to facilitate a plan that will lead to meaningful

integration at both the middle and high school levels.  At a minimum, the District's plan

should be rejected and the Court should adopt a plan identical or substantially similar to

that proposed by DOJ, in that it entails the measures most likely to achieve the objectives

set forth by this Court decades ago.  The District's Objection to the DOJ's Proposed Plan

lacks the factual basis necessary to justify its position.  Plans nearly identical to that

proposed by the District on January 23, 2015 have been tried over many years and again

most recently in the period after this Court's January 24, 2013 Order and Opinion.

The District must "eliminate from the public schools all vestiges of state-imposed

segregation." *Swann v. Charlotte-Mecklenburg Board of Education*, 402 U.S. 1, 15

(1971).  The District's duty is to eliminate vestiges of segregation and its effects "root and

branch." *Green v. Cnt. Sch. Bd. of New Kent Cnty.*, Va., 391 U.S. 430, 437-38 (1968).

Meeting this objective will require more from the District than mere tinkering at the

margins, with recycling magnet programs and minor curricular changes that have already

been shown ineffective. Instead, the duty of the school board is to "come forward with a

plan that promises realistically to work, and promises realistically to work now." *Cowan*,

748 F.3d 233 at 238 (5th Cir. 2014) (citing *Green*, 391 U.S. at 439).  Now is the time for

the reasonable measures put forth in the DOJ Proposed Plan to be evaluated by the

Cleveland School Board and for a realistic plan to be implemented by the District.

In its Objection, the District has rejected DOJ's Proposed Plan but has not

submitted a proposal that is reasonably calculated to achieve this Court's goals.  Both

District Plans A and B are inadequate, and have already been attempted and failed. Several rounds of measures and minor modifications to plans have produced little to no results for well over twenty years.

As this Court concluded in its January 24, 2013 opinion, the District has yet to eliminate segregation in either D.M. Smith Middle School or East Side High School. Both schools have always been and continue to be racially identifiable and almost exclusively populated by black students. Academic researchers have phrased the term 'apartheid schools,' as a description of schools where 99% or more of the student body is comprised of minorities. Kotok, Stephen, et al. *Is Opportunity Knocking or Slipping Away? Racial Diversity and Segregation in Pennsylvania.* The UCLA Civil Rights Project. (2014) at 2. Although the District raises alarms about the prospect of growing segregation should a unification plan be adopted, students attending schools on the east side of Cleveland already attend 'apartheid schools.'

The District put forth a plan on January 23, 2015 that is nearly indistinguishable from that which was already deemed empirically unlikely to succeed by the 5th Circuit in its April 1, 2014 decision to reverse and remand the case for further development of a remedy. *Cowan,* 748 F.3d 233. After the 2013-14 school year and the experiment with the "true freedom of choice" enrollment plan, the schools became no more integrated. *Id*. Now the District has offered to build upon the magnet programs and curricular offerings at both schools, with the idea that doing so would draw white students to attend them. The facts establish that this type of plan has failed in the past.

Furthermore, as for the likelihood that a plan such as that proposed by the District will work now, the 2014 Fifth Circuit decision found with respect to the freedom of

6

choice-type plans that "all the available empirical evidence suggest that the plan is not likely to contribute to meaningful desegregation at D.M. Smith Middle School or East Side High School." *Id* at 9. The Fifth Circuit described that, "in the nearly five decades in which the District has been under federal Court supervision, not one white student has ever voluntarily transferred to D.M. Smith Middle School or East Side High School." *Id.* at 9-10.

That the District has now proposed plans that are nearly identical to those already deemed insufficient and that have already failed suggests that these efforts may be illusory. Although Plaintiffs hope otherwise, it appears at times as if the District wants to convince the Court that it is taking action while maintaining the status quo, and continuing to deny schoolchildren equal access to opportunity and to educational resources.

PLAN A

Quite simply, Plan A offers very little new and thus has fallen short of the Court's objectives. This approach has been proven deficient by the facts. The District's Plan A proposal and the one the District submitted to this Court in 2012 are nearly the same, both "open enrollment." However, the advanced offerings that are already in place have failed to draw white students to East Side High School. Under the plan devised by this Court in 2013, no additional white students chose to attend the school.

PLAN B

Plan B is too little, too late. Plan B offers enrollment requirements and minor programmatic changes that are likely to result in nearly the exact racial imbalance that currently exists at the high school level. Currently, Cleveland High School has a student

7

body that is nearly 50% white and 50% black, and nearly all of the schools on the east side of Cleveland continue to operate as racially identifiable at nearly 100% black, including D.M. Smith and East Side High School.

Despite the District's assertions that a slightly more robust magnet program will work, Defendants concede that similar initiatives have failed to achieve integration. See District's Objection at 3-4. There is nothing offered in Plan B that is likely to lead to a new outcome in the future in terms of integration. Moreover, it is highly improbable that making the requirement more stringent - by requiring students to fully enroll in order to take classes - would suddenly inspire white students to attend these schools. This is especially true since any reluctance that existed was not overcome when the burden to access such classes was lower and students could have taken advantage of classes at East Side High School without having to technically enroll.

Plan B requires that students enroll at East Side in order to access the curricular offerings.

No amount of revitalized or additional magnet programs will achieve the objectives of the Court. Time has proven that, after nearly 50 years, nothing but full integration will suffice. Over the last several decades the District has shown its unwillingness to voluntarily take measures that will ensure equality of opportunity for all students in Cleveland. For decades, including in 2012 and in the current proposed plan, the District continues to offer only additional magnet programming or other minor modifications.

The District ought to work in partnership with the community it serves and, as designated stewards for the education of Cleveland's children, adopt and implement a plan that ensures academic progress and cost efficiencies. Community members have

8

worked for years toward the creation of an integrated school system, one in which the vestiges of segregation would no longer determine the educational experiences and life outcomes of the District's students. Neither Plan A nor Plan B, as put forth in the District's Proposed Plan, is bound to bring this public school community toward greater integration.

## IV.        PROTECTING THE PLAINTIFFS' RIGHTS

This response motion presents the strong and clear objectives of many parents, students and community leaders, as reflected in years of dialogue, planning and meeting with and amongst each other.   First and foremost, Plaintiffs seek to ensure educational performance is improved for all children in the Cleveland School District.  Plaintiffs also seek a unified public school system, in which all children can learn, grow and achieve academically. Plaintiffs reject the "badge of inferiority" that separate but equal facilities create, as contemplated under *Plessy v. Ferguson*, 163 U.S. 537, 551 (1896).  Plaintiffs seek a plan that is identical or substantially similar to the proposed plan put forth by DOJ.

An integrated and unified public school system would provide Cleveland with the opportunity to leave the segregated school system in the past while improving the educational options for all students.  Furthermore, a unified system would allow for the efficient management and operation of Cleveland's schools that would lead to cost savings, thereby creating academic profit for the benefit of all. These critical resources would then be available to directly benefit the students and enhance their education, such as with more curricular and extracurricular options and resources.  Moreover, resolving this case would put an end to the District's unnecessary use of public dollars that have

9

been spent fighting this Court's order, rather than simply complying with it and moving forward for the benefit of the students.

Neither DOJ nor Plaintiffs are requesting a new system of mandatory reassignment, such as one similar to that which the District has proposed under Plan B. Despite the District's suggestions to the contrary, neither DOJ nor Plaintiffs are calling for a mandatory reassignment plan. In fact, the express desire of Plaintiffs is for a unified system, with grades unified throughout middle and high school, in which all children are educated together. No mandatory reassignments would exist under this unified system. Instead, both DOJ and Plaintiffs seek a simple unification plan that will lead to academic profit and improved performance for all students in Cleveland.

The citizens of Cleveland are looking for a new beginning, a chance to move forward into the future as one community, united on behalf of all children alike. However, given the history of the segregated schools, until they are unified, the manner in which the schools are structured and divided will also keep the community divided, largely along racial lines. In a place as small as Cleveland, this is an unnecessary tragedy that has been maintained by design, an outcome violating the rights of Plaintiffs and holding back an entire community.

It is both irrelevant and morally objectionable for the District to continue to reiterate concerns about "white flight" as a limiting factor to complying with the rule of law and ensuring that students have equal opportunity. Such concerns are irrelevant to Plaintiffs' educational rights. Pro-segregationist sentiment should not be permitted to dictate the fates of another generation of schoolchildren in Cleveland. Black and white schoolchildren would benefit from and favor an integrated educational setting that would

10

prepare them for future success in an integrated America.

For many in Cleveland, it is profoundly hurtful for the District to continually allege that white families would choose to withdraw their children from the District rather than allow them to attend integrated schools. This reasoning reinforces the racial hierarchy of the past, both *de jure* and *de facto*. It is particularly alarming for the District's imprimatur to be placed upon such an irrational attitude toward the provision of public education services and the allocation of public resources. Instead of seeking ways to bypass any lingering racial divide through the creation of a unified, state-of-the-art school system, the District is repeating this fear-based analysis to defend its refusal to comply with this Court's mandates, rather than simply providing all students with equality of opportunity in an integrated and efficient educational system.

Furthermore, there are few logistical obstacles to achieving desegregation. Courts are encouraged to strive to "achieve the greatest possible degree of actual desegregation, taking into account the practicalities of the situation." *Davis* at 37. In Cleveland, the practicalities contemplated under *Davis* do not include long distances that require elaborate busing plans. In fact, the opposite is true.

A plan for unification nearly identical to that put forth by DOJ is feasible and necessary. In fact, as the 5th Circuit decision noted, about the District:

> The retention of single-race schools may be particularly unacceptable where, as here, the district is relatively small, the schools at issue are a single junior high school and a single high school, which have never been meaningfully desegregated and which are located less than a mile and a half away from the only other junior high school and high school in the district, and where the original purpose of this configuration of schools was to segregate the races. *Cowan* at 8.

11

As noted by the 5th Circuit, the schools in Cleveland under discussion reside within less than one and a half miles from each other, a distance many could walk.

In addition, students attending the middle and high school on the east side of Cleveland are subjected to policies that differ from students at other schools. Moreover, certain policies are applied disproportionately and differently when comparing the treatment received by black students as compared to white students. In the District, black schoolchildren are subjected to out-of-school suspensions at a disproportionate rate. Losen, Daniel, J., et al. *Are We Closing the School Discipline Gap?* The UCLA Civil Rights Project. (2015) at Spreadsheets. During the 2011-12 school year, the suspension rate for black students was 24.90%. *Id.* In contrast, during the same time period, the suspension rate for whites was 9.57%, a gap of 15.34%. During the 2009-10 school year, there was a racial gap in the suspension rate between black and white students of 16.87%. *Id.* Even at the elementary school level, during the 2011-12 school year, black male elementary students were suspended at a rate of 8.33%, compared to white males at 0.00%. *Id.* Again at the elementary school level, black female students were suspended at a rate of 4.07%, and white females at 0.00% during the same time period. *Id.*

These types of disparities, whether intentional or as a result of implicit bias, will decrease in frequency in an integrated educational setting in which all students are subjected to sound policies and practices, and where the educators work deliberately to eliminate bias in the provision of discipline. When combining the disparate treatment in discipline described above with the other forms of disregard for educational rights, such as shirking this Court's order to protect equally the rights of Plaintiffs for nearly fifty

12

years, a culture is created that wrongly legitimizes the segregation in the public schools that has long been prohibited.

Also, the schools serving students on Cleveland's east side are comprised of a higher proportion of low-income students and higher percentage of African-American students.   Academics have recognized that when there is a higher concentration of poverty in schools that are also 100% minority, a form of "double segregation" often occurs.  Orfield, Gary.  *E. Pluribus…Separation: Deepening Double Segregation for More Students*.  The UCLA Civil Rights Project. (2012) at 26.  "Double segregation" may compound inequality and lead to negative outcomes, for a complicated host of reasons.  *Id* at 26.  As such, inequality of opportunity is made worse by the District's maintenance of schools that are segregated.

The fear mongering that results from the District's position that unification will lead to white flight is inappropriate.  Consider the detriment caused to these schoolchildren upon hearing the District's assertion that if they attend school with white students, or tip the balance, then the white students will flee Cleveland's schools. Students attending the middle and high schools on the east side of Cleveland are already racially isolated.  The fact that certain white students have fled the District historically is not a legitimate justification to impose such a belief system on Cleveland's white students and families of today and hold back the progress of all in 2015.

Should a resolution fail to be reached, this community risks being frozen in time, and losing the hope of the many students and parents who have worked ardently to ensure that one day all schoolchildren in Cleveland will be granted equally access to educational opportunity.  The rights of these schoolchildren have been long overshadowed by the

13

politicking of adults, unjustifiably and inexcusably sacrificing the potential and futures of the schoolchildren in order to maintain the segregation of the past.

Up until the present, Plaintiffs have been shortchanged. The damage wrought upon generations of schoolchildren is unjust. Given the length of time that this case has remained opened, the District should immediately undertake measures to right the ongoing wrong foisted upon Plaintiffs, the first of which would be to adopt and implement a plan for unification. Doing so would benefit both black and white students. The value of integrated educational settings is immense and well documented. The progress made toward achieving integration in America's public schools is a core value of this country. Ongoing efforts to integrate public schools, along with other cherished institutions such as the U.S. military or Professional Baseball, are widely heralded achievements that many Americans hold dear. In fact, in 2007 during President Bush's presidency, the U.S. Commission on Civil Rights issued a report titled, "Becoming Less Separate: School Desegregation, Justice Department Enforcement and the Pursuit of Unitary Status" that assessed the opportunities presented by continued efforts to integrate America's public schools. Within this report one of the recommendations is for the DOJ to "increase its efforts to ensure that school districts comply with existing Court orders and that they address the various factors established in *Green v. County School Board of New Kent County*, 391, U.S. 430 (1968)." U.S. Commission on Civil Rights. *Becoming Less Separate: School Desegregation, Justice Department Enforcement, and the Pursuit of Unitary Status*, (2007) at 80.

Plaintiffs still await the day when this Court's order will be enforced, and the school district will no longer operate in a segregated manner. Unification by grade level

will ensure that the school district operates in a cost-efficient manner and that all students regardless of race or income level are afforded equality of opportunity. These optimal outcomes will only be achieved through unifying the schools by grade level. Plaintiffs seek a final resolution for these issues so that the Cleveland community can move forward in a unified manner that embraces opportunity for all schoolchildren, without regard for race or color.

## V.           CONCLUSION

Despite District assertions, the question is not one of "true freedom of choice," versus "mandatory reassignment." Instead, this is about creating a unified system, in which choices laden with generations of racial baggage and mandatory assignments no longer exist. True choice is not about deciding whether to attend the all black schools or not. True choice in education revolves around the quality of academics and extracurricular opportunities. Further, high quality educational opportunity should be available to all students, equally. Cleveland's demographics, building structures and other assets are well suited to create unified schools by grade level that, in turn, ensure that all children are able to avail themselves to the opportunities offered, without regard for the race of their peers and without being mandatorily assigned to a school.

Plaintiffs hope that District leaders will rise above the challenges of the past to embrace all schoolchildren equally and create for them an integrated and unified school system. Plaintiffs seek an order from the Court that will mandate the District to move beyond the racial divisions demarcated by railroad tracks that have maintained segregation through the configuration of the schools. Plaintiffs ask the Court to order a

re-investment in the future of Cleveland and its children that builds upon the shared

interests of all.

Respectfully submitted this 27th day of February, 2015,

s/ Shakti Belway
Shakti Belway (MS # 102095)
P.O. Box 19974
New Orleans, LA 70179
T. (504) 333-6877
shakti.belway@gmail.com

16

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 27, 2015, I electronically filed the foregoing with the Clerk of the Court using the ECF system.  Notice of this filing was sent by operation of the ECF system to all counsel of record.

s/ Shakti Belway_____
Shakti Belway (MS # 102095)