IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
DELTA DIVISION

| | |
|---|---|
| DIANE COWAN, et al. | PLAINTIFFS |
| and | |
| UNITED STATES OF AMERICA | PLAINTIFF- INTERVENOR |
| v. | Civil Action No. 2:65-CV-00031-DMB (previously DC 6531-K) |
| BOLIVAR COUNTY BOARD OF EDUCATION, et al. | DEFENDANTS |

### REPLY OF THE CLEVELAND SCHOOL DISTRICT IN RESPONSE TO THE GOVERNMENT'S OBJECTIONS

The Cleveland School District (the "District") files this Reply in Response to the Government's Objections.

### Introduction

In 2012, this Court asked the District to come forward with a plan to improve integration at D.M. Smith and East Side. The Court did not order mandatory consolidation of any schools. After hearing testimony of witnesses and walking the halls of District schools, the Court decided on its own to remove the attendance zone line for the middle and high schools. The Court found the line itself "perpetuated the vestiges of the former *de jure* system." [78, p.9]. Removing the attendance zone line was an appropriate remedy.

To understand how Judge Davidson reached his conclusion, it is helpful to revisit how the Cleveland School District was configured before integration began. All students in the District were assigned to schools based on their race, with white children assigned to schools

west of the railroad track and black children assigned to schools east of the railroad track. The line itself had become the symbol of the old *de jure* division of the town.

Merriam-Webster's Dictionary defines "perpetuate" as "to cause to continue" and "vestige" as "a visible trace, evidence or sign of something once in existence but existing or appearing no more." Thus, by definition, Judge Davidson found the attendance zone line, meant to improve integration when ordered by this Court in 1969, was actually a visible sign of the old, dismantled *de jure* system. The appropriate remedy was to remove the line itself.

The 1969 Order established an attendance zone line for the middle and high schools along the town's railroad track. [33, p. 2]. All students living east of the railroad track were assigned to East Side High, then a junior high and high school, and all students living west of the railroad track were assigned to Cleveland High and Margaret Green Junior High. At that time, sufficient numbers of white students lived in the newly created East Side zone to fully integrate East Side. (See Jerome Norwood Report [112-1] and Mike Slaughter Report [112-3]). Whites chose not to attend school in the East Side zone. Even in the past ten years, despite the District's good-faith efforts to attract white students through majority-to-minority transfer policies, busing for certain classes, magnet schools and, most recently, open enrollment, white students have chosen not to enroll in the East Side zone.

**1.     The District's proposed plans are constitutional.**

Because the line, a symbol of the formerly racially divided system, has been removed, open enrollment is constitutional. All middle school and high school students may attend any school they wish under Plan A/open enrollment. The District's proposed Plan B is also constitutional, because it will create a single middle school for all students and two high schools with diverse student enrolment. Neither the Government nor the Private Plaintiffs explain how

37300075_1                                             2

Plan B is unconstitutional nor do they present any authority requiring the Court to consolidate the high schools in light of the District's constitutional proposals.

## 2. This Court may consider the goal of racial diversity when choosing among constitutional plans. The Government is wrong to argue otherwise.

When deciding among constitutional plans, this Court may take into consideration a plan's potential impact on retaining diversity. *Flax v. Potts,* 864 F.2d 1157, 1162, FN 11 (5th Cir.1989). Although white flight cannot be used as a justification for avoiding the affirmative duty to desegregate, a school district has a legitimate interest in retaining a sufficient number of white students to provide an integrated educational experience for students. *Id.*

The Government further argues that even if the Court considers white flight, white students will not leave the District under its mandatory consolidation plan because other school districts, even in the Mississippi Delta, have "stable" white enrollments while operating majority black schools and the District already operates several majority black schools with white enrollment. Both of these arguments miss the mark.

### a. The Government's data are wrong.

The Government's examples of other majority-black school districts with stable white enrollment are faulty. There is nothing to indicate whether the racial compositions are stable or have resulted from mandatory consolidation. And, in some cases, the data are wrong. For example, the Government says the Quitman County School District has an overall racial breakdown of 37% white and 35% white at both the high school and middle school. [122, pp. 8-9]. This is not so. According to the Mississippi Department of Education, the Quitman County School District is 96.2% black, with only forty white students. See MDE report attached as Exhibit 1.

The Government also offers the East Tallahatchie School District as a comparator with majority-black enrollment and a "stable" white enrollment. The Government claims district-wide data show East Tallahatchie at 28% white, with 31% white enrollment at the middle school and 25% white enrollment at the high school. [122, pp. 8-9]. But the Government fails to tell the Court that just ten years before, the East Tallahatchie School District had 531 white students enrolled. See MDE report attached as Exhibit 2. By 2014, only 303 white students were left in the district, a 43% white enrollment loss over the last ten years.[1] See MDE report attached as Exhibit 3. The school district's racial composition is not stable.

### b. The Government is wrong to extrapolate from the District's current enrollment at certain schools that a diverse enrollment will result from a forced consolidation of its high schools.

Although the Government is correct that all of the District's white students attend schools that are majority black or near majority black, this integration success did not happen as a result of forced consolidation. The Government specifically points to Pearman Elementary and Bell Academy as proof white students will not leave if the District's middle schools and high schools are consolidated. But the efforts made to integrate Pearman and Bell were years in the making and involved largely voluntary choices.

For Pearman, the increase in black enrollment at this formerly all-white school came from both changes in the neighborhood and majority-to-minority transfers, not forced consolidation. Bell Academy became integrated through a plan conceived and executed by the

---

[1] The District will offer the opinion of Dr. Christine Rossell concerning the school districts offered by the United States as examples of stable white enrollment in majority black districts through her expert report to be submitted March 20, 2015.

District. The District decided to close this school with almost 100% black enrollment and reopen the school as a dedicated magnet. This was not a forced consolidation of two schools.[2]

In sum, the District's success based on voluntary measures and involving parent choice does not mean forced consolidation will enjoy the same success. Unlike various desegregation remedies involving parental choice, the Government's plan for consolidation is untested in this District. As previously submitted to this Court, the testimony of desegregation expert Dr. Christine Rossell and the realities of other districts can predict the results of mandatory consolidation--an overall loss of diversity.

    c.    *Stell* **is on point.**

The Government argues *Stell v Savannah-Chatham County Board of Education* is distinguishable, because the school district in *Stell* was larger than the Cleveland School District. *Stell*, 888 F.2d 82 (11th Cir. 1989). The Government also argues that the magnet programs in *Stell* were just "one remedy among many" used by that school district to achieve desegregation. [122, p. 12]. The United States argues that in *Stell*, the school district's plan involved pairing, mandatory student assignments, majority to minority transfers, and busing, intended to attract white families back to the system. *Id.*

The Government has misread *Stell*. In *Stell*, the Eleventh Circuit Court of Appeals specifically found that the school board's proposed plan "abandons mandatory busing, the use of pairing one black school to one white school, and mandatory reassignment. The heart of the Board's plan centers on revised attendance zones, voluntary 'magnet programs' and a 'majority to minority' transfer option." *Id.* In other words, the school board's plan in *Stell* involved choice, just like the District's plans in this case. The *Stell* court found a voluntary plan

---

[2]     Incidentally, like Plan B, the United States refused to endorse the Bell Academy plan.

37300075_1      5

particularly appropriate, especially given expert testimony that mandatory measures would lead to less integration. *Id.*

As in *Stell*, a voluntary plan is particularly appropriate in this case. *Stell v. Savannah-Chatham Co. Bd. of Ed.*, 724 F. Supp. 1384 (S.D. Ga. 1988); *Stell v. Savannah-Chatham County Bd. of Ed.*, 888 F.2d 82 (11th Cir. 1989). As in *Stell*, the District should be allowed to move forward with open enrollment or this Court may opt for Plan B, a plan which allows for a single middle school and choice at the high school level.

**3. East Side cannot house nearly 800 middle school students.**

The Government argues that Beverly Hardy's capacity calculations at East Side underutilize the space. In her affidavit and report filed with this Court, Hardy showed how she arrived at her estimates for the East Side space, and she stands by her opinion that a maximum of 675 students can receive an appropriate education in that space. [112-7]. Additionally, the District may also call the East Side High principal, Dr. Randy Grierson, and architect Joey Henderson, who will testify at the hearing of the difficulty educating any more than 675 students in the facility.

### Conclusion

This Court did not err when it found the Cleveland School District's diversity was unique in the region. The proposals of the District are constitutional. The Government offers no proof to refute Dr. Rossell's evidence that mandatory consolidation will result in a significant loss of white enrollment in the District.

In addition to presenting faulty data, the Government argues this Court need not even address the issue of white flight because the United States has offered the only constitutional plan in this case. This is not true. For all of the reasons previously discussed in the briefs before

this Court, open enrollment is a constitutional plan. Further, Plan B, creating one middle school and providing for enrollment criteria designed to create diversity at both high schools, is also constitutional.

Respectfully submitted,

>JACKS LUCIANO, P.A.
>Attorneys for Defendant
>Cleveland School District
>
>By: /s/ Jamie F. Jacks

## CERTIFICATE OF SERVICE

I, Jamie F. Jacks, attorney for Defendant Cleveland School District, do hereby certify that I have this date served by electronically filing via the ECF system, a true and correct copy of the above and foregoing Reply of the Cleveland School District in Response to the Government's Objections to:

Joseph J. Wardenski
Joseph.Wardenski@usdoj.gov

Renee Wohlenhaus
Renee.wohlenhaus@usdoj.gov

Ellis Turnage
eturnage@tecinfo.com
turnagelaw@tecinfo.com

Shakti Belway
Shakti.belway@gmail.com

Holmes S. Adams
holmes.adams@arlaw.com

John Simeon Hooks
john.hooks@arlaw.com

Lindsey Nicole Oswalt
lindsey.oswalt@arlaw.com

This, the 6th day of March, 2015.

/s/ *Jamie F. Jacks*
JAMIE F. JACKS