IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

**DIANE COWAN, et al.**                                                                    **PLAINTIFFS**

**and**

**UNITED STATES OF AMERICA**                             **PLAINTIFF-INTERVENOR**

**v.**                                                                 **Civil Action No. 2:65-CV-00031-DMB**

**BOLIVAR COUNTY BOARD OF
EDUCATION, et al.**                                                                    **DEFENDANTS**

**MEMORANDUM IN SUPPORT OF CLEVELAND SCHOOL DISTRICT'S MOTION IN LIMINE TO EXCLUDE THE TESTIMONY OF DR. AMY STUART WELLS**

Defendant Cleveland School District (the "District") files this Motion in Limine to Exclude the Testimony of the Government's expert, Dr. Amy Stuart Wells, and in support thereof would show to the Court the following:

**INTRODUCTION**

During her deposition, Dr. Amy Stuart Wells, expert for the Government, provided such evasive and obstructive testimony that it is impossible for this Court—as the trier of fact—to benefit from her proposed opinions. Under *Daubert*, Dr. Wells' testimony lacks the proper foundations for admissibility and will not be helpful in resolving any issue before the Court. For this reason, this Court should exclude Dr. Wells' expert testimony.

Even if this Court found some element of Dr. Wells' testimony useful or helpful, her opinions and critiques regarding the statistical analyses undertaken by the District's expert, Dr. Christine Rossell should be excluded. Dr. Wells is not qualified to offer expert opinions pertaining to statistics. She admits that she is not a statistician, does not routinely perform

statistical analyses, and undertakes only "qualitative" as opposed to "quantitative" analyses. Nor does Dr. Wells' have any particular training or experience in the field of statistics. She plainly lacks the knowledge and skill to testify as an expert in matters pertaining to statistical analysis.

## LEGAL STANDARD

The standard for admitting expert testimony is well-established. Federal Rule of Evidence 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and, (3) the witness has applied the principles and methods reliably to the facts of this case.

Fed. R. Evid. 702.

The Supreme Court's decision in *Daubert v. Merrell Dow Pharmaceuticals, Inc.* provides "the analytical framework for determining whether expert testimony is admissible under Rule 702 . . ." *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 243 (5th Cir. 2002). In *Daubert*, the Supreme Court held that Rule 702 imposes on judges a "gatekeeping role" with respect to the admission of expert testimony. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597 (1993). Trial judges fulfill this role by "ensur[ing] that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert*, 509 U.S. at 597; *see also Wilson v. Woods*, 163 F.3d 935, 937 (5th Cir. 1999). This "gatekeeping" obligation applies to all expert testimony, not just testimony based on "scientific knowledge." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999); *Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. 2004).

In order to fulfill its role as a gatekeeper, a court must ascertain (1) whether the proposed expert testimony is "supported by appropriate validation -- i.e., 'good grounds,'" and (2) whether the proposed testimony will "assist the trier of fact to understand the evidence or to determine a fact in issue." *Daubert*, 509 U.S. at 590-91; see also *Guy*, 394 F.3d 320, 325 (5th Cir. 2004) ("It goes without saying that *Daubert* clarified a district court's gate-keeping function: the court must ensure the expert uses reliable methods to reach his opinions; and those opinions must be relevant to the facts of the case."). This determination "entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is . . . valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Daubert,* 509 U.S. at 592-93. The objective of this gatekeeping requirement "is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co.*, 526 U.S. at 152. This inquiry is to be a flexible one, and this Court has "broad latitude when [deciding] how to determine reliability and in the reliability determination" itself. *Id*. at 141-42.

Accordingly, the Government must prove by a preponderance of the evidence that the proffered testimony satisfies Rule 702. *Mathis v. Exxon Corp.*, 302 F.3d 448, 459 (5th Cir. 2002) (citing *Bourjaily v. United States*, 483 U.S. 171, 175 (1987)). Additionally, the Government bears the burden of establishing by a preponderance of the evidence that the proposed expert testimony is reliable under *Daubert* and its progeny. *United States v. Hicks*, 389 F.3d 514, 525 (5th Cir. 2004); *Moore v. Ashland Chem., Inc.*, 151 F.3d 269, 276 (5th Cir. 1998) (en banc). In light of these exacting standards "it is implausible …that parties will initially

present less than their best expert evidence in the expectation of a second chance should their first try fail." *Weisgram v. Marley Co.*, 528 U.S. 440, 455 (2000).

## LAW AND ARGUMENT

I. **Dr. Wells' deposition testimony was so evasive and obstructive that it will not assist the trier of fact in understanding the evidence or determining a fact in issue under Federal Rule of Evidence 702.**

Courts in this Circuit have said that an expert must articulate reliable opinions in her deposition in order to survive a *Daubert* motion. It is not enough that an expert professes extensive working knowledge of the subject matter. *See Childs*, 2009 WL 2508128 at *3. She must express those opinions during her deposition in order for her testimony to be deemed sufficient under *Daubert*. *See id*.

Dr. Amy Stuart Wells is presently designated by the Government as a "may call" witness in the trial of this matter.[1] She appeared for deposition on April 10, 2015. Dr. Wells avoided answering questions posed by counsel for the District. Rather than engaging in good faith discourse with counsel, Dr. Wells repeatedly and intentionally pretended not to understand clear and direct questions, often asking counsel to define words used in everyday parlance—and in her field of alleged expertise—such as "analysis," "study," "reasonable," "developing," "indirect," "quality," "inferior," "superior," "socioeconomic," "white flight," "playground," "tour," and "opinions." Despite counsel's good faith effort to elicit testimony from Dr. Wells concerning her expert report, her obstructive and evasive answers created a record devoid of substantive content. As a result, Dr. Wells' testimony is unreliable and does not assist the trier of fact in understanding the evidence or resolving any issue of fact.

---

[1] Dr. Wells was designated as a "will call" witness by the Government until May 5, 2015, when her status was changed to "may call."

37991136_1                                         4

Some of the highlights of Dr. Wells' intentionally obtuse responses to counsel's questions are as follows:[2]

```
                          13
 2    Q    And as you sit here today, you have no
 3  plan and you have not been asked by the Justice
 4  Department to opine about the capacity of the
 5  school district's facilities, is that right?
 6    A    Not directly, no.
 7    Q    Have you been asked to opine about the
 8  school district's facilities indirectly?
 9    A    Please explain your question.
10    Q    Well, you said that you hadn't been
11  asked to opine about the capacity of school
12  district facilities directly.  I was wondering
13  what actually you meant by indirectly.
14    A    I guess I actually wanted to know what
15  you meant by opine on school district facilities.
16    Q    Well, will you be offering an opinion
17  regarding the capacity of school district
18  facilities of the Cleveland School District?
19    A    Capacity to do what?
20    Q    The capacity of students to actually
21  have school in any of the school district
22  facilities.

                          14
 1    A    To actually have school in.  Could you
 2  explain?
 3    Q    I'm at a loss to how I could explain
 4  any more than that . . . .
```

\*\*\*

```
                          14
12    Q    Okay. With regard to the relative
13  quality of the facilities, have you conducted any
14  research or made any analysis or have any
15  findings regarding the relative quality of the
16  facilities?
17    A    Please explain what you mean by
18  quality.
19    Q    Okay. With regard to the facilities,
20  will you be offering an opinion that Facility A,
```

---

[2] The District has highlighted additional examples of Dr. Wells' obstructive and evasive testimony in her deposition, attached as Exhibit 1.

21  for example, is inferior or superior to Facility
22  B?

15

1     A    In what capacity are you talking
2  about?
3     Q    In your capacity as an expert witness.
4     A    No, I'm talking about inferior or
5  superior.

\*\*\*

16

11    Q    Have you been asked to evaluate the
12  quality of the teachers or the administrative
13  staff across schools in the District?
14    A    I'd like you to clarify that question.
15    Q    Have you been asked to render any
16  opinions regarding the quality of teachers or
17  administrative staff across the District?
18    A    Been asked to render my opinion in
19  what way?
20    Q    I can't answer the question for you,
21  ma'am.  I mean --

\*\*\*

22

21    Q    Sure.  You haven't done any analysis
22  of whether the school district has the financial

23

1  wherewithal or means to construct a new facility
2  of some kind?
3     A    What do you mean by analysis?

\*\*\*

24

4     Q    Have you formed any opinions at this
5  point in time regarding the demographics of the
6  community?
7     A    Formed any opinions.  Would you
8  explain what you mean by opinions?

\*\*\*

25

19    Q    I see.  Okay.  But in terms of looking
20  at census data or demographic data of Cleveland,
21  Mississippi, or the Cleveland, Mississippi,

22  School District, you've not looked at historical

                                26
1   data and you're not forming any opinions about
2   the data, is that correct?
3       A   That's not correct.
4       Q   Okay, what opinions are you forming or
5   offering?
6       A   About?  Could you clarify what opinion
7   you want?
8       Q   Well, my understanding is, and correct
9   me if I'm wrong, but you've been hired to be an
10  expert witness in this case, correct?
11      A   Correct.
12      Q   And my understanding of what an expert
13  does is offer an opinion to the Court about
14  various subjects, correct?  Is that your
15  understanding of what you're supposed to do here
16  as part of this process?
17      A   I offer an analysis.
18      Q   Okay, an analysis, fair enough.  I'm
19  just trying to narrow down what your analysis
20  included and what it didn't and I'm not trying to
21  trick you in any way or box you out.
22          I'm just trying to understand what

                                27
1   your role in this process is because, frankly, I
2   don't quite understand what you were retained to
3   do.
4           So in terms of looking at your report,
5   I didn't notice that you had conducted an in-
6   depth analysis of any of the demographic shifts,
7   whether historic or future, that might have
8   occurred in the Cleveland School District.  If
9   I'm wrong about that, can you just correct me and
10  point to your report where you've talked about
11  that?
12      A   Could you explain what you mean by
13  thorough analysis?

\*\*\*
                                31
13      Q   Okay.  Does your report contain any
14  opinions regarding rezoning of any kind in the
15  school district?

16    A    Can you clarify your question?
17    Q    Okay.  Did you at any time conduct an
18  analysis with respect to attendan[ce] zone lines in
19  the District?
20    A    Could you repeat that?
21    Q    Did you at any time conduct an
22  analysis with regard to attendan[ce] zone lines in

32

1  the District?
2    A    What do you mean by analysis?

\*\*\*

32

13      MR. HOOKS:  Dr. Wells, before the
14  break we were talking about the issue of zoning
15  and zones in the school district and I was asking
16  you whether you would be offering any opinions in
17  this case regarding the issue of the attendant
18  zones or whether they should be moved or there
19  should be rezoning in the District.
20      THE WITNESS:  It would depend on
21  whether I'm asked about that.

\*\*\*

39

13    Q    I see.  Fair enough.  Now, with
14  respect to the facilities, when you visited the
15  District last Saturday, did you tour any of the
16  District facilities?
17    A    Could you clarify what you mean by
18  tour?

\*\*\*

43

13    Q    Okay.  With regard to your tour of
14  Margaret Green you made, can you describe for me
15  who you were with and what the circumstance was
16  of your visiting the facility?
17    A    Could you clarify who I was with?
18    Q    No, ma'am, I can't.  If you can't
19  answer who you were there with, I don't know how
20  to further clarify that.

\*\*\*

46

7    Q    I see.  Did you form any opinions

```
 8  regarding playground equipment or did you examine
 9  playground equipment?
10     A    At the high school?
11     Q    No, at Margaret Green.
12     A    I did not.  Is there a playground in
13  Margaret --
14     Q    Do you recall seeing one?
15     A    I'm not sure if you mean, what you
16  mean exactly by a playground.
```
***
```
                               72
 6          MR. HOOKS:  Have you ever studied in
 7  Cleveland School District private schools and
 8  what schools exist there?
 9          THE WITNESS:  Have I studied?  What
10  exactly do you mean by studied?
```

Exhibit 1, Deposition Transcript.[3]

   None of these questions that Dr. Wells apparently found impossible to understand or answer were subject to objection by counsel for the Government.  In reality, these questions were clear, and Dr. Wells was unable or unwilling to express any comprehensible opinion concerning the facts of this case.  Nor can the District reasonably be expected to defend against her testimony when she refused to specify her opinions and adequately explain the grounds for those opinions.

   Dr. Wells repeatedly stated that she *does not know* what testimony she will be offering at the trial of this matter.

```
                               12
13      As far as I can determine from reading
14  your report, you will not be offering an opinion
15  with respect to the capacity of school district
16  facilities, correct?
17     A    As far as I -- It's hard to say what
18  I'll do in the future, right?
```

---

[3] The sections quoted in this memorandum only scratch the surface of Dr. Wells' obstreperous responses in her deposition.  The entire deposition transcript is attached as an Exhibit to the District's Motion.  The District invites the Court to read further in the transcript in order to fully understand precisely how unhelpful and evasive Dr. Wells was during her deposition.

\*\*\*

                                    18
18    Q    I see.  Well, my question, though, is
19  did you form any opinion or will you be offering
20  an opinion in this case regarding the relative
21  quality of the teaching staff?
**22    A    I don't know.**

\*\*\*

                                    20
1    Q    Okay.  Have you looked at any data to
2  determine the racial composition of
3  extracurricular activities at the Cleveland
4  School District?  By racial composition I mean
5  student participation at the Cleveland School
6  District.
7    A    You specifically want racial
8  composition?
9    Q    That's my question, yes.
10    A    In any extracurricular activity?
11    Q    Yes.
12    A    Do you want to know if I have specific
13  evidence of it?
**14    Q    I want to know if you're going to be
15  offering any opinions on that topic.**
16    A    When?
17    Q    At the hearing of this matter.
18    A    Oh.  That I don't know.

\*\*\*

                                    21
4    Q    Do you plan on offering any opinions
5  at the hearing of this matter with respect to
6  transportation of pupils?
**7    A    I do not know.**
8    Q    Now, with regard to school district
9  finances, have you done any analysis with regard
10  to the school district's finances?
11    A    Not directly.
12    Q    All right.  Will you be offering any
13  opinion regarding the school district's finances?
**14    A    I do not know.**

\*\*\*

```
                                  23
15    Q    All right.  And have you or will you
16   be offering any opinions about any of the motives
17   of school board members?  Do you know anything
18   about that or will you be offering any opinions
19   on that?
20    A    I do not know.
21    Q    And will you be offering any opinions
22   about the demographics of the community,

                                  24
1    including demographic shifts, whether historic or
2    future?
3     A    I do not know.
```

Exhibit 1 (emphasis added).

      Dr. Wells' opinions are not reliable, because Dr. Wells herself cannot identify what those opinions are or describe what testimony she will give if permitted to testify at trial. This Court undertakes a two-part inquiry when determining if an expert opinion satisfies F.R.E. 702. It asks first whether the proposed expert testimony is "supported by appropriate validation -- i.e., 'good grounds,'" and second, whether the proposed testimony will "assist the trier of fact to understand the evidence or to determine a fact in issue." *Daubert*, 509 U.S. at 590-91. This determination of whether the expert's testimony will assist the trier of fact "captures the relevancy inquiry" inherent in the *Daubert* standard. *Childs v. Entergy Mississippi, Inc.*, 2009 WL 2508128, *2 (N.D. Miss. Aug. 13, 2009).

      This Court's inquiry into the first prong of this test is complicated, because Dr. Wells has refused to identify the grounds for her opinions. Indeed, she refused to identify what those opinions are. She was repeatedly asked what factors she analyzed and studied and what opinions she derived from that study and analysis. Rather than answering the questions and providing the Court with adequate information to determine the validity of her opinions, she chose instead to evade the questions entirely.

Moreover, Dr. Wells exhibited a profound lack of knowledge about the Cleveland School District. Although she claimed to have "toured" one Cleveland facility, after her report was issued, she admitted that she only went into a single building at Margaret Green, did not set foot in a single classroom or the cafeteria, could not remember if she saw a playground, and could not identify who toured the schools with her. Exhibit 1 at pp. 39-46. Yet from these observations, Dr. Wells opines that the District needs new high school and middle school buildings. *Id*. By her own testimony, it is clear that Dr. Wells lacks the proper grounds to render such an opinion.

Even assuming this Court could discern "good grounds" for Dr. Wells' opinions, the testimony she provided at deposition cannot and does not assist the trier of fact in its understanding of any issue in this case. In order for Dr. Wells' testimony to be admissible, there must be some evidence that she can help the trier of fact—this Court—resolve some issue relevant to this matter. In the simplest sense, Dr. Wells' testimony could not possibly assist this Court in resolving these issues because Dr. Wells has essentially refused to testify. There is no substantive content in her deposition testimony giving this Court any guidance or clarity. On this basis alone, this Court may exercise its broad and "flexible" authority to exclude Dr. Wells' opinions in this matter. *Kumho Tire Co.*, 526 U.S. at 141-42.

## II. Dr. Wells is unqualified under *Daubert* to offer any opinion pertaining to statistical analyses.

In her deposition, Dr. Wells admits that she is not a statistician and does not conduct statistical analyses on a regular basis. Exhibit 1, p. 116. Dr. Wells' research assistant Lauren Fox "work[ed] on the statistical measures." Exhibit 1, p. 123-124. Dr. Wells' qualifications, listed in her report, do not show she possesses any particular skill, knowledge, or experience in the field of statistics. Exhibit 2, pp. 2-3. In fact, Dr. Wells noted in her testimony that her research is considered more "qualitative" than quantitative. Exhibit 1, p. 117. Nevertheless, Dr.

Wells attempts, in her expert report, to provide opinions and criticisms of the statistical indices used by the District's expert, Dr. Christine Rossell. She discusses how Dr. Rossell's use of the Interracial Exposure Index is "problematic statistically." Exhibit 2, pp. 5-7. In critiquing this approach, Wells lists reasons why she believes its use is improper.[4] Yet nothing in her education or experience suggests she is remotely qualified to make this assessment.

Rule 702 and case law interpreting it make clear than an expert's "knowledge, skill, experience, training or education" is a necessary precondition to her ability to offer acceptable expert testimony on a topic. F.R.E. 702; *Wilson v. Woods*, 163 F.3d 935, 937 (5th Cir. 1999). "A district court should refuse to allow an expert witness to testify if it finds that the witness is not qualified to testify in a particular field or on a given subject." *Id*.

Courts have previously found that generalized training in a certain area does not make an expert qualified under Rule 702. In *Houston-Hines v. Houston Independent School District*, the plaintiff, a parent, sued the school district after she and her daughter were arrested by a school police officer following a disturbance on campus. 2006 WL 897209, *1 (S.D. Tex. Apr. 4, 2006). The plaintiff attempted to designate a retired police officer of 29 years as an expert on the propriety of these arrests. *Id*. at *2. The Court found that the retired officer was unqualified despite his experience, because there was no evidence that he had any particular experience or training in the unique field of law enforcement in a school setting. *Id*. at *3. That he was trained and extensively experienced in law enforcement generally did not qualify him as an expert witness. *Id*.

---

[4] In her report, Dr. Wells criticizes Dr. Rossell for failing to use the Index of Dissimilarity in analyzing integration in the Cleveland School District, (Ex. 2, pp. 7-8), *even though* Dr. Rossell has discussed the Index of Dissimilarity in multiple reports she has issued in this case. When questioned about this mistake in her report, Dr. Wells said she would "have to look" to see whether Dr. Rossell used the dissimilarity index and then tried to qualify her answer. Exhibit 1, pp. 118-119.

Likewise, in C*&M Air Cooled Engine v. Cub Cadet LLC*, the Fifth Circuit affirmed a district court's exclusion of an expert in a case concerning the cause of a fire. 348 Fed. Appx. 968, 969 (5th Cir. 2009). The plaintiff alleged that a defect in the defendant's mower caused the fire. The plaintiffs' expert, despite the fact that he was not an electrical engineer, testified that some unspecified defect in the mower's electrical system caused the fire. The district court rejected the expert's opinion, and the Fifth Circuit affirmed, noting that the conclusion was based on the expert's elimination of other potential causes, and not on his own knowledge or experience. This, the Court concluded, was not sufficient.

Here, Dr. Wells' general training in "Sociology and Education" hardly qualifies her to critique the indices used by a qualified statistician like Dr. Rossell. That Dr. Wells may be generally familiar with these indices does not make her an expert in their use. The Government has provided no information in either Dr. Wells' report or in her testimony suggesting that she is qualified to make statistical analyses. Consequently, even if this Court is not inclined to exclude Dr. Wells, it should nevertheless exclude her critique or discussion of any issues pertaining to statistics and statistical indices.

## CONCLUSION

Dr. Wells did not make a good faith effort to participate in her deposition and was intentionally evasive and obstructive. Dr. Wells' testimony is unreliable, lacks the proper foundation for admissibility, and will not assist this Court in resolving the issues presented in this case. The Court should exercise its authority under *Daubert* and exclude Dr. Wells from testifying during the upcoming hearing in this matter. Alternatively, if the Court deems Dr. Wells' testimony admissible, the District moves the Court to exclude Dr. Wells from testifying regarding any issues pertaining to statistics and statistical indices. By her own admission, Dr.

Wells is not a statistician and does not perform her own statistical analyses.  She is, therefore, not qualified to offer opinions on these topics.

The District requests all other relief the Court deems necessary and appropriate.

Respectfully submitted, this 8th day of May 2015.


/s/  John S. Hooks


OF COUNSEL:

| | |
|---|---|
| Holmes S. Adams | Adams and Reese LLP |
| Miss. Bar No. 1126 | 1018 Highland Colony Parkway |
| John S. Hooks | Suite 800 |
| Miss. Bar No. 20708 | Ridgeland, Mississippi 39157 |
| Lindsey N. Oswalt | Telephone: (601) 355-3234 |
| Miss. Bar No. 103329 | Facsimile: (601)355-9708 |

and

| | |
|---|---|
| Gerald H . Jacks | Jacks Luciano, P.A. |
| Miss. Bar No. 3232 | Post Office Box 1209 |
| Jamie F. Jacks | Cleveland, Mississippi 38732 |
| Miss. Bar No. 101881 | Telephone: (662) 843-6171 |
| | Facsimile:  (662) 843-6176 |

37991136_1                                                15

## **CERTIFICATE OF SERVICE**

I, John Hooks, do hereby certify that I have this date served a true and correct copy of the above and foregoing document by electronically filing via the ECF system to:

Joseph J. Wardenski
Joseph.Wardenski@usdoj.gov

Renee Wohlenhaus
Renee.wohlenhaus@usdoj.gov

Ellis Turnage
eturnage@tecinfo.com
turnagelaw@tecinfo.com

Shakti Belway
Shakti.belway@gmail.com

This, the 8th day of May 2015.

/s/ John S. Hooks