IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

| | |
|---|---|
| **DIANE COWAN, et al.** | **PLAINTIFFS** |
| and | |
| **UNITED STATES OF AMERICA** | **PLAINTIFF-INTERVENOR** |
| v. | Civil Action No. 2:65-CV-00031-DMB |
| **BOLIVAR COUNTY BOARD OF EDUCATION, et al.** | **DEFENDANTS** |

**Memorandum in Support of the
Motion to Stay of the Cleveland School District**

On May 13, 2016, this Court ordered consolidation of the District's high schools and middle schools. In light of the Court's ruling regarding consolidation, the District has submitted a consolidation plan of its own to address concerns regarding white student departure. The District presents this motion to stay the Court's consolidation order so the Court may consider the District's alternative proposal. Alternatively, the District seeks to stay the Court's order pending resolution of an appeal.

**I.  Relevant facts**

In its May 13, 2016 Order, this Court adopted the Government's plan for the consolidation of the District's middle schools and high schools. Under the Government's plan, the District would assign all ninth through twelfth-grade students to Cleveland High School and Margaret Green as a single consolidated high school, and assign all sixth through eighth-grade

students—except the sixth-grade Students at Bell and Hayes Cooper—to the current East Side High School, creating a consolidated middle school.

After the Court's order was entered, the Cleveland School Board voted to submit its own consolidation plan to the Court. The District's plan proposes sending all sixth-grade students—except those at Hayes Cooper and Bell—to a renovated facility at the Walter Robinson Achievement Center (WRAC). All seventh through twelfth-grade students will then attend the current Cleveland High School and Margaret Green Junior High School, with the addition of a new ninth-grade wing designed to accommodate the increased enrollment there. Under the District's plan, East Side High School and D.M. Smith Middle School will be closed. *See,* [221], [222].

II.   Law and Argument

A.   **The equitable powers of this Court permit the Court to stay its consolidation order while considering the District's proposed consolidation plan.**

The power to stay proceedings is part of this Court's inherent authority to control cases on its docket "with economy of time and effort for itself, for counsel, and for litigants." *Itel Corp. v. M/S Victoria U*, 710 F.2d 199, 202-03 (5th Cir. 1983) (quoting *Landis v. North American Co*., 299 U.S. 248, 254 (1936)).

Here, a stay of the Court's May 13, 2016 Order to permit the Court to consider the District's own consolidation proposal serves several equitable and practical purposes. First, a stay would prevent expenditures of time and resources that may be wasted otherwise. For example, the District's plan proposes assigning all sixth-grade students to the Walter Robinson Achievement Center, also known as "the WRAC," (except for those sixth-graders attending Hayes Cooper and Bell) and consolidation of all seventh through twelfth-grade students at the current Cleveland High School and Margaret Green Middle School. The Government's plan, on

42757854_1                                                    2

the other hand, places all high school students at Cleveland High School and Margaret Green and all middle school students at the current East Side High School.

This distinction is critical. If this case is not stayed, the District must begin preparing East Side High School for consolidation, at substantial financial and logistical cost. If this Court later accepts the District's consolidation plan, those limited resources will have been wasted.

Second, a stay will prevent the loss of white enrollment while the Court assesses the District's plan. The aim of the District's consolidation plan is to further desegregation while maintaining the highest possible levels of integration. The Government's plan, now accepted by the Court, will result in a greater loss of white enrollment than the District's proposed plan. A stay of the Court's current judgment will prevent families opposed to the Government's plan from enrolling students elsewhere while the Court reaches its decision. By staying this case, the Court ensures that the District's plan, if it is accepted, will have the greatest chance of success at retaining integrated enrollment.[1]

## B.   Alternatively, the District is entitled to a stay under Rule 62(c).

If this Court elects not to consider the District's new proposed consolidation plan or denies the equitable stay requested above, the District respectfully moves for a stay under Federal Rule of Civil Procedure 62(c).[2] A motion to stay an injunctive order is governed by the four-part test used to assess the propriety of injunctions generally. The party seeking a stay must show: (1) its likelihood of success on the merits; (2) irreparable injury if the stay is not granted; (3) the stay will not result in substantial harm to the other parties; and (4) granting the stay will serve the public interest. In cases involving a serious legal question, however, a party need not

---

[1]   When choosing among constitutional plans, a district court may consider the likelihood of white student departure in its analysis. *United States v. Pittman*, 808 F.2d 385, 391 (5th Cir. 1987).

[2]   The District has also filed a notice of appeal. The District will withdraw its appeal if this Court accepts its consolidation plan.

42757854_1                                                        3

show "likelihood of success on the merits," but must instead show a "substantial case on the merits" in order to satisfy the first element. *Ruiz v. Estelle,* 650 F.2d 555, 565 (5th Cir. 1981).

        **1.**        **The District has a substantial case on the merits of its appeal.**

A "movant need only present a substantial case on the merits when a serious legal question is involved and show that the balance of the equities weighs heavily in favor of granting the stay." *Ruiz,* 650 F.2d at 565 (citing *Providence Journal v. Federal Bureau of Investigation,* 595 F.2d 889 (1st Cir. 1979)). Desegregation orders constitute "serious legal questions." *See, e.g., Moore v. Tangipahoa Parish School Bd.,* 507 Fed. Appx. 389 (5th Cir. 2013); *United States v. La.*, 815 F.Supp. 947, 953 (E.D. La. 1993).

Here, the District has a substantial case on the merits of its appeal. A summary of the District's arguments on appeal are as follows:

- Both Judge Davidson's open enrollment plan and the District's Plan A are constitutional. They satisfy the core mandate of *Brown II* that a school district's constitutional desegregation obligation is "to achieve a system of determining admission to public schools on a non-racial basis." *Brown v. Bd. of Educ. of Topeka, Kansas*, 349 U.S. 294, 300-01 (1955). An open enrollment process is non-racial. All students, no matter their race or resident address, may select which middle and high school they wish to attend for seventh through twelfth grades. Further, freedom of choice is an acceptable tool to achieve a unitary school system. *Green v. County School Bd. of New Kent County, Virginia*, 391 U.S. 430, 439 (1968). Certain obstacles present during the 1960s that impeded black students from exercising true freedom of choice do not exist in Cleveland today. *Green,* 491 U.S. 430 at 441, fn 5. These impediments were a fear of retaliation by the white community which deterred black families from choosing all white schools, violence against black families attending white schools, improper influence by whites to

keep black children in black schools, embarrassment of black families because of their poverty, and improvement of black facilities so that black children would not leave historically black schools. *Id.* Testimony presented during the May, 2015 hearing showed the District today is markedly different from school districts where true freedom of choice was rejected in the 1960s.

For example, nearly 70% of the District's students already enroll full-time in a school with students of other races, and increasing numbers of students have diverse daily classroom experiences through the International Baccalaureate ("IB") and Advanced Placement ("AP") programs at East Side. No evidence was presented of violence against or intimidation of black children or their parents. Parents testified at the hearing that they were able to freely choose among the District's middle and high schools, and that even after a student had enrolled at a particular school he or she could transfer freely to a different school if he or she so desired. Tr. 645, 660, 677, 699, 781. The District has made significant progress in its integration efforts and has achieved twenty years' of stable racial balance. Tr. 445. Facilities are comparable across the District. There are no all-white schools remaining in the District, and all formerly "white" schools have significant black enrollment or majority black enrollment. Judge Davidson's open enrollment plan and the District's Plan A satisfy the constitutional requirements for desegregation plans.

- Here, the Fifth Circuit left open that potential white student departure could form a legitimate rationale for a freedom of choice plan: "We do not hold that freedom of choice is constitutionally inadequate or could form no part of a desegregation plan." *Cowan v. Cleveland School District,* 748 F.3d 233, 240 (5th Cir. 2014). As Dr. Rossell opined and Judge Davidson previously noted, the District far surpasses all other Mississippi Delta schools in the percentage of white students attending the average black child's school. CSD Ex. 11-A, p. 16 and Figure 9.

The District is one of the few school systems in the nation with increasing interracial exposure. CSD Ex. 11-A, p. 13. "It cannot be emphasized enough how unique it is to have a school district with increasing interracial exposure, particularly in Mississippi, but also in the rest of the U.S." *Id.* The racial composition of the District's schools is markedly different from *Green* and from every other school district examined in the cases where courts rejected freedom of choice plans. For instance, in *Green* only 15% of the school district's black students attended formerly "white schools," and no white student attended a formerly "black school." *Green v. County School Board of New Kent County, Virginia*, 391 U.S. 430, 441 (1968). In *Marshall,* only sixty of the 1,868 Holly Springs black students opted to attend a "white school," and only sixty-four of the 3,606 black students in Marshall County chose to attend a "white school." *Anthony v. Marshall Co. Bd. of Education*, 409 F.2d 1287, 1288-89 (5th Cir. 1969). *See also, e.g.*, *United States v. Greenwood Separate School District, et al.*, 406 F.2d 1086, 1091-92 (5th Cir. 1969); *United States v. Hinds County School Board,* 417 F.2d 852, 855 (5th Cir. 1969).

- When choosing among constitutionally acceptable remedies in desegregation cases, a court may take into consideration a plan's potential to retain white students. *Flax v. Potts*, 864 F.2d 1157, 1162, FN 11 (5th Cir. 1989). While white flight cannot be used as a justification for avoiding the affirmative duty to desegregate, a school district has a legitimate interest in retaining a sufficient number of white students to provide an integrated educational experience. *Id.* As Dr. Rossell explained, if the goal is to have children of all races learning together, then open enrollment can be the only real remedy. Tr. 112, 121-22. A mandatory plan like the Government's will result in a significant loss of white enrollment. Dr. Rossell's opinion is that the plan providing the best chance of continuing the integrated experience in the District is Judge Davidson's "true freedom of choice" or open enrollment. Voluntary plans, like open enrollment,

produce greater increases in interracial exposure, while mandatory reassignment plans result in significant white enrollment loss. CSD Ex. 11-A, pp. 23-24 and Figures 19, 20, and 21. In one study, Dr. Rossell found that in districts with 35% or greater minority populations, mandatory reassignment plans lead to a 65% loss of white enrollment. *Id.* The Government did not produce a single example of a school district with Cleveland's racial enrollment that has experienced more integration or anything close to stabilized integration under a mandatory reassignment plan.

- The Government's consolidation plan is not the appropriate remedy for the District. The Government's plan—adopted by this Court—is a mandatory reassignment plan. Dr. Rossell testified, and the historical results in other Delta school districts and across the state of Mississippi demonstrate, the Government's plan will almost certainly produce a loss of white students and black students as well. The District's diversity should not be jeopardized by imposing a mandatory reassignment plan that will most likely result in a re-segregation. In fact, one of the Plaintiffs' witnesses, Leroy Byars, testified unequivocally that white students would never enroll at East Side High under the Government's plan. Tr. 800.

- The Government's plan advocates that a certain racial quota, the District-wide racial breakdown, must be met at D.M. Smith and East Side. Neither the Constitution nor the District's desegregation orders require racial quotas at any school. The District has no constitutional duty to achieve maximum desegregation. *Hull v. Quitman County Bd. of Educ.*, 1 F.3d 1450, 1455 (5th Cir. 1993). Dismantling an old dual-school system does not require a particular racial balance in each school, grade, or classroom. *Milliken v. Bradley*, 418 U.S. 717, 740-41 (1974). The Supreme Court has rejected any requirement of a particular degree of racial balance. *Swann v. Charlotte-Mecklenburg Bd. of Educ.*, 402 U.S. 1, 12 (1971). The Constitution does not require the District to "guarantee" or prove that a certain number of whites will enroll full-time at East

Side High or D.M. Smith. Even in the context of mandatory desegregation plans, racial proportionality is not required. *Parents Involved in Community Schools v. Seattle School Dist. No. 1 et al.*, 551 U.S. 701, 732 (2007). "[A desegregation] order contemplating the substantive constitutional right [to a] particular degree of racial balance or mixing . . . is infirm as a matter of law." *Id.* The Constitution does not require every school in every community reflect the racial composition of the school system as a whole. *Id.* Further, none of the orders entered in this case requires racial quotas to be achieved at every school.

- In the context of the facts and circumstances of the Cleveland School District today, the Court must also be mindful of black students' constitutional right to free association. "No more invidious discrimination, or improper government objective, can be imagined than national power setting aside the valid exercise of choice by members of a class in the name of the constitutional objective for which the choice was granted to the class in the first place." *United States v. Jefferson County Bd. of Educ.*, 380 F.2d 385, 424 (5th Cir. 1967) (Justice Godbold dissenting). Judge Davidson's open enrollment plan and Plan A are constitutional, and therefore, the Court should order implementation of the District's preferred plan.

**2. The District—and the students and community it serves—will suffer irreparable harm if the stay is not granted.**

In considering the element of irreparable injury, this Court must consider whether "little if any harm will befall other interested persons or the public and [whether] denial of the [stay] would inflict irreparable injury on the movant." *Ruiz v. Estelle,* 650 F.2d 555, 565 (5th Cir. 1981) (quoting *Washington Metropolitan Area Transit Commission v. Holiday Tours, Inc.,* 559 F.2d 841, 844 (D.C. Cir. 1977)). When such an injury is shown, "an order maintaining the status quo is appropriate." *Id*.

The most pressing irreparable injury the District will suffer in the absence of a stay is the loss of integration. The District offered substantial evidence that white students would leave the District if the Government's consolidation plan were accepted. Now that the Court has adopted the plan, evidence demonstrates that white students, as predicted, are leaving the District. Indeed, these events are among the primary motivations for the District's appeal—that the specific consolidation plan the Court adopted is causing irretrievable loss of white enrollment at the District's middle and high schools.[3]

If execution of the Government's plan is not stayed, white students will continue to leave the District in anticipation of its implementation. As Dr. Rossell confirmed, in school districts like Cleveland, under mandatory reassignment plans, white students begin to leave and continue to leave in steady numbers during the first few years of implementation until there is no appreciable white enrollment left. *See,* Tr. 105-110; CSD Ex. 11-A, pp. 14-16. This suggests that a later reversal of course—in this case, the District's success on appeal—may not restore white enrollment to the District. The District's students and the community at large stand to suffer if the white student population transfers away from the District, even if the District subsequently prevails on appeal. In other words, the District may lose any benefit it hopes to gain by its appeal in the absence of a stay. This Court should therefore maintain the status quo until the Appeals Court has had an opportunity to weigh in on the Government's plan.

Further, this loss of enrollment will mean a loss of funding for the District. Cindy Holtz, the District's Chief Financial Officer, testified during the hearing that for each student who attends the District, the District receives $5,535.00 in funds from the state of Mississippi. So, if

---

[3] The District acknowledges settled case law stating that "white flight" may not be used as an excuse to refuse integration. But this is not what the District is suggesting. Instead, the District contends that among constitutional remedies, the Government's plan causes the greatest loss of white enrollment. As noted above, this Court may certainly consider white flight when choosing among constitutional remedies. *United States v. Pittman*, 808 F.2d 385, 391 (5th Cir. 1987). In order to preserve white enrollment long enough for the Court of Appeals to consider this argument, a stay of this Court's judgment is in order.

42757854_1　　　　　　　　　　　　　　　　　9

the District loses twenty students that amounts to a loss of $110,000.00 in funds; fifty students equals a loss of $276,000.00; 100 students equals a loss of over $500,000.00. Tr. 887. A comparison of student enrollment reported in the District's June 2015 Court Report versus its June 2016 Court Report shows a loss of twenty-six white students alone, which correlates to a loss of $143,910 in funds. *See,* [200-1], [216-1]. Additionally, Ms. Holtz testified that a loss of student funds results in a loss of teacher units. Tr. 887. For every twenty students lost, the District loses two teacher units. *Id.*

Admittedly, federal district courts have been skeptical of "irreparable injury" arguments in the desegregation context. *See United States v. Texas*, 523 F.Supp. 703, 729 (E.D.Tex. 1981). However, the District has found no cases where the injury identified was unnecessary loss of integrated enrollment—one of the very harms the Court's opinion on the merits aims to avoid. The loss of white enrollment is exactly the type of irreparable injury a stay pending appeal was designed to prevent.

### 3. Plaintiffs will not be substantially harmed by a stay pending appeal.

Neither the Government nor the Private Plaintiffs will be substantially harmed by a stay in this case. While a stay may cause some minor delay in the implementation of a new desegregation plan, any harm caused by the delay is substantially outweighed by the benefit to Plaintiffs in maintaining integrated enrollment in the Cleveland School District. Further, the Supreme Court's admonition to end racial segregation with "all deliberate speed," will not be offended by a stay pending appeal in this case. *See Brown v. Bd. of Educ. of Topeka, KS*, 349 U.S. 294, 301 (1955). The District's appeal is based on the premise that there are constitutional methods of ending racial segregation which are more effective, and more likely to lead to true integration, than the plan currently adopted by the Court. In other words, both the District and

Plaintiffs benefit if the District's schools are diverse and integrated. The best means of accomplishing that purpose is to stay execution, preserving white enrollment, until the Court of Appeals reaches its decision. Additionally, if the Private Plaintiffs all wanted to enroll at Margaret Green Junior High and/or Cleveland High School today, they could do so under the current open enrollment plan.

    **4.    Granting the stay serves the public interest.**

As described above, the community at large will benefit from a stay in this case. Stemming the loss of student enrollment during the pendency of the District's appeal benefits all of its students, who are entitled to the best possible integration efforts at their schools. Testimony from expert witnesses, parents, and community members at the hearing showed the importance and benefit of integrated schools. *See, e.g.,* Tr. 769-70, testimony of Lenden Sanders; Tr. 779, testimony of Antonio Lewis. Finally, stemming the loss of student enrollment also preserves desperately-needed funding to the District. *See,* pp. 12-13, above.

## III. Conclusion

Equitable principles counsel a stay of this Court's consolidation order to consider the District's proposed consolidation plan. Alternatively, the District has a substantial case on the merits of its appeal and will suffer irreparable harm if a stay is not granted under Fed. R. Civ. P. 62(c).

Respectfully submitted, this 15th day of August, 2016.

                                         **CLEVELAND SCHOOL DISTRICT**

                                         */s/ John S. Hooks*

OF COUNSEL:

| | |
|---|---|
| Holmes S. Adams | Jamie F. Jacks |
| MS Bar No. 1126 | MS Bar No. 101881 |
| John S. Hooks | Gerald H. Jacks |
| MS Bar No. 99175 | MS Bar No. 3232 |
| Lindsey O. Watson | Jacks Griffith Luciano, P.A. |
| MS Bar No. 103329 | Post Office Box 1209 |
| ADAMS AND REESE LLP | Cleveland, Mississippi 38732 |
| 1018 Highland Colony Parkway, Suite 800 | Telephone: 662-843-6171 |
| Ridgeland, MS 39157 | jjacks@jacksadamsnorquist.com |
| Telephone: 601-353-3234 | gjacks@jacksadamsnorquist.com |
| Holmes.Adams@arlaw.com | |
| John.Hooks@arlaw.com | |
| Lindsey.Oswalt@arlaw.com | |

## CERTIFICATE OF SERVICE

I, John Hooks, attorney for Defendant Cleveland School District, do hereby certify that I have this date served by electronically filing via the ECF system to all registered counsel of record.

Dated: August 15, 2016.

*/s/ John S. Hooks*