UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

| | |
|---|---|
| DIANE COWAN *et al.*,<br><br>Plaintiff,<br><br>and<br><br>UNITED STATES OF AMERICA,<br><br>Plaintiff-Intervenor,<br><br>v.<br><br>BOLIVAR COUNTY BOARD OF EDUCATION *et al.*,<br><br>Defendants. | Civil Action No. 2:65-CV-00031-DMB |

**PLAINTIFF-INTERVENOR UNITED STATES' AND PLAINTIFFS' JOINT RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO STAY**

In its Motion to Stay the Court's May 13, 2016, Order, the Cleveland School District ("District") asks the Court to exercise extraordinary power, in the face of the federal judiciary's unified voice of disapproval, to further delay the elimination of vestiges of unconstitutional discrimination. The District rejects the legal standard repeatedly announced by the Supreme Court, instead applying a different standard in its Memorandum that the Fifth Circuit notes many movants wrongly interpret as easier to meet. The District fails to make the required showing that the equities under consideration tilt heavily in its favor, and accordingly cannot justify a stay. Further still, in examining those equities the District overlooks its continuing obligation to desegregate the all-black East Side High School and D.M. Smith Middle School by failing to

1

consider the plight of the impacted black students in its assessment of harm or the public interest. A stay pending appeal will delay implementation of a remedy until at least August 2018. Nowhere in its discussion does the District weigh the impact of an additional year of a remedy deferred on the students who currently attend, or who next year will attend, the racially identifiable, segregated secondary schools in the District. Plaintiff-Intervenor United States of America ("United States") and Plaintiffs (collectively, "Plaintiff Parties") urge the Court to deny the pending Motion. Additionally, the Plaintiff Parties respectfully request that this Court bring about action and progress where there has been only inaction and delay by ordering a specific timeline to implement the adopted desegregation plan.

## Procedural History

On May 13, 2016, this Court entered an Opinion and Order (Dkt. #215) ("Order") adopting the United States' proposed desegregation plan for the Cleveland School District (Dkt. #109) ("Adopted Plan" or "U.S. Plan"). As per the Court's Order, on June 3, 2016, the parties filed proposed timelines to implement the Adopted Plan (Dkt. #217, #218). The United States and Plaintiffs included in their joint submission a request that the Court hold a status conference to discuss with the parties the specific obligations and deadlines proposed in the timelines (Dkt. #218 at 4). On July 11, 2016, the District filed a notice of its appeal of the Order to the United States Court of Appeals for the Fifth Circuit (Dkt. #219), and on August 15, 2016, the District filed a Motion to Stay the Order (Dkt. #223) and a Memorandum in Support of the Motion to Stay (Dkt. #224). The Court denied the Defendant's Motion in part and directed opposing parties to file any response to the Defendant's remaining request for stay under Rule 62(c) pending appeal by August 26, 2016 (Dkt. #225). Accordingly, Plaintiff-Intervenor United States of America and Plaintiffs file this joint response in opposition.

**Legal Standard and Application**

"A stay is not a matter of right.... It is instead an exercise of judicial discretion." *Nken v. Holder*, 556 U.S. 418, 433 (2009) (internal quotation marks and citations omitted). Because it postpones relief for the prevailing party and interrupts the ordinary process of judicial review, "[t]he stay of an equitable order is an extraordinary device which should be sparingly granted." *United States. v. Texas*, 523 F. Supp. 703, 729 (E.D. Tex. 1981) (citations omitted) (denying a motion to stay remedial desegregation order). This principle is "underscored when relief has been ordered to remedy constitutional violations, particularly in the field of public education." *Id.; see Watson v. Memphis*, 373 U.S. 526, 533 (1963) (constitutional remedies are to be promptly fulfilled in the absence of "an overwhelming compelling reason"); *Green v. Cnty. Sch. Bd.*, 391 U.S. 430, 438 n.4 (1968) (where vestiges of unconstitutional discrimination remain, the duty of the judiciary is to institute meaningful relief that will work immediately). "Moreover, when the equitable remedy at issue has been a remedial plan designed to correct the interminable affliction of segregation, the federal judiciary has traditionally spoken in a single voice of disapproval." *United States v. State of Louisiana*, 815 F.Supp. 947, 948-49 (E.D. La. 1993) (denying a motion to stay a remedial desegregation plan pending appeal) (citing cases); *see also Texas*, 523 F. Supp. at 729 ("the Supreme Court and the individual Justices sitting as Circuit Justices have consistently denied stays and reversed stays granted by courts of appeals from relief ordered in school desegregation cases"). Motions to stay in elementary and secondary school desegregation cases are subject to "heightened scrutiny." *Louisiana*, 815 F.Supp. at 949. Against this challenging backdrop, the Supreme Court has articulated a four factor test to govern a court's consideration of a motion for stay pending appeal: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will

3

be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken*, 556 U.S. at 434 (citation omitted).[1] The applicant bears the burden of showing that a stay is justified. *Id.* at 433–34. As detailed below, the District has not met its burden and accordingly the law does not support a stay of the Court's Order.

I. **The District has made no showing that it is likely to succeed on the merits of its appeal, nor does it present a substantial case on the merits.**

The District has failed to make a "strong showing that [it] is likely to succeed on the merits." *Nken*, 556 U.S. at 434; *see* Def.'s Mem. at 3-4 (skipping this inquiry entirely).

Rather than applying the traditional standard, the District invokes the Fifth Circuit decision in *Ruiz v. Estelle* (*Ruiz I*), 650 F.2d 555 (5th Cir. Unit A June 1981) setting forth a modified standard in certain cases. The Court held in *Ruiz I* that on a motion for stay pending appeal "the movant need only present a substantial case on the merits when a serious legal question[2] is involved and show that the balance of the equities weighs heavily in favor of granting the stay." *Id.* at 565. In reaffirming *Ruiz I*, the Fifth Circuit explained that many stay applicants have wrongly assumed that case was a "coup de grace" to the "likelihood" prong in the Circuit; instead, as the Court reiterated in *Ruiz II*, "[l]ikelihood of success remains a prerequisite in the usual case" and "[o]nly 'if the balance of equities (*i.e.* consideration of the other three factors) is ... *heavily tilted* in the movant's favor will we issue a stay in its absence,

---

[1] The final two factors of the test "merge when the Government is the opposing party." *Nken*, 556 U.S. at 435. However, because this a joint response by Plaintiff Parties, we will examine each factor in turn below.

[2] Plaintiff Parties do not dispute that a desegregation order may raise a "serious legal question." *See Wildmon v. Berwick,* 983 F.2d 21, 23 (5th Cir. 1992). However, the District cites to *U.S. v. State of Louisiana*, 815 F.Supp. 947, 953 (E.D. La. 1993), which does not lend support. Quite the opposite in fact. In that case the Court concluded that the state's motion for a stay can be "viewed as nothing more than another artifice to add to the long list of tactical maneuvers engaged in by the state defendants so as to extend these proceedings in the trial court indefinitely." *Id*. at 952.

and, even then, the issue must be one with patent substantial merit." *Ruiz v. Estelle* (*Ruiz II* ), 666 F.2d 854, 856–57 (5th Cir. Jan. 1982) (quoting *Ruiz I*, 650 F.2d at 565–66); *see also United States v. Transocean Deepwater Drilling, Inc.*, 537 Fed.Appx. 358, 360–62 (5th Cir.2013) (denying stay after applying *Ruiz* standard). The District relies on *Ruiz I*, but fails to reconcile its argument with *Ruiz II* and the traditional standard.

The District states that it has a "substantial case on the merits" of its appeal (Def.'s Mem. at 4), but does not present any argument that would meet even the lowered threshold it propounds. The District's principal argument on appeal is that both Judge Davidson's freedom of choice plan and the District's Plan A are constitutional and should have been adopted by the Court. *Id.* The District's position is fatally flawed. As the Fifth Circuit expressly noted in this case, the District never appealed the March 2012 District Court opinion finding that new action was required to eliminate segregation at East Side High School and D.M. Smith Middle School, which have always been and continue to be racially identifiable, almost exclusively black schools. *Cowan v. Cleveland Sch. Dist.*, 748 F.3d 233, 237–38 (5th Cir. 2014). Judge Davidson's freedom of choice program has not led to an increase in white enrollment at those two schools. *Id.* at 239; *see also* Order at 60. In its 2014 decision, the Fifth Circuit reversed and remanded "for a more explicit explanation of the reasons for adopting the freedom of choice plan, and/or for consideration of the alternative desegregation plans proposed by the parties, as appropriate." *Cowan,* 748 F.3d at 240. In May 2015, this Court held a five-day hearing on the proposed plans and on May 13, 2016, issued a 96-page Order that analyzed in great detail the existing system and the proposed plans. Significantly, no District witness could testify that Plan A would increase white enrollment compared to the freedom of choice program. *See* Order at 46. Multiple District witnesses effectively conceded that Plan A was a continuation of the status

5

quo. *See* Order at 49-50 (Hardy, James, Fuller, Seals, and Gainspoletti); *see also* Order at 48 ("All parties agree that Plan A is, in essence, a continuation of the District's current open enrollment policy with the addition of an early college program"). This Court, unsurprisingly, concluded that both Judge Davidson's freedom of choice program and the District's Plan A were unconstitutional for failing to address the status quo at East Side High School and D.M. Smith Middle School. Order at 60.

The District suggests that the United States is demanding that "a certain 'racial quota' must be met at D.M. Smith and East Side." Def.'s Mem. at 7. To the contrary, the United States does not seek a specific percentage of black and white students to be enrolled at East Side High School or D.M. Smith Middle School for the District to become eligible for unitary status. However, the failure to develop a constitutional plan designed to eliminate the racial identifiability of these schools through actual meaningful full-time enrollment of white students will prevent the District from attaining unitary status. Although "[r]acial balance is not to be achieved for its own sake[,] [i]t is to be pursued when racial imbalance has been caused by a constitutional violation," *Freeman v. Pitts*, 503 U.S 467, 494 (1992), as it was here.

The District also argues that the Court should have taken into consideration concerns over the loss of white student enrollment. Def.'s Mem. at 6. However, the Court did exactly that, though not so obligated.[3] The Court heard hours of testimony on "white flight" and weighed the totality of the evidence in its Order. The Court found the evidence mixed; testimony "predicting a mass exodus of white students" was "offset by the fact that the District currently maintains numerous majority-African American schools with significant white enrollments without suffering white enrollment loss." Order at 90. The Court noted that

---

[3] White flight may only be considered when choosing between constitutional plans. Order at 90.

6

"potential white enrollment loss is a problem that must be met with creativity." *Id*. *See United States v. Pittman*, 808 F.2d 385, 391 (5th Cir. 1987) ("White flight must be met with creativity, not with delay in [de]segregation.") (quoting *Davis v. East Baton Rouge Sch. Bd.*, 721 F.2d 1425, 1438 (5th Cir. 1983)). The Court further found that the Adopted Plan takes "reasonable and appropriate steps" to that end. Order at 90.

Finally, the District appears to argue that the Court has not been "mindful" of black students' constitutional right to free association. Def.'s Mem. at 8 (citing to a dissenting opinion in *United States v. Jefferson Cnty. Bd. of Educ.*, 380 F.2d 385 (5th Cir. 1967)). In that case, the Fifth Circuit described an affirmative duty on school boards to desegregate schools. The Court stated: "In fulfilling this duty it is not enough for school authorities to offer Negro children the opportunity to attend formerly all-white schools. The necessity of overcoming the effects of the dual school system in this circuit requires integration of faculties, facilities, and activities, as well as students." 380 F.2d at 389. The District has provided no legal precedent for the premise that it may discharge this duty, a duty reiterated by this Court in 2012, by invoking, on behalf of black students, their right to free association. *See* Order at 60 n. 65.

The District's Memorandum not only re-treads five years of litigation, but presents no substantial case on the merits for appeal and seeks the continuation of the District's failure to meet the requirements of *Brown* and its progeny. "Without a substantial case on the merits, the state defendants' burden to demonstrate that the circumstances of this case warrant stay is for all practical purposes insurmountable. In order to carry their burden, the state must show that the injury and harm, which would inure to their detriment as a result of the implementation of court-ordered relief, would be so overwhelming as to call into question the logic of the remedial plan itself." *Louisiana*, 815 F.Supp. at 953. The District has not made that showing.

7

Even if this Court were to agree that the District has demonstrated a substantial case, a stay is only justified under *Ruiz II* if the balance of equities is *heavily tilted* in the movant's favor. 666 F.2d at 856–57. As discussed below, it is not.

## II.     The District fails to demonstrate that it will suffer irreparable injury absent a stay.

Peering through the District's hyperbolic language and grim assessment that the Court's Order is "causing irretrievable loss of white enrollment," we see little substance to support the claim that the Defendant is "irreparably injured absent a stay." Def.'s Mem. at 9; *Nken*, 556 U.S. at 434.

In the first instance, while this Court has adopted the U.S. Plan, it has not (yet) entered a timeline for implementation of the Plan. Until such time, the District is not obligated to take any concrete steps in furtherance of the Order by any particular date. Simply put, the District is not required to reassign teachers, re-name mascots, repair facilities, reassign any children, or close any schools without further order of this Court. Nor is the District *prohibited* from taking any specific action. Accordingly, it is exceedingly difficult for the District to make the case that harm will be done over the next several months if the Order is not stayed. See *Texas*, 523 F. Supp. at 732 (denying a motion to stay in a desegregation case in part because defendants "failed to demonstrate that any elements of relief to be implemented during the [upcoming] school year, the likely period of the pendency of their appeal, would cause them to suffer irreparable harm"). Without a timeline in place that enumerates the actual elements of relief and the specific obligations of the parties this school year, the District's arguments regarding irreparable harm are unfounded and premature.

Even though the District is not yet under any obligation to implement the Order, the District nevertheless argues in its Memorandum that the Court's Order is already *causing* a

8

permanent loss of white student enrollment in the District and the resultant loss of per pupil funding. Def.'s Mem. at 9. The District fails to consider any other causes for the decision that some parents may have made to withdraw from the District. The District does not recognize that its decision to appeal the Court's Order prolongs uncertainty and perpetuates the existing mistrust between the community and the Board. Nor does the District consider that its decision to discontinue the International Baccalaureate (IB) program at East Side High School[4] or its failure to address accessibility, maintenance, and structural issues at both high schools and Margaret Green Middle School may also impact parent interest in keeping children in the District. *See e.g.*, Order at 28, 30, 34.

Apparently blind to its own agency, and having laid blame on all other parties and the Court, the District is also resigned to the finality of "white flight." The District argues that white students will not come back, and that a stay is required to preserve white enrollment long enough for the Court of Appeals to rule. Def.'s Mem. at 9, n. 3. In reality, white enrollment in the district has ebbed and flowed. Based on annual reports the District has filed with this Court, the net change in white enrollment since the start of the most recent active litigation period (spring 2011) is zero. *Compare* Dkt. #16-1 and #216-1. The net change in total enrollment over the same period of time is +200 students. *Id*. In fact, the District's data shows a net gain in student enrollment over the last several years, which puts its immediate concerns over loss of per pupil funding into useful perspective.

---

[4] *See* Agenda, Cleveland School Board Meeting, Jul. 11, 2016, Cleveland School District, http://www.cleveland.k12.ms.us/Page/228 (last accessed August 26, 2016) (Item #5 – "Approval of request to transition from the International Baccalaureate (IB) Programme to the Advanced Placement (AP) curriculum at East Side High School"); 2016-17 Cleveland School District Curriculum Guide http://www.cleveland.k12.ms.us/Page/2223 (last accessed Aug. 23, 2016) (no longer listing IB classes at East Side HS) ; s*ee also In re Katrina Canal Breaches Consol. Litig.*, 533 F.Supp.2d 615, 632 (E.D. La. 2008) ("The Fifth Circuit has determined that courts may take judicial notice of governmental websites.").

The District's dire predictions continue to give the white parents and students in the Cleveland School District little credit; instead the District continues to publicly lament that the bottom will drop out of white enrollment if the high schools and middle schools consolidate. That the District thinks meaningfully desegregating East Side High School and D.M. Smith Middle School would automatically cause its diverse student population to disappear or that parents would not be attracted to a fully integrated school system does an injustice to all District parents and students, no matter their race or ethnicity.

Even if the Court had ordered implementation of the Order based on the timelines presented by the parties, the District would still be unable to demonstrate irreparable harm during the pendency of the appeal. Both timelines proposed to the Court in June include a planning period of a year, with the new school configurations in place by the start of the 2017-18 school year. Moreover, the relief ordered by the Court does not contemplate the construction of new structures or major renovations.

Precisely because the proposed timelines do not include obligations that would cause irreparable harm, and because they include a deliberative process to build community support and consensus that may encourage families to stay in the District, Plaintiff Parties respectfully renew their request to the Court to issue an implementation timeline in this case. This Court remains empowered to enter such an order. "A notice of appeal from an interlocutory order does not produce a complete divestiture of the district court's jurisdiction over the case; rather it only divests the district court of jurisdiction upon the file on the notice of appeal with respect to any matters involved in the appeal." *Alice L. v. Dusek*, 492 F.3d 563, 564 (5th Cir. 2007). The issue on appeal here will be whether this Court abused its discretion in selecting the U.S. Plan over the competing plans. *See Cowan*, 748 F.3d at 238. A timeline order would not implicate any of the

10

same legal or factual questions as that at issue on appeal. Nor would the entry of the timeline order "change[] the status of the appeal[]"or alter the Fifth Circuit's ability to decide the appeal. *Dayton Indep. Sch. Dist. v. U.S. Mineral Prod. Co.*, 906 F.2d 1059, 1063 (5th Cir. 1990); *Royal Ins. Co. of Am. v. Quinn-L Capital Corp.*, 3 F.3d 877, 883 (5th Cir. 1993) ("the district court's continuing jurisdiction during the pending interlocutory appeal did not interfere with our ability to decide the issues presented" in the appeal). Entry of a timeline order would only alter the speed with which the parties or the appellate court might desire to pursue the appeal.

Moreover, the general rule that a district court loses jurisdiction over matters involved in the appeal does not preclude the district court from taking actions "in aid of the appeal." *United States* v. *Hitchmon*, 602 F.2d 689, 692 (5th Cir. 1979) (en banc). The rationale for the rule is to promote "judicial efficiency and an avoidance of confusion." *Wilson* v. *Cain*, No. CIV. A. 97-1551, 1999 WL 670950, at *8 n.13 (E.D. La. Aug. 25, 1999). Entry of the timeline order in this case may resolve, rather than create, jurisdictional confusion at the court of appeals. *United States v. Barletta*, 644 F.2d 50, 53 (1st Cir. 1981) ("Precisely because the question of our jurisdiction over its initial order turned on the proper interpretation of that order, the district court's clarification of its own prior action was appropriately 'in aid of the appeal.'"). Given that the appealed Order selected a plan, but did not require or prohibit any action, appellate jurisdiction may be a fact-dependent question. *See Taylor v. Bd. of Ed. of City Sch. Dist. of New Rochelle*, 288 F.2d 600, 604 (2d Cir. 1961) ("a command that relates merely to the taking of a step in a judicial proceeding is not generally regarded as a mandatory injunction"); *see also Bd. of Pub. Instruction of Duval Cnty., Fla. v. Braxton*, 326 F.2d 616, 619 (5th Cir. 1964). A timeline order therefore could clarify appellate jurisdiction (and avoid potential delay that might result from the Fifth Circuit concluding that it lacks jurisdiction without such an order), and

provide for a tangible and granular discussion of the appropriateness of a partial stay should the Court adopt obligations or deadlines that weigh in favor of a stay.[5]

### III. Additional delay in the implementation of relief will compound the undisputed substantial injury to Plaintiffs.

In considering "whether issuance of the stay will substantially injure the other parties interested in the proceeding" (*Nken*, 556 U.S. at 434), the District offers that any harm flowing from the "minor delay" caused by a stay would be "substantially outweighed" by the benefits of maintaining an integrated school district through preservation of white enrollment.  Def.'s Mem. at 10-11.  The District's position flies in the face of the Court's Order, which describes the on-going deprivation of the constitutionally-guaranteed right of an integrated education as a "great[] harm" and a "burden" under which students must no longer suffer.  Order at 96.

In disputing the substantial harm of maintaining segregation, the District continues to ignore the very heart of this case, that it has been found wanting in its constitutional obligations resulting in past and ongoing injury to generations of students.  The District did not appeal the 2012 finding that it failed to meaningfully desegregate East Side High School and D.M. Smith Middle School.  *Cowan*, 748 F.3d at 237–38.  Remedial action to address the ongoing injury at secondary schools on the east side of Cleveland cannot be delayed by unproven fears of future white flight.  *See Pittman*, 808 F.2d at 391.  To achieve the meaningful desegregation of these schools, the Court's Order requires the implementation of a constitutional plan designed to fulfill the command of *Green*.  *See Cowan*, 748 F.3d at 238 (citing *Green,* 391 U.S. at 439).  The District asserts that there are "constitutional methods of ending racial segregation which are more effective, and more likely to lead to true integration, than the plan currently adopted by the

---

[5] Adoption of a timeline may also provide some clarity to families making educational plans for their children and help build morale among community members interested in supporting the success of the consolidated schools.

Court." Def.'s Mem. at 10. Throughout five decades of litigation, the District has failed to present such a plan to the Court. Offering Plaintiffs the option of enrolling at Margaret Green and/or Cleveland High as the District does in its Memorandum is insufficient to ameliorate the substantial harm; it misses not only the point of this case but also denies the experiences of Plaintiffs. *See Jefferson Cnty. Bd. of Educ.*, 380 F.2d at 389.

The negative and lasting implications of maintaining segregated schools, in a community as small as Cleveland, are profound; thousands of children have attended racially isolated and segregated schools, hence burdening them with a "badge of inferiority." During the hearing in May 2015, parents, community members, and a school board member testified to the long-standing stigma associated with having separate racially identifiable schools on different sides of the railroad track: Hr'g Tr. 246:9-12 (Dr. Chresteen Seals—"[The removal of the old attendance line] was a jubilant time because those railroad tracks when I was at East Side meant something that was very dim for me because it meant on the East Side I belonged and on the west side you belonged."); 704:7-8 (Rev. Duvall—"I think for the past 40-something years, East Side has been demonized as being a bad school."); 732:8-13 (Keith White—"[W]e actually want to be able to find some way to get involved in Cleveland School District instead of being outcast because we are the track schools, a school on this side of the track and a school on that side of the track. How modern is that in our society?"); 790:10-12 (Leroy Byars—"[S]tudents on the east side of town, which are at East Side and at D.M. Smith . . . felt . . . that they were inferior."). Parents also spoke of how the stigma continues to affect their children on a daily basis. Mr. White talked about how Hayes Cooper sixth graders only tour Margaret Green Middle School, not D.M. Smith Middle School (Hr'g Tr. 722:10-12 and 730:20-22), and explained how his daughter transferred from Margaret Green to D.M. Smith after losing trust in the school, including being mocked and

told that "you are going to take all you learn from us and take it to East Side." Hr'g Tr. 729–30. Reverend Duvall recounted several reasons that his daughter transferred from Cleveland High School to East Side High School in tenth grade, including that she had begun to "talk about the kids on the east side of town in a negative way and she began to think that she was better than the kids at East Side simply because she was going over to the west side, Cleveland High." Hr'g Tr. 702:11-17. In choosing to appeal rather than bring the community together to implement the desegregation plan and allow Cleveland, as this Court hoped, to "shine brighter as the shadows of segregation recede" (Order at 95), the District has chosen to perpetuate the stigma, the divisions, and the perception that maintaining separate schools at all costs is more important than providing equal educational opportunities to all of Cleveland's students.

     For Plaintiffs, what is at stake is an issue far more significant than "maintaining integrated enrollment." Def.'s Mem. at 10. Since 1965, the Plaintiffs have sought both the adoption of structural changes to the operation of the schools that create integrated schools and the moral imprimatur of the District that it supports equal educational opportunities for all students. Plaintiffs continue to hold these hopes dear to this day. They want to experience the justice that they have been granted and promised by the Court for nearly five decades. They await a day when the District will no longer resort to foot-dragging or other such tactics to delay its fulfillment of its legal and moral obligations. However, each time the District delays and again asserts the inevitability of large scale white flight, it harkens back and resurrects the mentality of a bygone era—one that many Mississippians have moved beyond and are eager to leave behind permanently in exchange for a future with equality under law for all.

## IV. Additional delay serves no one, certainly not the public interest or the law of the land.

In its Order, the Court observed that "[t]he delay in desegregation has deprived generations of students of the constitutionally-guaranteed right of an integrated education. Although no court order can right these wrongs, it is the duty of the District to ensure that not one more student suffers under this burden." Order at 96. On August 8, 2016, another class of students entered the District's dual system of secondary schools. If implementation of the Approved Plan is allowed to proceed without further delay, this will be the last such class: consolidated and integrated secondary schools will open at the start of the 2017-18 school year. A stay pending appeal would likely delay implementation of this Court's desegregation remedy an additional year, and in August of 2017 yet another class of students will enter segregated schools. The District's discussion of "where the public interest lies" (*Nken*, 556 U.S. at 434), as with the prior factor, places preservation of white student enrollment above the constitutional rights of the students who remain in segregated schools. This interest is out of sync with the District's obligations and the prevailing law; the District fails to demonstrate a public interest that tilts heavily in its favor.

The District argues that "the Supreme Court's admonition to end racial segregation with 'all deliberate speed,' will not be offended by a stay pending appeal in this case." Def.'s Mem. at 10, referring to *Brown v. Bd. of Educ. of Topeka*, 349 U.S. 294, 301 (1955). However, sixty-two years after *Brown I*, sixty-one years after *Brown II*, fifty-one years after the original complaint was filed in this case, and forty-three years after the Supreme Court declared that "[t]he haltingly slow days of all deliberate speed have given way to the mandated duty to immediately desegregate," *Miller v. Bd. of Educ. of Gadsden*, 482 F.2d 1234, 1236 (5th Cir. 1973) (citing *Alexander v. Holmes Cnty. Bd. of Educ.*, 396 U.S. 19 (1969)), the District's continued failure to

15

meet its obligations and its perpetual requests for delay can do nothing but offend. Rather than focus on fidelity to the law and its responsibilities to serve all students in the Cleveland community, the District proposes that the Court ignore the law and that time should stand still.

## Conclusion

Neither the law nor the balance of equities in this case favor a stay of the Court's Order. The District fails to demonstrate a substantial likelihood of success on appeal in its Motion. Even under the alternative test, the District fails to demonstrate that the equities tilt heavily in its favor. Plaintiff Parties respectfully request that the Court deny the District's Motion to Stay pending appeal. In addition, Plaintiff Parties respectfully request that the Court issue a timeline for the immediate implementation of its Order. Plaintiff Parties suggest that a status conference may be useful to ensure that parties understand their obligations and quickly begin work towards meeting them.

Respectfully submitted this 26th day of August, 2016,

*For Plaintiff-Intervenor United States of America:*

| | |
|---|---|
| FELICIA C. ADAMS | VANITA GUPTA |
| United States Attorney | Principal Deputy Assistant Attorney General |
| Northern District of Mississippi | |
| 900 Jefferson Avenue | EVE HILL |
| Oxford, MS 38655-3608 | Deputy Assistant Attorney General |

SHAHEENA SIMONS
Chief
RENEE WOHLENHAUS
Deputy Chief
Educational Opportunities Section
Civil Rights Division

s/ Aziz Ahmad
_____

AZIZ AHMAD (DC # 1004817)
KELLY GARDNER
Trial Attorneys
Educational Opportunities Section
Civil Rights Division
United States Department of Justice
950 Pennsylvania Avenue, NW, PHB 4300
Washington, D.C. 20530
Telephone: (202) 305-3355
Facsimile: (202) 514-8337
Aziz.Ahmad@usdoj.gov

*For Private Plaintiffs:*

s/ Shakti Belway
Shakti Belway (MS # 102095)
P.O. Box 19974
New Orleans, LA 70179
Telephone: (504) 333-6877
shakti.belway@gmail.com

## **CERTIFICATE OF SERVICE**

      I hereby certify that on August 26, 2016, I electronically filed a copy of the foregoing Joint Response in Opposition to Defendant's Motion to Stay with the Clerk of the Court using the Court's CM/ECF system. Notice of this filing was sent by operation of the CM/ECF system to all counsel of record.

      /s/ Aziz Ahmad
      AZIZ AHMAD (DC # 1004817))
      Attorney for Plaintiff-Intervenor