IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
DELTA DIVISION

| | |
|---|---|
| **DIANE COWAN, minor, by her mother and next friend, Mrs. Alberta Johnson, et al.; FLOYD COWAN, JR., minor, by his mother and next friend, Mrs. Alberta Johnson, et al.; LENDEN SANDERS; MACK SANDERS; CRYSTAL WILLIAMS; AMELIA WESLEY; DASHANDA FRAZIER; ANGINETTE TERRELL PAYNE; ANTONIO LEWIS; BRENDA LEWIS;** | **PLAINTIFFS** |
| and | |
| **UNITED STATES OF AMERICA** | **INTERVENOR-PLAINTIFF** |
| **V.** | **NO. 2:65-CV-00031-DMB** |
| **BOLIVAR COUNTY BOARD OF EDUCATION, et al.** | **DEFENDANTS** |

### ORDER

This school desegregation case is before the Court on the Cleveland School District's motion to stay, Doc. #223, and its motion for reconsideration, Doc. #227.

### I
### Procedural History

On May 13, 2016, this Court entered a Memorandum Opinion and Order adopting the desegregation plan proposed by the United States of America, which calls for the consolidation of the Cleveland School District's high schools and the consolidation of its middle schools ("Plan"). Doc. #215 at 96. Under the Plan, the District would consolidate its ninth through twelfth grade students into a single comprehensive high school housed in the current facilities at Cleveland High School and Margaret Green Middle School. *Id.* at 78, 96. The Plan also calls for the assignment of all sixth through eighth grade students (except for the sixth grade students

at Bell Elementary and Hayes Cooper Elementary) to a consolidated middle school housed at the current East Side High School facility. *Id*.

On July 11, 2016, the District filed a notice of appeal with the Fifth Circuit Court of Appeals regarding the Court's May 13, 2016, desegregation order. Doc. #219.

On August 15, 2016, the District filed a motion to modify the May 13, 2016, desegregation order. Doc. #221. The District asked the Court to modify the desegregation plan adopted by the Court such that:

> All sixth-grade students will be assigned to the Walter Robinson Achievement Center (WRAC) (except for sixth-grade students at Hayes Cooper and Bell Academy), and all seventh through twelfth-grade students will attend Margaret Green/Cleveland High School. The District will construct a new ninth-grade wing at Margaret Green. D.M. Smith Middle School and East Side High School will be closed.

*Id*. at 2. Simultaneously, the District filed a motion asking this Court to stay its May 13, 2016, order "pending a ruling on the District's proposed consolidation plan, or in the alternative, for a stay pending appeal." Doc. #223 at 1.

On August 16, 2016, this Court issued an order denying the motion to modify because the Court could not "conclude that the proposed modification is constitutional." Doc. #225 at 4. In the same order, the Court ordered expedited briefing on the motion to stay. *Id*. at 5.

Ten days later, on August 26, 2016, the United States, joined by the plaintiffs, filed a response in opposition to the motion to stay. Doc. #226. The District subsequently replied in support of the motion. Doc. #229.

On August 30, 2016, the District filed a motion asking the Court to reconsider its order denying the motion to modify. Doc. #227. The United States responded in opposition to the motion and the District timely replied. Doc. #230; Doc. #231.

On September 22, 2016, this Court issued an order setting a timeline for compliance with its May 13, 2016, opinion. Doc. #233.

## II
## Motion for Reconsideration

In its motion for reconsideration, the District argues that reconsideration of its initial motion to modify[1] "is appropriate ... because the District's proposal meets the standard for modification of a desegregation plan and is constitutional." Doc. #227 at 1. In support of this assertion, the District presented additional evidence in the form of affidavits regarding implementation of its proposed modification to the Plan ("Proposed Modification"). *See* Doc. #227-1 through Doc. #227-5.

Where, as here, there has been a finding of de jure segregation, a court "must exercise its broad equitable power to review and modify proposed remedies which are intended to create and maintain a unitary school system." *Flaxx v. Potts*, 567 F. Supp. 859, 861 (N.D. Tex. 1983). In considering whether to implement a proposed change to a desegregation plan, a court:

> must decide only whether the choice violates the Constitution or federal law. To make that determination, federal courts ask only whether the proposed modification fails to further desegregation or places an inequitable transportation burden on black students. So long as neither answer is in the affirmative, we must defer to the expertise of school boards in decisions of this nature.

*United States v. Mississippi (Choctaw Cty. Sch. Dist.)*, 941 F.Supp.2d 708, 714–15 (N.D. Miss. 2013) (quoting *Anderson ex rel. Anderson v. Canton Mun. Separate Sch. Dist.*, 232 F.3d 450, 454 (5th Cir. 2000) (internal alterations omitted). In evaluating whether a plan furthers desegregation, a court should consider the six factors set forth in *Green v. County School Board*,

---

[1] The Court previously interpreted the motion to modify as a motion for reconsideration under Federal Rule of Civil Procedure 60(b)(6). The Court notes that the motion also may be considered as seeking relief under Rule 60(b)(5). *See* Fed. R. Civ. P. 60(b)(5) (providing relief from an order where "applying it prospectively is no longer equitable"). Under either standard, the proper standard for relief is set forth below.

391 U.S. 430, 435 (1968).[2] These factors are: student assignment, faculty, staff, transportation, extracurricular activities, and facilities. *Anderson v. Sch. Bd. of Madison Cty.*, 517 F.3d 292, 298 (5th Cir. 2008). Additionally, the Court must consider whether the proposed plan is feasible. *Cowan v. Cleveland Sch. Dist.*, 748 F.3d 233, 238, 240 (5th Cir. 2014). While this standard of review for modifications places great trust in a district, a court must still "examine each of the proposed amendments in detail, keeping in mind the ultimate goal of achieving a unitary school system which offers quality education to all students." *Flaxx*, 567 F. Supp. at 861.

The Court has reviewed the District's new evidence and is optimistic that the Proposed Modification could represent a constitutional desegregation plan which would enjoy the support of the District's leadership. *See Davis v. E. Baton Rouge Parish Sch. Bd.*, 541 F.Supp. 1048, 1052 (M.D. La. 1982) (modifying court approved plan in favor of untimely district-proposed plan because "the court believes that people who implement a desegregation plan are more likely to look for ways to make it work, instead of for ways to make it not work if they implement their own plan"). Notwithstanding this optimism, the Court has not, at this time, concluded that it should modify its May 13 order. The Proposed Modification omits key information, such as: (1) deadlines for securing necessary funding; (2) deadlines for design and construction; (3) specifics of branding and/or renaming the new schools; (4) how the Proposed Modification will meet the problem of white flight (which the District alleges is a deficiency of the Plan); and (5) the feasibility of proposed contingency plans to ensure desegregation by the August 2017 school year. *See Coal. to Save our Children v. State Bd. of Educ.*, 757 F.Supp. 328, 353 (D. Del. 1991) (courts are "not in the business of modifying desegregation orders to make way for concepts.");

---

[2] Although its motion for reconsideration addresses the *Green* factors, the District seems to argue that because it is not seeking unitary status, the *Green* factors are irrelevant to their motion to modify. Doc. #228 at 2. The "*Green* factors [are] the areas of school operation which are traditionally held as indicators of a desegregated (or not) school system." *Lee v. Butler Cty. Bd. of Educ.*, 183 F.Supp.2d 1359, 1363 (M.D. Ala. 2002). Accordingly, they are relevant to the inquiry of whether a proposed plan fails to further desegregation.

4

*United States v. CRUCIAL*, 722 F.2d 1182, 1191 (5th Cir. 1983) ("Delay in achieving effective desegregation and uncertainty about whether a proposed plan will, in fact, achieve desegregation have been unacceptable flaws in any school desegregation plan since *Green*.").

Under these circumstances, the Court will defer the motion for reconsideration pending an expedited evidentiary hearing on the Proposed Modification. Such hearing, which will be set by separate notice, shall address the constitutionality of the Proposed Modification. Additionally, on or before October 7, 2016, the United States and Private Plaintiffs shall file with the Court a memorandum brief (jointly or separately) stating their position(s) on the constitutionality of the Proposed Modification.[3]

### III
### Motion to Stay

A district court has discretion to grant a stay pending appeal. *Weingarten Realty Inv'rs v. Miller*, 661 F.3d 904, 910 (5th Cir. 2011). Generally, when considering a motion to stay pending appeal, a court must consider four factors: (1) whether the party seeking the stay has shown a likelihood of success on the merits on appeal; (2) whether the party seeking the stay would suffer irreparable injury resulting from the denial of the requested stay; (3) whether the other parties would be substantially harmed by the grant of the requested stay; and (4) whether the public interest favors a stay. *Id*. However, if the case involves a "serious legal question … and the

---

[3] The joint response to the motion for reconsideration filed by the plaintiffs and the United States argues that the submission of the new plan is untimely and that reconsideration "could incentivize school districts in desegregation cases to propose only remedial steps in negotiation and even in litigation, and then [propose modifications] as an end run around any unwanted judgment." Doc. #230 at 4-5. They also argue that adoption of the new plan would represent a waste of "the efforts and resources already expended ...." *Id*. at 3. While these concerns are facially valid, they are undermined by the fact that school districts routinely seek and receive leave to modify desegregation plans. *See, e.g., Canton Mun. Separate Sch. Dist.*, 232 F.3d at 456. The Court sees no reason to reject a plan today which it would be forced to consider later. *See Sys. Fed'n No. 91 v. Wright*, 364 U.S. 642, 647 (1961) ("[S]ound judicial discretion may call for the modification of the terms of an injunctive decree if the circumstances, whether of law or fact, obtaining at the time of its issuance have changed, or new ones have since arisen."). Furthermore, the Court knows of no reason why the plaintiffs and the United States, having achieved their goal of consolidation, would not be willing to work with the District to achieve the most effective consolidation possible for all concerned.

balance of equities heavily favors a stay, ... the movant only needs to present a substantial case on the merits." *Id*.

### A. Serious Legal Question

As a threshold matter, the parties dispute whether the issue on appeal – the selection of a desegregation plan – represents a serious legal question. Under this inquiry, a court must look at the seriousness of the legal questions presented "both to the litigants involved and the public at large." *Campaign for S. Equality v. Bryant*, 773 F.3d 55, 57 (5th Cir. 2014).

Here, there can be no question that the issues presented in the appeal – the selection of a desegregation plan governing an entire school district – are of the utmost seriousness both to the litigants and the public at large. Accordingly, the Court concludes that the appeal involves serious legal questions and that, therefore, the District need only present a substantial case on the merits. *See United States v. Louisiana*, 815 F.Supp. 947, 950 (E.D. La. 1993) (in desegregation case, holding that "a substantial case on the merits must ... be tendered").

### B. Factor #1: Substantial Case on the Merits

Generally, a party seeking a stay is at a "disadvantage" with regard to the first factor "because the district court has already ruled against him." *Miller*, 661 F.3d at 910. This case is no different.

In seeking a stay, the District argues that: (1) Plan A (the District's open-enrollment plan) is constitutional because there are no impediments to student choice within the District and because the District had achieved a high ratio of interracial exposure in its schools; (2) the Court should not have selected consolidation because the plan "will result in a significant loss of white enrollment;" (3) the Government and the Court improperly imposed "racial quotas" in rejecting the District's proposed plans; (4) rejection of the freedom of choice plan improperly impinged on

6

the association rights of African American students. Doc. #224 at 4–8. In its May 13, 2016, order, the Court considered and rejected each of these arguments.

First, as stated in the May 13, 2016, order, a freedom of choice plan is only constitutional to the extent it promises to create desegregation. Doc. #215 at 52–53. To the extent the District argues that free choice renders a desegregation plan constitutional, such a contention is contrary to case law that holds a freedom of choice plan must offer a "real promise of aiding a desegregation program ...." *Green v. Cty. Sch. Bd. of New Kent*, 391 U.S. 430, 440 (1968). To the extent the District argues that its index of interracial exposure shows that the freedom of choice plan has a real promise of aiding a desegregation program, such argument has no bearing on the Court's reason for rejecting the freedom of choice plan—that the plan would fail to eliminate the one-race schools in the District.

Next, in rejecting the District's proposed plans, the Court did not employ racial quotas. Rather, the Court held that, under clear Fifth Circuit authority, the District could not maintain one-race schools which were vestiges of past segregation. Doc. #215 at 53–56. Nothing in the District's motion to stay suggests that this conclusion was error.

Finally, this Court rejected the District's right-to-associate argument because "[t]he right to associate must yield to compelling state interests, including the interest in eradicating discrimination ...." *Id*. at 60 n. 65. The District has offered no authority which would undermine this conclusion.

Therefore, the District has failed to present a substantial case on the merits.

### C. Factors #2-4: Harm to the Movant, Harm to the Non-Movant, Public Interest

The District argues that the District and the public will suffer irreparable injury in the absence of a stay because white enrollment loss will result in a loss of integration by virtue of

7

white flight and a corresponding loss in integration. Doc. #224 at 8–11. The District further contends that "[w]hile a stay may cause some minor delay in the implementation of a new desegregation plan, any harm caused by the delay is substantially outweighed by the benefit ... in maintaining integrated enrollment in the Cleveland School District." *Id*. at 10.

Next, the District argues that a loss of white students will cause a loss in funding because the state funding formula provides $5,535.00 to the District for each student. The District also contends that every loss of twenty students results in a loss of "two teacher units." Thus, the District contends that each student who leaves deprives the District of more than five-thousand dollars in funding. In this regard, the District contends that "[a] comparison of student enrollment reported in ... June 2015 ... versus ... June 2016 ... shows a loss of twenty-six white students alone, which correlates to a loss of $143,910 in funds." *Id*. at 9–10.

The United States responds that this calculation fails to take into account "other causes for the decision that some parents may have made to withdraw from the District," such as the "decision to discontinue the International Baccalaureate (IB) program at East Side High School or its failure to address accessibility, maintenance, and structural issues at both high schools and Margaret Green Middle School ...." Doc. #226 at 9.

Generally, "[a]n injury is 'irreparable' only if it cannot be undone through monetary remedies." *Deerfield Med. Ctr., City of Deerfield Beach*, 661 F.2d 328, 338 (5th Cir. 1981). Accordingly, where a school district seeks to show irreparable harm based on lack of funding, it must "identify ... concrete harms relating to student instruction or safety that could indicate irreparable injury." *Moore v. Tangiaphoa Parish Sch. Bd.*, Civ. No. 65-15556, 2015 WL 7015711, at *4 (E.D. La. Nov. 10, 2015); *Cf. Moore v. Tangiaphoa Parish Sch. Bd.*, 507 F. App'x 389, 399 (5th Cir. 2013) (loss of funding would result in irreparable harm where it would

8

result in "the failure to make timely scholarship payments [which] would result in [fifty] children having to relocate during the school year").

Notwithstanding the United States' argument, the Court is inclined to believe that at least some of the funding loss could be attributable to concerns about consolidation. However, the District has failed to show how, if at all, the funding loss actually impacts the District or its students. Under these circumstances, the lack of funding does not constitute an irreparable harm.

Turning to the alleged loss of white students in the District, the Court concludes that any "harm" is far outweighed by the harm to the plaintiffs and the public in maintaining vestiges of segregation in the form of single race schools. *See United States v. Texas*, 523 F.Supp. 703, 734 (E.D. Tex. 1981) ("Equal opportunity, mandated by the Constitution, must be accorded all citizens if it is to have any real meaning. Postponing relief in this case for a year or more will merely perpetuate the proven evils of past discrimination, to the detriment of all Americans.").

### D. Summary

In sum, the District has not shown that it has a substantial case on the merits or that the equities heavily favor a stay pending appeal. Accordingly, the motion to stay must be denied.[4]

### IV
### Conclusion

For the reasons above, it is **ORDERED**:

1. The District's motion to stay [223] is **DENIED**;

---

[4] This Court previously denied the motion to stay to the extent it sought a stay pending resolution of the District's motion to modify. Notwithstanding this Court's setting of an evidentiary hearing on the proposed modified plan, a stay pending resolution of the request to modify is inappropriate at this time. As found by this Court, the current open enrollment by the District is unconstitutional and the Plan adopted by the Court remains, for the time being, the only proposed constitutional plan. *See United States v. Bd. of Ed. of Baldwin Cty.*, 423 F.3d 1013, 1014 (5th Cir. 1970) ("Since the HEW plan is the only one currently available that gives any promise of ending the dual system, we must order its implementation despite its defects.").

2. The District's motion for reconsideration [227] is **DEFERRED** pending an evidentiary hearing, which will be set by separate notice; and

3. On or before October 7, 2016, the United States and the plaintiffs shall file with the Court a memorandum brief (jointly or separately) addressing the constitutionality of the District's proposed modified plan.

**SO ORDERED**, this 29th day of September, 2016.

**/s/ Debra M. Brown**
**UNITED STATES DISTRICT JUDGE**